UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **PAUL REINSMITH and KEVIN DINSDALE,** | ) | |
| **Individually, and on Behalf of all Others** | ) | |
| **Similarly Situated,** | ) | **C.A. No. 05 11168 GAO** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CASTLE POINT MORTGAGE, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ANSWER, COUNTERCLAIM AND JURY DEMAND
OF CASTLE POINT MORTGAGE, INC.**

For its first defense to plaintiffs Paul Reinsmith's and Kevin Dinsdale's complaint, defendant Castle Point Mortgage, Inc. responds to the correspondingly numbered paragraphs of plaintiffs' complaint as follows.

1.     Castle Point states that the allegations contained in plaintiffs' complaint speak for themselves.   Castle Point denies that plaintiffs are entitled to the relief requested.

2.     Admitted.

3.     Castle Point is without knowledge or information sufficient to form a belief as to the truth of plaintiffs' allegations concerning their state of residence.   Castle Point denies the remaining allegations contained in this paragraph.

4.     Castle Point admits that it has a facility located at 300 Brickstone Square, Suite 603, Andover, Massachusetts 01810.   Castle Point denies the remaining allegations contained in this paragraph.

5.     Denied.

6.     Denied.

7.      Castle Point admits that it employed plaintiffs as loan officers at its Andover, Massachusetts location.  Castle Point denies the remaining allegations contained in this paragraph.

8.      Castle Point states that the allegations contained in plaintiffs' complaint speak for themselves.  Castle Point denies that plaintiffs are entitled to the relief requested.

9.      Denied.

10.     Denied.

11.     Denied.

12.     Castle Point is without knowledge or information sufficient to form a belief as to the truth of plaintiffs' allegations concerning what they will do.

## COUNT I – FAIR LABOR STANDARDS ACT
### 29 U.S.C. § 201, *et seq.*

13.     Castle Point incorporates by reference its response to paragraphs 1 through 12 above.

14.     Denied.

15.     Denied.

## PRAYER FOR RELIEF

Castle Point denies that plaintiffs are entitled to the relief requested.

## SECOND DEFENSE

Plaintiffs' claims are barred because they were exempt from FLSA's overtime pay requirements.

**THIRD DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because Castle Point acted reasonably and in good faith in classifying claimants as exempt employees under the FLSA.

**FOURTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

**FIFTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by their own unclean hands.

**SIXTH DEFENSE**

If plaintiffs recover damages, which they should not, those damages should be offset by the amounts owed to Castle Point for plaintiffs' breach of contract and breach of fiduciary duty.

**SEVENTH DEFENSE**

If plaintiffs, and those alleged to be similarly situated, are found to not be exempt from the FLSA's overtime provisions, which they should not, they are entitled to only half-time pay for any hours in which they allegedly worked in excess of 40 hours per week because plaintiffs, and those alleged to be similarly situated, were paid commissions which constitute straight time compensation for all hours worked.

## EIGHTH DEFENSE

Plaintiffs, and those alleged to be similarly situated, are not entitled to compensation for hours worked about which Castle Point neither knew nor should have known.

## NINTH DEFENSE

Plaintiffs, and those alleged to be similarly situated, are not entitled to compensation for hours worked for which Castle Point received no benefit.

## TENTH DEFENSE

The claims of plaintiffs, and those alleged to be similarly situated, are barred in whole or in part by the doctrine of laches.

## ELEVENTH DEFENSE

The claims of plaintiffs, and those alleged to be similarly situated, are barred in whole or in part by the doctrine of estoppel.

## COUNTERCLAIM

1.      Castle Point employed Paul Reinsmith as a Loan Officer from April 1, 2003 until December 18, 2003, in its Andover, Massachusetts facility.

2.      Castle Point employed Kevin Dinsdale as a Loan Officer from April 1, 2003 until December 3, 2003, in its Andover, Massachusetts facility.

3.      Upon commencing employment with Castle Point, Reinsmith and Dinsdale both executed Loan Officer Confidentiality, Non-Competition and Non-Solicitation Agreements ("Agreements"), attached as Exhibits A and B.

4.      Pursuant to the Agreements, Reinsmith and Dinsdale agreed not to divulge and confidential information of Castle Point, including customer lists and referral source information, or to use such information for the benefit of third parties.

5.      Pursuant to the Agreements, Reinsmith and Dinsdale agreed that during their employment, and for a one year period following the termination of their employment with Castle Point, they would not contact or solicit, directly or indirectly, prospective, current or former clients, customers, referral sources or employees of Castle Point other than for the benefit of Castle Point.

6.      Pursuant to the Agreements, Reinsmith and Dinsdale agreed that during their employment and for a six month period following their employment, they would not compete with Castle Point and would not become employed by any entity engaged in some or all of the same business as Castle Point in Massachusetts.

7.      While still employed by Castle Point, Reinsmith solicited customers on behalf of First Call Mortgage, Inc., a Massachusetts-based competitor of Castle Point.

8.      While still employed by Castle Point and/or within the year following the termination of his employment with Castle Point, Reinsmith solicited at least one Castle Point employee to become an employee of First Call Mortgage.

9.      Immediately following the termination of their employment with Castle Point, Reinsmith and Dinsdale began working as Loan Officers for First Call Mortgage in Massachusetts.

## COUNT I – BREACH OF CONTRACT – DINSDALE

10.     Castle Point incorporates by reference the allegations contained in paragraphs 1 through 9 above.

11.     Dinsdale has breached his Agreement with Castle Point.

12.     Dinsdale's breach has damaged Castle Point.

## COUNT II – BREACH OF CONTRACT – REINSMITH

13.     Castle Point incorporates by reference the allegations contained in paragraphs 1 through 12 above.

14.     During his employment with Castle Point and following the termination of his employment with Castle Point, Reinsmith breached Sections 3, 5 and 6 of his Agreement with Castle Point.

15.     Reinsmith's breach has damaged Castle Point.

## COUNT III – BREACH OF FIDUCIARY DUTY – REINSMITH

16.     Castle Point incorporates by reference the allegations contained in paragraphs 1 through 15 above.

17.     Reinsmith owed Castle Point a duty not to appropriate to himself or third parties confidential or proprietary information of Castle Point, including the identity of customers and prospective customers.

18.     While employed by Castle Point, Reinsmith owed Castle Point a duty not to act in derogation of Castle Point's interests.

19.     While employed by Castle Point, Reinsmith owed Castle Point a duty not to actively compete with it.

20.     Reinsmith breached these duties to Castle Point.

21.     Reinsmith's breach damaged Castle Point.

## COUNT IV – INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS – REINSMITH

22.     Castle Point incorporates by reference the allegations contained in paragraphs 1 through 21 above.

23.     Reinsmith knew that Dinsdale had executed a Loan Officer Confidentiality, Non-Competition and Non-Solicitation Agreement with Castle Point.

24.     Reinsmith intentionally interfered with that Agreement, with improper means or motive, by inducing Dinsdale to start working for First Call Mortgage in violation of that agreement.

25.     Reinsmith's intentional interference damaged Castle Point.

WHEREFORE, Castle Point requests that this Court dismiss plaintiffs' claims, enter judgment in its favor, with damages, as well as such other relief as this Court deems just and proper.

## JURY DEMAND

Castle Point demands a trial by jury on all claims so triable as of right.

CASTLE POINT MORTGAGE, INC.,

By its attorneys,

s/Christa von der Luft
Christa von der Luft (BBO#600362)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Blvd.
Boston, MA 02210
(617) 439-2000

Date:  July 12, 2005
1444165.1

# EXHIBIT A

# TO

# ANSWER, COUNTERCLAIM AND JURY DEMAND OF CASTLE POINT MORTGAGE, INC.



**Castle Point Mortgage, Inc.**
**9151 Rumsey Road, Suite 190**
**Columbia MD, 21045-1946**
**Phone (800) 469-4850   Fax (800) 461-0346**

# LOAN OFFICER CONFIDENTIALITY, NON-COMPETITION, AND NON-SOLICITATION AGREEMENT

THIS CONFIDENTIALITY, NON-COMPETITION, AND NON-SOLICITATION AGREEMENT ("AGREEMENT") is made and entered into on ___4/1/03___ by and between CASTLE POINT MORTGAGE, INC. ("CPM") and ___Kevin Dinsdale___ ("Employee").

## WITNESSETH:

**WHEREAS,** CPM has offered Employee employment provided that Employee meets certain terms and conditions;

**WHEREAS,** in connection with Employee's duties as a loan officer, Employee will have access to and/or be provided with and, in some circumstances, prepare and create confidential and proprietary business information and trade secrets belonging to CPM; and

**WHEREAS,** as a precondition to Employee's employment with CPM, CPM has required assurance by Employee that CPM's confidential and proprietary information and trade secrets will be fully protected as hereinafter provided, and that both during and after the term of employment, Employee will not compete with CPM except as hereinafter provided; and

**WHEREAS,** Employee is desirous of accepting employment and the substantial benefits to Employee flowing from that employment and as a condition of that employment, Employee is willing and has agreed to abide by and faithfully observe Employee's obligations as set forth herein.

**NOW, THEREFORE,** in consideration of the offer of employment and the mutual

-1-

covenants and agreements herein contained, and in reliance upon the recitals set forth above, which are incorporated herein by reference, it is agreed between the parties hereto as follows:

## AGREEMENT

1.    Acknowledgments of Employee

Employee acknowledges that, in connection with Employee's employment as a loan officer, and in consideration of this Agreement, Employee will receive or will become eligible to receive substantial consideration, including but not limited to salary and employee benefits. Employee further acknowledges that the position of loan officer and all benefits and potential benefits to Employee from employment in that capacity will be conferred by CPM upon Employee only because and on condition of Employee's willingness to commit her/his best efforts and loyalty to CPM, including abiding by the confidentiality, non-competition, non-solicitation and other provisions of this Agreement. Employee also acknowledges that, in event of any violation of this Agreement by Employee, monetary damages alone will be inadequate to compensate CPM and CPM will be entitled to injunctive relief against Employee in addition to any other remedies provided by law or in equity.

2.    Prior Employment

Employee covenants that he/she is not subject to any employment contract, including restrictive covenants or non-competition, non-solicitation or confidentiality agreements, with any prior employers or arising out of his employment with CPM. Employee also covenants that his/her employment, by and with CPM, does not and will not breach any employment agreement that Employee executed, including restrictive covenants or non-competition or non-solicitation agreements, prior to his/her employment with CPM. Employee further covenants that his/her employment by and with CPM does not and will not breach any agreement that Employee executed, in which Employee promised or agreed to keep proprietary information obtained by Employee prior to his/her employment with CPM confidential. Employee further represents that Employee has not brought and will not bring any confidential information of a prior employer to CPM or use any such confidential information in the performance of his/her employment with CPM.

3.    Confidentiality

Employee acknowledges that as a loan officer of CPM, Employee shall have access to, learn, be provided with and in some cases will prepare and create certain confidential and propriety information and trade secrets of CPM. Employee therefore agrees that he/she shall not, during the term of this Agreement or at any time thereafter, reveal, disclose or divulge, or otherwise use or exploit, either directly or indirectly, to any person, firm, partnership, agency, corporation, or other entity, any proprietary information belonging to CPM, including, but not limited to any of the following: operating manuals, any information concerning CPM's business, formulas, patterns, devices, protocols, systems, processes, methods, employee lists, customer

-2-

lists, client lists, vendor information, vendor lists, referral source information, referral source lists, designs, procedures, techniques, inventions, computer programs, contracts, contract forms, business forms, pricing and identities, addresses, telephone numbers, electronic mail addresses, or other methods of contacting persons or business entities who use the services of or have been clients or customers of CPM, the internal business organization of CPM, its structure, financial information, provider contracting arrangements, benefit plans, performance standards, quality information, technical or non-technical data, formulas, patterns, compilations, programs, devices, methods, techniques, drawings, processes, financial data, or lists of actual or potential customers or suppliers, all of which are of substantial value to CPM in its business.

Employee understands and agrees that if, during the term of his/her employment or at any time thereafter, Employee discloses to third parties, uses for Employee's own benefit or for the benefit of third parties, or copies or makes notes of any of the aforementioned confidential and proprietary information and trade secrets, except as may be required by Employee's duties with CPM, such conduct shall constitute a breach of the confidence and trust bestowed upon Employee by CPM and Employee expressly agrees that injunctive relief, in addition to any other remedies provided by law or in equity, shall be necessary and appropriate in the event of such conduct by Employee.

Employee agrees not to use or cause to be used for Employee's own benefit or for the benefit of any third parties or to disclose to any third party in any manner, directly or indirectly, any information of a confidential or proprietary nature, trade secrets or any other knowledge or information, except that which is public knowledge, of or relating to the business of CPM at any time during or after Employee's term of employment with CPM, without the express prior written consent of CPM.

4.    Return of Information

Immediately upon or prior to the termination of employment with CPM, Employee agrees to return to CPM, and not retain a copy of, all written information, materials, or equipment, records of research, proposals, reports, memoranda, computer software and programming, budgets and other financial information, documents, and other materials or records or writings of any type, including copies thereof, made, used or obtained by Employee in connection with his/her employment with CPM. For purposes of this Agreement, the words "document" or "material" mean any computer disk, tape, or other medium for the storage and/or retention of information, data, or program in electromagnetic or digital form.

5.    Non-solicitation

Employee agrees that during his/her employment and for a period of one (1) year following the termination of Employee's employment with CPM, whether voluntary or involuntary, Employee shall not, other than on behalf of CPM, either personally, as a consultant, or through an employer, firm, agent, servant, employee, partner, stockholder, representative, affiliate, or other entity, contact or solicit, directly or indirectly, prospective, current or former

clients, customers, or referral sources, or employees of CPM.

6.    Non-competition

Employee agrees that both during the term of his/her agreement and for a period of six (6) months following the termination of his/her employment with CPM for any reason, whether voluntary or involuntary, Employee will not compete directly or indirectly, intentionally or unintentionally with CPM, including without limitation, soliciting, engaging, or participating in, becoming employed by or rendering any other services to any other person, partnership, corporation, or other entity engaged in some or all of the same business as CPM and/or any business similar to or in competition with CPM, in the following states:  Maryland, New Jersey, New York or Massachusetts (the "Non-competition Area").

Employee also agrees that both during the term of his/her employment and for a period of six (6) months following the termination of his/her employment, whether voluntary or involuntary, Employee will not be associated with, either as an employee, consultant, partner, affiliate, agent, individual, officer, director, or shareholder any business entity that engages in mortgage brokerage services or any other products or services offered by CPM or which directly or indirectly competes with any website, service or product of CPM, in the Non-competition Area.

7.    Enforcement Not A Hardship

Employee agrees that any cause of action that he/she may have against CPM does not constitute a defense to the enforcement of this Agreement.  Employee also agrees that the restrictions set forth in this Agreement, both in terms of geographic and time limitations and with regard to confidentiality and non-solicitation, do not unduly or unreasonably interfere with his/her ability to obtain employment in his/her chosen field.

Employee acknowledges that a breach of any of the restrictions set forth in this Agreement by Employee will result in irreparable injury which is inadequately compensable in damages or other legal remedies, and that CPM may seek injunctive relief against the breach, or threatened breach of this Agreement and/or specific performance and damages, as well as other legal and equitable remedies including attorney's fees which may be available and to which CPM may be entitled.

8.    Representations by the Employee

Employee hereby represents that Employee has had an opportunity to review this Agreement; Employee has read and fully understands Employee's duties and obligations as set forth in this Agreement, and Employees agrees that the restrictions set forth in this Agreement would not unduly or unreasonably interfere with or curtail Employee's ability and legitimate efforts to obtain employment in Employee's chosen field or to earn a livelihood following any termination of Employee's employment with CPM.

-4-

9.    Covenant as Independent Agreement

The covenants on the part of Employee, set forth in this Agreement, shall be construed as an agreement independent of any other agreement or promise between Employee and CPM, and the existence of any claim or cause of action alleged by Employee against CPM shall not constitute a defense to enforcement of this Agreement by CPM against Employee.

10.    Severability

If any term, provision or paragraph of this Agreement shall be determined by a court of competent jurisdiction to be invalid or unenforceable for any reason, such determination shall not affect the remaining terms, provisions or paragraphs of the Agreement which shall continue to be given full force and effect. If any term or provision of the Non-competition and Non-solicitation sections of this Agreement shall be determined by a court of competent jurisdiction to be unenforceable because the time period and/or geographic areas or scope of restriction exceeds the maximum time period, geographic area, or scope, then the appropriate provisions set forth herein shall be amended to conform to the maximum time period, areas of restriction and scope of restrictions which the court shall deem necessary to permit enforcement of such term, provision or paragraph in restricted form. Should any court of competent jurisdiction find any term, provision or paragraph of this Agreement invalid or unenforceable, or enforceable only in restricted form, then any such finding shall apply only to the jurisdiction of such court and shall not serve to alter or amend this Agreement in any other jurisdiction.

11.    Successors and Assigns

This Agreement shall be binding upon Employee and all of Employee's heirs and legal representatives and shall be binding upon and inure to the benefit of CPM, its successors and assigns.

12.    Waiver of Breach

The waiver by CPM of a breach by Employee of any provision or covenant of this Agreement shall not operate or be construed as a waiver of any subsequent breach by Employee.

13.    Notification

During Employee's employment, and for a period of six (6) months following termination of his/her employment with CPM, Employee agrees to inform any prospective employer (whether directly or indirectly contacted) of the existence of this Agreement and to show a copy of this Agreement to any prospective employer.

14.    Captions

-5-

The captions of the paragraphs and provisions of this Agreement are for convenience only and shall not affect in any way the meaning or interpretation of this Agreement or any of the provisions hereof.

15.    Governing Law

This Agreement shall be construed and enforced in accordance with the laws of the State of Maryland.

16.    Complete Agreement

This Agreement constitutes the entire and only understanding and agreement between the parties hereto with respect to the subject matter hereof and, except as expressly set forth herein, may be amended only by a writing signed by each of the parties hereto.    All prior or contemporaneous understandings, discussions or agreements with respect to said subject matter are expressly superseded by the Agreement.

**IN WITNESS WHEREOF,** and intending to be legally bound hereby, the parties hereto have executed this Agreement as of the day and year first above written.

**ATTEST:**                                   **CASTLE POINT MORTGAGE, INC.**

By: _____
Gerald Infantino, President

**WITNESS**

_____              By: _____
Employee

145757

-6-

# EXHIBIT B

## TO

# ANSWER, COUNTERCLAIM AND JURY DEMAND OF CASTLE POINT MORTGAGE, INC.



**Castle Point Mortgage, Inc.**
**9151 Rumsey Road, Suite 190**
**Columbia MD, 21045-1946**
**Phone (800) 469-4850   Fax (800) 461-0346**

# LOAN OFFICER CONFIDENTIALITY, NON-COMPETITION, AND NON-SOLICITATION AGREEMENT

THIS CONFIDENTIALITY, NON-COMPETITION, AND NON-SOLICITATION AGREEMENT ("AGREEMENT") is made and entered into on ~APRIL 1, 2003~ by and between CASTLE POINT MORTGAGE, INC. ("CPM") and ~PAUL REINSMITH~ ("Employee").

## WITNESSETH:

**WHEREAS**, CPM has offered Employee employment provided that Employee meets certain terms and conditions;

**WHEREAS**, in connection with Employee's duties as a loan officer, Employee will have access to and/or be provided with and, in some circumstances, prepare and create confidential and proprietary business information and trade secrets belonging to CPM; and

**WHEREAS**, as a precondition to Employee's employment with CPM, CPM has required assurance by Employee that CPM's confidential and proprietary information and trade secrets will be fully protected as hereinafter provided, and that both during and after the term of employment, Employee will not compete with CPM except as hereinafter provided; and

**WHEREAS**, Employee is desirous of accepting employment and the substantial benefits to Employee flowing from that employment and as a condition of that employment, Employee is willing and has agreed to abide by and faithfully observe Employee's obligations as set forth herein.

**NOW, THEREFORE**, in consideration of the offer of employment and the mutual

-1-

covenants and agreements herein contained, and in reliance upon the recitals set forth above, which are incorporated herein by reference, it is agreed between the parties hereto as follows:

AGREEMENT

1.     <u>Acknowledgments of Employee</u>

Employee acknowledges that, in connection with Employee's employment as a loan officer, and in consideration of this Agreement, Employee will receive or will become eligible to receive substantial consideration, including but not limited to salary and employee benefits. Employee further acknowledges that the position of loan officer and all benefits and potential benefits to Employee from employment in that capacity will be conferred by CPM upon Employee only because and on condition of Employee's willingness to commit her/his best efforts and loyalty to CPM, including abiding by the confidentiality, non-competition, non-solicitation and other provisions of this Agreement. Employee also acknowledges that, in event of any violation of this Agreement by Employee, monetary damages alone will be inadequate to compensate CPM and CPM will be entitled to injunctive relief against Employee in addition to any other remedies provided by law or in equity.

2.     <u>Prior Employment</u>

Employee covenants that he/she is not subject to any employment contract, including restrictive covenants or non-competition, non-solicitation or confidentiality agreements, with any prior employers or arising out of his employment with CPM. Employee also covenants that his/her employment, by and with CPM, does not and will not breach any employment agreement that Employee executed, including restrictive covenants or non-competition or non-solicitation agreements, prior to his/her employment with CPM. Employee further covenants that his/her employment by and with CPM does not and will not breach any agreement that Employee executed, in which Employee promised or agreed to keep proprietary information obtained by Employee prior to his/her employment with CPM confidential. Employee further represents that Employee has not brought and will not bring any confidential information of a prior employer to CPM or use any such confidential information in the performance of his/her employment with CPM.

3.     <u>Confidentiality</u>

Employee acknowledges that as a loan officer of CPM, Employee shall have access to, learn, be provided with and in some cases will prepare and create certain confidential and propriety information and trade secrets of CPM. Employee therefore agrees that he/she shall not, during the term of this Agreement or at any time thereafter, reveal, disclose or divulge, or otherwise use or exploit, either directly or indirectly, to any person, firm, partnership, agency, corporation, or other entity, any proprietary information belonging to CPM, including, but not limited to any of the following: operating manuals, any information concerning CPM's business, formulas, patterns, devices, protocols, systems, processes, methods, employee lists, customer

-2-

lists, client lists, vendor information, vendor lists, referral source information, referral source lists, designs, procedures, techniques, inventions, computer programs, contracts, contract forms, business forms, pricing and identities, addresses, telephone numbers, electronic mail addresses, or other methods of contacting persons or business entities who use the services of or have been clients or customers of CPM, the internal business organization of CPM, its structure, financial information, provider contracting arrangements, benefit plans, performance standards, quality information, technical or non-technical data, formulas, patterns, compilations, programs, devices, methods, techniques, drawings, processes, financial data, or lists of actual or potential customers or suppliers, all of which are of substantial value to CPM in its business.

Employee understands and agrees that if, during the term of his/her employment or at any time thereafter, Employee discloses to third parties, uses for Employee's own benefit or for the benefit of third parties, or copies or makes notes of any of the aforementioned confidential and proprietary information and trade secrets, except as may be required by Employee's duties with CPM, such conduct shall constitute a breach of the confidence and trust bestowed upon Employee by CPM and Employee expressly agrees that injunctive relief, in addition to any other remedies provided by law or in equity, shall be necessary and appropriate in the event of such conduct by Employee.

Employee agrees not to use or cause to be used for Employee's own benefit or for the benefit of any third parties or to disclose to any third party in any manner, directly or indirectly, any information of a confidential or proprietary nature, trade secrets or any other knowledge or information, except that which is public knowledge, of or relating to the business of CPM at any time during or after Employee's term of employment with CPM, without the express prior written consent of CPM.

4.    Return of Information

Immediately upon or prior to the termination of employment with CPM, Employee agrees to return to CPM, and not retain a copy of, all written information, materials, or equipment, records of research, proposals, reports, memoranda, computer software and programming, budgets and other financial information, documents, and other materials or records or writings of any type, including copies thereof, made, used or obtained by Employee in connection with his/her employment with CPM.  For purposes of this Agreement, the words "document" or "material" mean any computer disk, tape, or other medium for the storage and/or retention of information, data, or program in electromagnetic or digital form.

5.    Non-solicitation

Employee agrees that during his/her employment and for a period of one (1) year following the termination of Employee's employment with CPM, whether voluntary or involuntary, Employee shall not, other than on behalf of CPM, either personally, as a consultant, or through an employer, firm, agent, servant, employee, partner, stockholder, representative, affiliate, or other entity, contact or solicit, directly or indirectly, prospective, current or former

-3-

clients, customers, or referral sources, or employees of CPM.

6.      Non-competition

Employee agrees that both during the term of his/her agreement and for a period of six (6) months  following the termination of his/her employment with CPM for any reason, whether voluntary or involuntary, Employee will not compete directly or indirectly, intentionally or unintentionally with CPM, including without limitation, soliciting, engaging, or participating in, becoming employed by or rendering any other services to any other person, partnership, corporation, or other entity engaged in some or all of the same business as CPM and/or any business similar to or in competition with CPM, in the following states:  Maryland, New Jersey, New York or Massachusetts (the "Non-competition Area").

Employee also agrees that both during the term of his/her employment and for a period of six (6) months  following the termination of his/her employment, whether voluntary or involuntary, Employee will not be associated with, either as an employee, consultant, partner, affiliate, agent, individual, officer, director, or shareholder any business entity that engages in mortgage brokerage services or any other products or services offered by CPM or which directly or indirectly competes with any website, service or product of CPM, in the Non-competition Area.

7.      Enforcement Not A Hardship

Employee agrees that any cause of action that he/she may have against CPM does not constitute a defense to the enforcement of this Agreement.  Employee also agrees that the restrictions set forth in this Agreement, both in terms of geographic and time limitations and with regard to confidentiality and non-solicitation, do not unduly or unreasonably interfere with his/her ability to obtain employment in his/her chosen field.

Employee acknowledges that a breach of any of the restrictions set forth in this Agreement by Employee will result in irreparable injury which is inadequately compensable in damages or other legal remedies, and that CPM may seek injunctive relief against the breach, or threatened breach of this Agreement and/or specific performance and damages, as well as other legal and equitable remedies including attorney's fees which may be available and to which CPM may be entitled.

8.      Representations by the Employee

Employee hereby represents that Employee has had an opportunity to review this Agreement; Employee has read and fully understands Employee's duties and obligations as set forth in this Agreement, and Employees agrees that the restrictions set forth in this Agreement would not unduly or unreasonably interfere with or curtail Employee's ability and legitimate efforts to obtain employment in Employee's chosen field or to earn a livelihood following any termination of Employee's employment with CPM.

-4-

9.    Covenant as Independent Agreement

The covenants on the part of Employee, set forth in this Agreement, shall be construed as an agreement independent of any other agreement or promise between Employee and CPM, and the existence of any claim or cause of action alleged by Employee against CPM shall not constitute a defense to enforcement of this Agreement by CPM against Employee.

10.    Severability

If any term, provision or paragraph of this Agreement shall be determined by a court of competent jurisdiction to be invalid or unenforceable for any reason, such determination shall not affect the remaining terms, provisions or paragraphs of the Agreement which shall continue to be given full force and effect. If any term or provision of the Non-competition and Non-solicitation sections of this Agreement shall be determined by a court of competent jurisdiction to be unenforceable because the time period and/or geographic areas or scope of restriction exceeds the maximum time period, geographic area, or scope, then the appropriate provisions set forth herein shall be amended to conform to the maximum time period, areas of restriction and scope of restrictions which the court shall deem necessary to permit enforcement of such term, provision or paragraph in restricted form. Should any court of competent jurisdiction find any term, provision or paragraph of this Agreement invalid or unenforceable, or enforceable only in restricted form, then any such finding shall apply only to the jurisdiction of such court and shall not serve to alter or amend this Agreement in any other jurisdiction.

11.    Successors and Assigns

This Agreement shall be binding upon Employee and all of Employee's heirs and legal representatives and shall be binding upon and inure to the benefit of CPM, its successors and assigns.

12.    Waiver of Breach

The waiver by CPM of a breach by Employee of any provision or covenant of this Agreement shall not operate or be construed as a waiver of any subsequent breach by Employee.

13.    Notification

During Employee's employment, and for a period of six (6) months following termination of his/her employment with CPM, Employee agrees to inform any prospective employer (whether directly or indirectly contacted) of the existence of this Agreement and to show a copy of this Agreement to any prospective employer.

14.    Captions

The captions of the paragraphs and provisions of this Agreement are for convenience only and shall not affect in any way the meaning or interpretation of this Agreement or any of the provisions hereof.

15.    Governing Law

This Agreement shall be construed and enforced in accordance with the laws of the State of Maryland.

16.    Complete Agreement

This Agreement constitutes the entire and only understanding and agreement between the parties hereto with respect to the subject matter hereof and, except as expressly set forth herein, may be amended only by a writing signed by each of the parties hereto. All prior or contemporaneous understandings, discussions or agreements with respect to said subject matter are expressly superseded by the Agreement.

**IN WITNESS WHEREOF,** and intending to be legally bound hereby, the parties hereto have executed this Agreement as of the day and year first above written.

**ATTEST:**                                              **CASTLE POINT MORTGAGE, INC.**

By: _____
                                                          Gerald Infantino, President

**WITNESS**

_____          By: _____
145757                                                    Employee

-6-