UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PAUL REINSMITH and KEVIN DINSDALE, Individually and on Behalf of all Others Similarly Situated | ) ) ) ) | |
| Plaintiffs, | ) ) ) ) | C.A. No. 05 11168 GAO |
| v. | ) ) | |
| Castle Point Mortgage, Inc. | ) ) | |
| Defendant. | ) ) ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM

I.    INTRODUCTION

Plaintiffs are former employees of defendant Castle Point Mortgage, Inc. who allege, on

behalf of themselves and others similarly situated, that they are entitled to overtime pay under

the Fair Labor Standards Act, 29 U.S.C. §§ 201-214, in addition to the salaries and commissions

that they received as Loan Officers. Castle Point has filed counterclaims against Paul Reinsmith

based on his diversion of loan opportunities to competitors while employed by Castle Point, his

solicitation of other Castle Point employees to leave Castle Point in violation of the Loan Officer

Confidentiality, Non-Competition, and Non-Solicitation Agreement ("Loan Officer Agreement")

he signed with Castle Point; and his employment by a competing mortgage company in violation

of the Loan Officer Agreement. Castle Point has also filed a counterclaim against Kevin

Dinsdale based on his employment by a competing mortgage company in violation of the Loan

Officer Agreement. Contrary to plaintiffs' contentions, this Court does have jurisdiction over

Castle Point's counterclaims and they should not be dismissed.

II.    FACTUAL BACKGROUND

Reinsmith and Dinsdale are former Loan Officers of Castle Point. Counterclaim, ¶¶ 1-2. Upon commencing employment with Castle Point, Reinsmith and Dinsdale both executed Loan Officer Agreements. Counterclaim, ¶ 3. Pursuant to the Loan Officer Agreements, Reinsmith and Dinsdale agreed, *inter alia*, that: (1) during their employment, and for a one year period following the termination of their employment with Castle Point, they would not contact or solicit, directly or indirectly, prospective, current or former clients, customers, referral sources or employees of Castle Point other than for the benefit of Castle Point; and (2) during their employment and for a six month period following their employment, they would not compete with Castle Point and would not become employed by any entity engaged in some or all of the same business as Castle Point in Massachusetts. Counterclaim, ¶¶ 5-6.

While still employed by Castle Point, Reinsmith solicited customers on behalf of First Call Mortgage, Inc., a Massachusetts-based competitor of Castle Point. Counterclaim, ¶ 7. While still employed by Castle Point and/or within the year following the termination of his employment with Castle Point, Reinsmith solicited at least one Castle Point employee to become an employee of First Call Mortgage. Counterclaim, ¶ 8. Immediately following the termination of their employment with Castle Point, Reinsmith and Dinsdale began working as Loan Officers for First Call Mortgage in Massachusetts. Counterclaim, ¶ 9.

III.    THIS COURT HAS DIVERSITY JURISDICTION OVER DEFENDANTS' COUNTERCLAIMS.

Federal courts have jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between the citizens of different states. 28 U.S.C. § 1332(a)(1). Plaintiffs premise their contention that this Court lacks diversity jurisdiction on two erroneous factual assumptions: (i) that Castle Point is a

Massachusetts citizen; and (ii) that damages associated with Castle Point's counterclaims amount to less than $75,000.

For purposes of federal diversity jurisdiction, a corporation is deemed to be a citizen of the state in which it is incorporated and the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).  Castle Point is incorporated in New Jersey[1] and has its headquarters in Elkridge, Maryland.  *See* Affidavit of Christopher Infantino, attached as Exhibit A, ¶ 2.  Castle Point is thus not a citizen of Massachusetts.  Plaintiffs, in contrast, are allegedly citizens of Massachusetts, which provides the necessary diversity of citizenship for diversity jurisdiction.  Complaint, ¶ 3.

The amount in controversy requirement is met unless it appears to a "legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938), *cited by Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1st Cir. 2001).  Castle Point's claims against each of Reinsmith and Dinsdale exceed $75,000.

Castle Point seeks damages from Reinsmith for his unlawful conduct in three main areas: (i) working for a competitor with offices in the same office park as Castle Point within six months of the termination of his employment at Castle Point in violation of his Loan Officer Agreement; (ii) soliciting at lease one other Castle Point employee to terminate his employment with Castle Point in violation of his Loan Officer Agreement; and (iii) diverting loan opportunities from Castle Point to its competitors while still employed by Castle Point.  For violation of his covenant not to compete, Castle Point will seek as damages, *inter alia*, gross revenues generated by Reinsmith for his new employer during the six-month non-compete

---

[1] In its Answer, Castle Point denied plaintiffs' allegations that it was incorporated Massachusetts. *See* Answer, ¶ 4.

period. Castle Point estimates this revenue alone to be well in excess of $75,000. Infantino Aff., ¶ 5. Upon information and belief, Reinsmith has also been involved in soliciting at least one other employee to terminate his employment with Castle Point. Castle Point intends to seek recovery of the costs associated with hiring and training a new employee, as well as the revenues lost during the hiring and training period, which Castle Point estimates also to be in excess of $75,000. Infantino Aff., ¶ 6. Lastly, there are lost revenues associated with the loan opportunities that Reinsmith diverted to Castle Point's competitors. Discovery is needed to determine the amount of these lost revenues. With Dinsdale, Castle Point also will be seeking to recover as damages any revenue generated by Reinsmith for his new employer during the six-month non-compete period. Castle Point estimates this revenue alone to be well in excess of $75,000. Infantino Aff., ¶ 5.

This court thus has diversity jurisdiction over Castle Point's counterclaims against Reinsmith and Dinsdale because (i) they are citizens of different states; and (ii) the amount in controversy for each counterclaim defendant is in excess of $75,000.

IV.    THIS COURT ALSO HAS SUPPLEMENTAL JURISDICTION OVER DEFENDANT'S COUNTERCLAIMS.

In any civil action in which "the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Here, the district court has original jurisdiction because Plaintiffs' claims arise under the Fair Labor Standards Act, a federal statute. Thus, with limited exceptions,[2] any counterclaims raised by Castle Point will fall

_____

[2] A district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original

within this Court's supplemental jurisdiction so long as they form part of the same case or controversy under Article III.

Castle Point's counterclaims form part of the same "case or controversy" as Plaintiffs' FLSA claims. A court "exercising jurisdiction over an asserted federal-question claim must also exercise supplemental jurisdiction over asserted state law claims that arise from the same nucleus of operative facts." *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256 (1st Cir. 1996). The First Circuit has often equated the test for supplemental jurisdiction with the test for determining whether a counterclaim is compulsory under Fed. R. Civ. P. 13. *Inglesias v. Mut. Life Ins. Co.*, 156 F.3d 241, 242 (1st Cir. 1998). A counterclaim is compulsory if it arises out of "the same transaction or occurrence that is the subject of the opposing party's claim." FED. R. CIV. P. 13(a). One of the several tests for determining whether the claims arise from the same "transaction or occurrence" is to determine whether there is "a logical relation between the claim and the counterclaim." *Inglesias,* 156 F.3d at 241-42.

Here, the same set of operative facts serve as the basis for both claims. Both plaintiffs' claims and Castle Point's counterclaims arise out of the same employment relationship between plaintiffs and Castle Point. Plaintiffs are suing for overtime wages, allegedly due under the FLSA, while Castle Point is suing plaintiffs for violating their Loan Officer Agreements under which they were employed by Castle Point. There is a logical relationship between the plaintiffs' claims and defendants' counterclaims because all the claims derive from the parties' employment relationship. *See Prakash v. American Univ.*, 727 F.2d 1174, 1183 (D.D.C. 1984) (plaintiff's FLSA claims against his former employer and state law claims for breach of contract,

---

jurisdiction,
    (3) the district court has dismissed all claims over which it has original jurisdiction, or
    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

interference with contractual relations, deceit, and defamation arise from common nucleus of operative facts). In addition, Castle Point has asserted claims against Reinsmith for diverting loan opportunities to competitors while employed by Castle Point – Reinsmith's conduct in this area will also be an issue in his FLSA claims as Castle Point will be contesting his ability to seek pay for hours worked in excess of 40 hours per week when the "work" he was performing was not for the benefit of Castle Point.

Contrary to plaintiffs' assertions, there are no compelling reasons for this Court to decline to exercise supplemental jurisdiction. First, the existence of counterclaims should not in anyway delay the issuance of notice to potential class members. Indeed, defense counsel has already initiated communications with plaintiffs' counsel concerning the form of such a notice. In addition, even in the absence of notice being sent out, three potential class members have already filed opt-in notices. Second, the mere fact that plaintiffs seek to assert claims on a collective basis does not limit Castle Point's right to assert counterclaims. *See, e.g., M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 103 F.R.D. 635 (D. Mass. 1984) (permitting discovery to proceed concerning defendant's counterclaims against Rule 23 class members). Plaintiff's allegation that Castle Point's counterclaims will "unduly intimidate" potential plaintiffs from opting is also not supported by events to date: Castle Point's counterclaims were filed on July 12, 2005; since then, three additional plaintiffs have filed opt-in notices.

---

28 U.S.C. § 1367(c).

V.    CONCLUSION

Plaintiffs' motion to dismiss should be dismissed because this Court has a basis to

exercise both diversity jurisdiction and supplemental jurisdiction over Castle Point's counter

claims.

CASTLE POINT MORTGAGE, INC.,

By its attorney,


/s/ Christa von der Luft
Christa von der Luft
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
Date: August 15, 2005                                (617) 439-2000


1452872.2

<u>EXHIBIT A</u>
<u>AFFIDAVIT OF CHRISTOPHER INFANTINO</u>

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PAUL REINSMITH and KEVIN DINSDALE, Individually, and on Behalf of all Others Similarly Situated, | ) ) ) ) | C.A. No. 05 11168 GAO |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| CASTLE POINT MORTGAGE, INC., | ) ) | |
| Defendant. | ) ) | |

## AFFIDAVIT OF CHRISTOPHER INFANTINO

I, Christopher Infantino, hereby state, under oath, as follows:

1.      I am the Vice President and Secretary, as well as part owner, of Castle Point

Mortgage, Inc. I have held this position since July, 2002. Before starting Castle Point, I worked

at Champion Mortgage as a Loan Officer, Sales Manager and Regional Manager for three years.

2.      Castle Point is incorporated in New Jersey and has its headquarters in Elkridge,

Maryland.

3.      As a Vice President of Castle Point, I am familiar with the amount of revenue

loan officers generate for Castle Point on a monthly basis as well as the costs to Castle Point in

recruiting, hiring and training new Loan Officers.

4.      I supervised both Paul Reinsmith Kevin Dinsdale and during part of their

employment with Castle Point.

5.      Based on my knowledge of Reinsmith's and Dinsdale's performance at Castle

Point, and my knowledge of the mortgage loan industry generally, I estimate that over a six-

month period, both Reinsmith and Dinsdale will each generate in excess of $200,000 in gross revenue on behalf of their new employer.

6.    To hire a new Loan Officer, Castle Point either uses the services of an internal recruiter whose salary Castle Point pays, or pays a fee to an outside recruiter of approximately $4,000. It takes at least one month to find, recruit and hire a new Loan Officer. After hire, it takes approximately 130 hours of manager time over a three-month time period to train the new Loan Officer. In addition, a new Loan Officer generally does not start producing revenue for Castle Point for approximately three months following his or her date of hire. Between recruiting expenses, training expenses and lost revenue while the new Loan Officer is being hired and trained, I estimate that each departing employee represents a cost to Castle Point in excess of $100,000.

Signed under the penalties of perjury, this __15th__ day of August, 2005.

Christopher Infantino

1453605.2

- 2 -