## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

PAUL REINSMITH and KEVIN )
DINSDALE, Individually, and on Behalf of )
All Others Similarly Situated, )
  )
          Plaintiffs, )
  )   Case No. 051168 GAO
     v. )
  )
CASTLE POINT MORTGAGE, INC., )
  )
          Defendant. )

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS AGAINST ERIC JENSEN AND AMANDA RAFFENELLO

### I.   ISSUES PRESENTED

1. **Retaliation.** Section 215(a)(3) of the Fair Labor Standards Act prohibits retaliation against former employees that file a complaint for overtime under the Act. Defendant has now countersued five of the plaintiffs in this case—nearly one third of those involved—only asserting these claims against former emloyees who have joined this overtime lawsuit. Should CastlePoint's counterclaims be dismissed as they have been brought to retaliate against these plaintiffs and to intimidate others who are considering joining this action?

2. **Lack of Jurisdiction.** Permissive counterclaims must have an independent basis for jurisdiction: federal questions, supplemental or diversity—none of which can be established through speculation. In its counterclaim, Defendant asserts— without any support—that opt-in Eric Jensen generated "$140,000 in gross revenue" for his new employer and provides absolutely no evidence of its alleged damages from Amanda Raffenello's alleged wrongdoing. Should Defendant's counterclaims be dismissed for lack of jurisdiction as they do not meet the $75,000 amount-in-controversy threshold?

## II. **BACKGROUND**

20. On June 6, 2005, Plaintiffs filed a collective action complaint against the Defendant seeking monetary damages and other relief provided under the Fair Labor Standards Act for Defendant's widespread failure to pay overtime to its loan officers.

21. On July 12, 2005, the Defendant filed an answer and asserted state-law counterclaims against named Plaintiffs, Paul Reinsmith and Kevin Dinsdale. Plaintiffs moved to dismiss these claims on August 1, 2005.

22. Defendant fired Charles Smith in May 25, 2005. Smith joined this lawsuit on July 21, 2005. On August 10, 2005, Defendant filed a counterclaim against Smith. Plaintiffs moved to dismiss this counterclaim on August 29, 2005.

23. Eric Jensen joined this lawsuit on November 7, 2005. On November 28, 2005, Defendant filed a counterclaim against Jensen.

24. Amanda Raffenello joined this lawsuit on November 9, 2005. Defendant countersued her on November 29, 2005.

25. As with its three prior counterclaims, Defendant's latest counterclaims serve only to punish those who have joined this lawsuit and to deter others from joining. Defendant's retaliatory counterclaim has little, if anything, to do with Plaintiffs' action to recover unpaid overtime and should be dismissed.

## III. **ARGUMENT**

### A.   Defendant's Counterclaims Should Be Dismissed Because They Are Retaliatory And Are Prohibited By 29 U.S.C. §215(a)(3)

26. Section 15(a)(3) of the Fair Labor Standards Act makes it unlawful for:

> any person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint... under or related to this chapter. 29 U.S.C. §215(a)(3).

2

27. The purpose of Section 15(a)(3) is to foster a climate in which compliance with the

substantive provisions of the Fair Labor Standards Act would be enhanced. Mitchell

v. Robert De Mario Jewelry, 361 U.S. 288, 293; 80 S.Ct. 332, 336; 4 L.Ed.2d 323

(1960). Rather than require government supervision, Congress chose to rely on

information and complaints received from employees seeking to vindicate their

rights. See Mitchell at 292. But this type of enforcement of the Act could only be

achieved if employees felt free to approach officials with grievances. Id. Congress

and the Supreme Court recognized that employees could only do so without fear of

economic retaliation:

"…fear of economic retaliation might often operate to induce aggrieved
employees to quietly accept substandard conditions." Id.

28. In concluding that a discharged employee could be reimbursed for lost wages in

Mitchell, the Supreme Court reasoned that the remedies provided by the Fair Labor

Standards Act would be rendered meaningless if an employer could threaten a worker

with retaliatory economic harm:

To an employee considering an attempt to secure his just wage deserts
under the Act, the value of such an effort may pale when set against the
prospect of discharge and the total loss of wages for the indeterminate
period necessary to seek and obtain reinstatement. Resort to statutory
remedies might thus often take on the character of a calculated risk, with
restitution of partial deficiencies in wages due for past work perhaps
obtainable only at the cost of irremediable entire loss of pay for an
unpredictable period. Faced with such alternatives, employees
understandably might decide that matters had best be left as they are. We
cannot read the Act as presenting those it sought to protect with what is
little more than a Hobson's choice. Id. at 293-294.

29. Courts have held that filing lawsuits against former employees is a form of retaliation.

See Martinez v. Deaf Smith County Grain Producers, 583 F.Supp. 1200, 1208 (N.D.TX

3

1984). In Martinez, a farm worker sued under the Fair Labor Standards Act for unpaid

overtime. His former employer then filed a state-law breach of employment contract

claim against him. Id. In evaluating Section 215(a)(3), the Martinez Court relied on

the Supreme Court's interpretation of a virtually identical clause in the National Labor

Relations Act. Id. at 1209. There, the Supreme Court warned that a lawsuit filed

against a former employer may be retaliation and may have a chilling effect on a

worker's willingness to assert statutory rights:

> A lawsuit no doubt may be used by an employer as a powerful instrument
> of coercion or retaliation. As the Board has observed, by suing an
> employee who filed charges with the Board or engages in other protected
> activities, an employer can place its employees on notice that anyone who
> engages in such conduct is subjecting himself to the possibility of a
> burdensome lawsuit. Regardless of how unmeritorious the employer's
> suit is, the employee will most likely have to retain counsel and incur
> substantial legal expenses to defend against it. Furthermore, as the Court
> of Appeals in the present case noted, the chilling effect of a state lawsuit
> upon an employee's willingness to engage in protected activity is
> multiplied where the complaint seeks damages in addition to injunctive
> relief. Where, as here, such a suit is filed against hourly-wage waitresses
> or other individuals who lack the backing of a union, the need to allow the
> Board to intervene and provide a remedy is at its greatest. Id. (citing Bill
> Johnson's Restaurants v. NLRB, 461 U.S. 731, 103 S.Ct. 2161, 2171; 76
> L.Ed.3d 277 (1983).

30. The Martinez Court concluded that the employer had, in fact, retaliated against its

former employer by filing a state law claim, even though the employer prevailed in that

lawsuit. Martinez at 210. In reaching this conclusion, the Martinez Court reasoned that

a Fair Labor Standards Act violation deprived a state-law breach of contract claim of a

reasonable basis in law. Id. The Court then enjoined the employer from enforcing its

state-law verdict.

31. Here, there is no question that Jensen and Raffenello engaged in activity protected by

statute when they joined this lawsuit. Jensen left CastlePoint on April 1, 2005.

4

Defendant's Counterclaim Against Jensen ¶1. He joined this lawsuit on November 7, 2005, only to be countersued within three weeks. CastlePoint made no claim against Jensen in any of the six months after he left CastlePoint, despite the fact that his allegedly wrongful activity had already occurred.

32. Similarly, Raffenello left CastlePoint on September 20, 2005. Defendant's Counterclaim Against Raffenello ¶1. She joined this lawsuit on November 9, 2005, only to be countersued three weeks later. Raffenello's alleged wrongdoing allegedly occurred during her employment with CastlePoint—yet there is no evidence that she was reprimanded or otherwise disciplined as a result. Instead, CastlePoint waited until she joined this lawsuit to bring an action against her.

33. CastlePoint's retaliatory actions against Jensen and Raffenello are part of a larger pattern of retaliation against plaintiffs seeking overtime in this case. Reinsmith left CastlePoint on December 18, 2003. Defendant's Answer And Counterclaim, ¶1. He filed this case on June 6, 2005. He was countersued on July 12, 2005. CastlePoint did not sue him at any time during the year and six months after he left, although his allegedly wrongful conduct had already occurred.

34. Dinsdale left CastlePoint on December 1, 2003. Defendant's Answer And Counterclaim, ¶1. He filed this case on June 6, 2005 and was sued on July 12, 2005. As with the others, CastlePoint did not sue him at any time during the eighteen months before Dinsdale decided to seek overtime payments due to him under the Fair Labor Standards Act.

35. Finally, Smith left CastlePoint on May 25, 2005. Defendant's Counterclaim Against Smith, ¶1. He joined this lawsuit on July 21, 2005 and was countersued on August 10,

2005. CastlePoint did not file a lawsuit against him during the two months before he asserted his rights to overtime.

36. Moreover, CastlePoint has not sought to enforce its Employment Agreement against any other former employees who have left CastlePoint. The purpose of its countersuits is clear—to foster an environment of hostility and economic duress for those who have joined this lawsuit and to strike fear in those who consider joining. Through this tactic, Defendant seeks to limit its liability by 1) dissuading loan officers from joining this lawsuit, 2) causing such loan officers to hesitate, out of fear of a countersuit, and thus allowing the statute of limitations to pass, and 3) shifting the focus of the case from its failure to pay overtime as required under the Fair Labor Standards Act.

37. Raffenello, Jensen—and indeed anybody who considers joining this lawsuit—face precisely the same Hobson's choice the Supreme Court sought to deter in Mitchell. See Mitchell at 293-294. By joining this lawsuit, Jensen and Raffenello now face the prospect of monetary damages that may exceed their recovery under the Fair Labor Standards Act. This prospect is obviously the point of the countersuit and is designed to put other loan officers "on notice that anyone who engages in such conduct is subjecting himself to the possibility of a burdensome lawsuit." See, e.g. Martinez at 1209.

38. As in Martinez, the Defendant seeks to enforce an employment contract that is renedered unenforceable by its own violations of the Fair Labor Standards Act. See Martinez at 1210. The consideration for signing those employment agreements was that the Defendant would pay them in accordance with Federal laws. The Defendant failed to keep its end of that bargain but it still seeks to use those agreements to harass

6

the members of this lawsuit and to ward off other plaintiffs. The Defendant should not

be entitled to eviscerate the purpose of the Fair Labor Standards Act through their

retaliatory actions and their counterclaims should be dismissed accordingly.

### B. Defendant's Permissive Counterclaim Must Have Its Own Independent Jurisdictional Basis

39. While compulsory counterclaims need not have their own independent jurisdictional

basis, permissive counterclaims, as that brought by the Defendant here, must. Federal

Deposit Insurance Corp. v. LaRambla Shopping Center, Inc., 791 F.2d 215, 221.

40. The tests to determine whether a counterclaim is permissive or compulsory include:

    1) the sameness of issues of fact and law raised by the claim and counterclaim;

    2) whether absent the compulsory counterclaim, *res judicata* would bar a
    subsequent suit on the counterclaim;

    3) whether substantially the same evidence supports or refutes the main claim
    as well as the counterclaim; and

    4) whether there is any logical relation between the main claim and the
    counterclaim. Fortune Management, Inc. v. Bly, 118 F.R.D. 21, 23.

41. Defendant's counterclaims differ from the Plaintiffs' claims in at least three key

respects. First, Plaintiffs' claims are based on facts dealing with matters like hours

worked, job duties and unpaid overtime. In contrast, the Defendant's counterclaims

are based on facts concerning an unrelated employment agreement and its alleged

breach. Second, Plaintiffs' claims are based on the federal Fair Labor Standards Act,

29 U.S.C. §20 et seq., while the Defendant's counterclaims are based on state law

breach of contract theories. Third, Plaintiffs seek to recover unpaid overtime on

7

behalf of more than 100 loan officers, while the scope of these counterclaims is limited to Jensen and Raffenello. Defendant cannot assert meritorious counterclaims against every person who opts-in to this case—doing so would be an obvious effort to retaliate against those who seek to have their overtime rights determined in this lawsuit. Because Plaintiffs' original claims and Defendant's counterclaims are based on completely different facts and legal theories, Defendant's counterclaims are permissive.

42. Defendant also fails its second test, as it is clear that any ruling on Plaintiffs' claims for unpaid overtime would not bar a subsequent suit by the Defendant for alleged breach of an employment agreement. "The elements of a *res judicata* claim under federal law are:

    1) a final judgment on the merits in an earlier proceeding;

    2) sufficient identicality between the causes of action asserted in the earlier and later suits; and

    3) sufficient identicality between the parties in the two actions." Breneman v. United States ex rel. FAA, 381 F.3d 33, 38.

    The doctrine of *res judicata* would not bar any subsequent claims by the Defendant because such claims are based on different facts and law.

43. Defendant fails its third test because the evidence necessary to prove that the Plaintiffs were not paid overtime in violation of the Fair Labor Standards Act and that required to prove Defendant's counterclaims differs completely. To support their claims, the Plaintiffs' evidence will include: loan officer time and attendance records; loan officer payroll records; loan officer job descriptions; loan officer performance

reports; loan officer training; and loan officer expectations, goals and quotas. None of these materials have anything to do with Defendant's counterclaim. Rather, the Defendant will rely on the employment agreement and totally unrelated evidence concerning Jensen's and Raffenello's alleged breach of contract after they left Castle Point. Accordingly, Plaintiffs' claims and Defendant's counterclaims necessarily require different proof and evidence.

44. Finally, no logical relation exists between Plaintiffs' original claims and Defendant's counterclaims. To the contrary, at least three salient reasons militate in favor of litigating Plaintiffs' claims and Defendant's counterclaims separately. First, as mentioned above, Plaintiffs' claims potentially involve more than 100 loan officers, none of whom are likely to have any information concerning Defendant's counterclaim. Thus, the counterclaims would unnecessarily complicate and confuse the main issue to be determined at trial—namely whether the Defendant improperly required the Plaintiffs to work unpaid overtime. Second, the Defendant's actions, whether a deliberate tactic or not, will undoubtedly intimidate potential opt-ins who, with modest resources, may decline to join out of fear of facing a costly defense to Defendant's counterclaims. Third, the specter of the counterclaims may cause potential opt-ins to hesitate to join this lawsuit—thus limiting their claims or eliminating them entirely in some circumstances. The statute of limitations for opt-in Plaintiffs continues to run until they submit an opt-in consent form to join this lawsuit. The purpose of this lawsuit is to fully resolve Plaintiffs' claim to recover unpaid overtime. It has been brought on behalf of all similarly situated loan officers, each of whom should have the right to join this case immediately so as to preserve

9

their claims.   Because Defendant's counterclaims serve only to intimidate the
Plaintiffs and delay their involvement in this case to their prejudice, they should not
be litigated in this case.

45. As Defendant's counterclaims fail all of the above tests, they are permissive, rather
than compulsory. Accordingly, the Defendant must establish an independent
jurisdictional basis for its counterclaims.  As explained in sections C through E
below, Defendant cannot do so and, therefore, its counterclaims must be dismissed.

## C.  Defendant's Counterclaims Do Not Involve Federal Questions

46. The Defendant asserts the following state law counterclaims: breach of contract,
intentional interference with advantageous business relations, breach of duty of
loyalty, and Violation of Mass. Gen Laws ch. 93A.  These counterclaims do not
involve federal questions.

47. Federal question jurisdiction requires either that federal law creates a cause of action
or that a party's right to relief necessarily depends on resolution of substantial
questions of federal law. Greene v. General Motors Corp., 261 F.Supp 2d 414
(W.D.N.C. 2003).  Actions sounding in breach of contract ordinarily do not fall
within federal question jurisdiction. Camean v. F/V Lady Jay, 654 F. Supp. 709, 710.
"A federal district court had no jurisdiction over action of tort between individual
residents of the same state, where no constitutional or federal question is involved."
Abrazinski v. DuBois, 940 F.Supp 361.

48. Because the Defendant's counterclaims—based on a state-law theories—do not
involve federal questions, Defendant's cannot establish jurisdiction based on 29
U.S.C. §1331.

10

## D. Defendant's Counterclaims Cannot Satisfy the Amount in Controversy Requirements for Federal Jurisdiction

49. In order for the Defendant to establish jurisdiction under §1332 for diversity of citizenship, the Defendant must establish that the parties are citizens of different states and that the amount in controversy exceeds $75,000.00. Gabriel v. Preble, 396 F.3d 10, 13.

50. The Defendant cannot establish that the amount in controversy in its counterclaims exceeds $75,000.00. Once the damages allegation is challenged, "the party seeking to invoke jurisdiction has the burden of *alleging with sufficient particularity facts* indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." Spielman v.Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001) (Emphasis added). Defendant cannot rely on speculative or unpredictable "facts" to meet this burden. See, e.g., Hairston v. Home Loan And Investment Bank, 814 F.Supp 180, 182 (D. Mass. 1993).

51. Here, Defendant alleges no facts indicating that its alleged damages meet the jurisdictional requirements. Instead, it merely concludes that it has been damaged by Jensen's alleged violation of a vast non-competition clause, which seeks either to drive him from his career or from his home in Massachusetts. Counterclaim And Jury Demand Of Castle Point Mortgage, Inc. ¶6. Defendant cannot establish the requisite damages by providing speculative "estimates" regarding the amount of revenue that Jensen might generate for another company. See Hairston at182. Even if "gross revenues" were an accurate measure of its damages, Defendant cannot show that Jensen generated any revenue for another company—nor can it show it lost a single sale to any competitor as a result of Jensen's alleged breach. Defendant's

11

counterclaim is nothing more than a thinly veiled threat against Jensen and others that they should not seek to have their rights to overtime determined by this lawsuit. As Defendant's counterclaim cannot exceed $75,000 and has obviously been brought for an improper purpose, it should be dismissed.

52. Defendant's counterclaim against Raffenello is even more speculative and conclusory than its counterclaim against Jensen. Defendant fails to allege any facts—speculative or otherwise--indicating that its alleged damages reach the statutory threshold of $75,000. Defendant alleges that Raffenello disclosed "information concerning potential customer(s)" of Castle Point to Castle Point's competitor(s) in violation of her obligations" under the its non-competition clause. Counterclaim And Jury Demand Of Castle Point Mortgage, Inc. ¶5. Defendant provides no factual basis supporting its conclusory allegations. It does not state the type of information allegedly disclosed, to whom it was disclosed, how that "competitor" is in competition with the Defendant, the extent of Castle Point's alleged damages, or whether it was licensed to do business for these "potential customers." As Defendant has alleged no facts showing that any actionable cause of action occurred or that it exceeds the statutory threshold of $75,000, Defendant's counterclaim against Raffenello should be dismissed. See, e.g., Spielman at 5; Hairston at 182.

## E. Defendant's Counterclaim Lacks Any Basis for Supplemental Jurisdiction

53. As shown above, there is no basis for this Court to exercise supplemental jurisdiction over Defendant's unrelated state-law counterclaims.

54. The federal code of civil procedure provides that in any civil action where the district court has original jurisdiction, it shall also have supplemental jurisdiction over all

claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy 28 U.S.C. §1367. However, the district court may decline to exercise supplemental jurisdiction for several reasons including: 1) where the claim raises a novel or complex issue of state law; or 2) in exceptional circumstances with compelling reasons for declining jurisdiction.

55. No basis exists for the court to exercise supplemental jurisdiction in this case because: 1) Defendant's counterclaims deal with a separate set of facts and law that are not part of the same case or controversy asserted by Plaintiffs; 2) there are compelling reasons to decline jurisdiction including: (a) undue and prejudicial delay to the issuance of notice to potential opt-ins whose statutes of limitation continue to run; and (b) undue intimidation to potential opt-ins who may not join the suit when faced with the threat of a costly defense. Accordingly, this court should decline to exercise supplemental jurisdiction and dismiss Defendant's counterclaims.

## III. CONCLUSION

56. Wherefore, Plaintiffs, Paul Reinsmith and Kevin Dinsdale, by and through their attorneys, move this Honorable Court to dismiss Defendant's counterclaim against Eric Jensen and Amanda Raffenello as they are retaliatory in contravention of 29 U.S.C. §215(a)(3) and as they lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(2).

Dated: December 22, 2005                    Respectfully Submitted

                                            /s/ Erik H. Langeland
                                            Erik H. Langeland
                                            Erik H. Langeland, P.C.
                                            730 Fifth Avenue, 9th Floor
                                            New York, NY 10019
                                            (212) 659-7774

13

ATTORNEY FOR PLAINTIFFS

14