# EXHIBIT A



2001 WL 1558764                                                    Page 1
2001 WL 1558764 (DOL WAGE-HOUR)


                        Wage and Hour Division
                   United States Department of Labor

                           Opinion Letter
                   Fair Labor Standards Act (FLSA)
                         February 16, 2001


***

   This is in response to your letter requesting a reconsideration of our opinion of
May 17, 1999, concerning the exempt status of **loan officers** under section 13(a)(1)
of the Fair Labor Standards Act (FLSA). You ask that we consider the **loan officers'**
exempt status in light of the advisory duties they perform on behalf of their
employer's customers.

   You state, among other things, that the **loan officer's** job is to work with the
borrower to create a loan package that best meets the goals of the borrower while
still complying with the varied and complicated lender requirements. The **loan
officer** must select from a wide range of loan packages in order to properly advise
the client, and supervise the processing of the transaction to closing. The **loan
officer** must also acquire a full understanding of the customer's credit history and
financial goals in order to advise them regarding the selection of a loan package
that will fit their needs and ability.

   Based on the information you submitted indicating that the primary duty of a **loan
officer** is to advise a borrower in the selection of a loan package, we agree that
the primary duty of the **loan officer** consists of the performance of office or
nonmanual work directly related to the management policies or general business
operations of the employer or the employer's customers. However, in order for the
exemption to apply, the **loan officer** must also customarily and regularly exercise
discretion and independent judgment as required by Regulations, 29 CFR Part 541.
The regulations in section 541.207 indicate that confusion exists between "the
exercise of discretion and independent judgment" and "the use of skills in applying
techniques, procedures, or specific standards", and these terms are most frequently
misunderstood and misapplied by employers and employees. An employee who merely
applies his knowledge in following prescribed procedures or determining which
procedure to follow, or who determines whether specific standards are met or
whether an object falls into one or another of a number of definite grades,
classes, or other categories is not exercising discretion and independent judgment
within the meaning of section 541.2 of the regulations.

   From the information you submitted, it appears the **loan officers** are using their
skill and knowledge in applying techniques, procedures, and/or specific standards
(such as loan-to-value ratios and debt ratios) in choosing an already established
loan package that best meets the needs and financial abilities of the borrower and
which comports with the specified requirements of the lender. We, therefore,
conclude that the **loan officers** in question are not exercising the necessary
discretion and independent judgment within the meaning of the regulations, and
would not be exempt as administrative employees.

   This opinion is based exclusively on the facts and circumstances described in

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2001 WL 1558764                                                    Page 2
2001 WL 1558764 (DOL WAGE-HOUR)

your request and is given on the basis of your representation, explicit or implied,
that you have provided a full and fair description of all the facts and
circumstances that would be pertinent to our consideration of the question
presented. Existence of any other factual or historical background not contained in
your request might require a different conclusion than the one expressed therein.

  We trust the above information is responsive to your inquiry.


Sincerely,


Barbara R. Relerford

Office of Enforcement Policy

Fair Labor Standards Team

  2001 WL 1558764 (DOL WAGE-HOUR)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



Wage and Hour Division
United States Department of Labor

Opinion Letter
Fair Labor Standards Act (FLSA)
May 17, 1999


***

This is in response to your letter requesting an opinion regarding the exempt
status of **loan officers** under section 13(a)(1) of the Fair Labor Standards Act
(FLSA).

You state that the **loan officers** are employed by your client, a mortgage
brokerage company. These **loan officers** develop new business for the employer by
contacting prospective borrowers and referral sources; evaluate the borrowers'
financial situation and provide a "prequalification letter" that is used by the
borrower, real estate agents, and potential sellers in negotiating the sale;
consult with borrowers to obtain the best loan package available (e.g. best
interest rates, lowest points and fees, maximum affordable loan amount); work with
approximately ten different lenders in selecting loan programs for borrowers;
consult with the borrowers regarding the desirability of "locking- in" a given
interest rate; assist the borrowers in preparing a loan application for a selected
loan program; present and obtain signature of the borrower on disclosures required
by federal and state laws; submit loan application to the central office for
processing; and consult with loan processors or the borrowers in resolving problems
or in obtaining additional information regarding the loan package.

You state that **loan officers** report to branch managers, and are subject to very
little supervision. The branch managers do not participate in the selection of a
particular loan program or review the loan program prepared for the borrowers.

Section 13(a)(1) of the FLSA provides a minimum wage and overtime pay exemption
for any employee employed in a bona fide executive, administrative, professional,
or outside sales capacity, as those terms are defined in the enclosed Regulations,
29 CFR Part 541. An employee may qualify for exemption if all the pertinent tests
relating to duties, responsibilities and salary, as discussed in the appropriate
sections of the regulations, are met.

An employee who is paid on a salary or fee basis of at least $250 per week may
qualify for exemption as a bona fide administrative employee if the employee's
primary duty is office or nonmanual work directly related to management policies or
general business operations of his/her employer or his/her employer's customers,
and the employee's work requires the exercise of discretion and independent
judgment.

Activities contemplated by the regulations as being "directly related to
management policies or general business operations" of an employer are those
related to the administrative operations of a business, as distinguished from the
basic tasks of the employer's business, that is, the "production" work of the
business. The administrative exemption is limited to persons who perform work of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

substantial importance to the business of their employer or the employer's
customers, and include "white collar" employees engaged in "servicing" a business.
Examples of such activity include personnel administration, labor relations,
research, planning, or assisting a management official to carry out the executive
or administrative functions of that official. In general "administrative employee"
means a person who is engaged in staff functions as opposed to the line functions
of an employer.

   From the information submitted, it appears that the **loan officers** are engaged in
carrying out the employer's day-to-day activities rather than in determining the
overall course and policies of the business. These activities also appear to
require the use of skills and experience in applying techniques, procedures, or
specific standards rather than the exercising of discretion and independent
judgment, within the meaning of the regulations. It is, therefore, our opinion that
the **loan officers** would not qualify as bona fide administrative employees within
the meaning of section 541.2 of the regulations. Such employees must be paid in
accordance with the minimum wage and overtime provisions of the FLSA.

   This opinion is based exclusively on the facts and circumstances described in your
request and is given on the basis of your representation, explicit or implied,
that you have provided a full and fair description of all the facts and
circumstances that would be pertinent to our consideration of the question
presented. Existence of any other factual or historical background not contained in
your request might require a different conclusion than the one expressed therein.

   We trust the above information is responsive to your inquiry.


Sincerely,


Daniel F. Sweeney

Office of Enforcement Policy Fair Labor Standards Team


Enclosure


END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PAUL REINSMITH and KEVIN DINSDALE,<br>Individually, and on Behalf of all Others<br>Similarly Situated, | )<br>)<br>) | C.A. No. 05 11168 GAO |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CASTLE POINT MORTGAGE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

ANSWER, COUNTERCLAIM AND JURY DEMAND
OF CASTLE POINT MORTGAGE, INC.

For its first defense to plaintiffs Paul Reinsmith's and Kevin Dinsdale's complaint,

defendant Castle Point Mortgage, Inc. responds to the correspondingly numbered paragraphs

of plaintiffs' complaint as follows.

1.    Castle Point states that the allegations contained in plaintiffs' complaint speak

for themselves.  Castle Point denies that plaintiffs are entitled to the relief requested.

2.    Admitted.

3.    Castle Point is without knowledge or information sufficient to form a belief as to

the truth of plaintiffs' allegations concerning their state of residence.  Castle Point denies the

remaining allegations contained in this paragraph.

4.    Castle Point admits that it has a facility located at 300 Brickstone Square, Suite

603, Andover, Massachusetts 01810.  Castle Point denies the remaining allegations contained

in this paragraph.

5.    Denied.

6.    Denied.

7.      Castle Point admits that it employed plaintiffs as loan officers at its Andover, Massachusetts location.  Castle Point denies the remaining allegations contained in this paragraph.

8.      Castle Point states that the allegations contained in plaintiffs' complaint speak for themselves.  Castle Point denies that plaintiffs are entitled to the relief requested.

9.      Denied.

10.     Denied.

11.     Denied.

12.     Castle Point is without knowledge or information sufficient to form a belief as to the truth of plaintiffs' allegations concerning what they will do.

COUNT I – FAIR LABOR STANDARDS ACT
29 U.S.C. § 201, *et seq.*

13.     Castle Point incorporates by reference its response to paragraphs 1 through 12 above.

14.     Denied.

15.     Denied.

PRAYER FOR RELIEF

Castle Point denies that plaintiffs are entitled to the relief requested.

SECOND DEFENSE

Plaintiffs' claims are barred because they were exempt from FLSA's overtime pay requirements.

## THIRD DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Castle Point acted reasonably and in good faith in classifying claimants as exempt employees under the FLSA.

## FOURTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

## FIFTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by their own unclean hands.

## SIXTH DEFENSE

If plaintiffs recover damages, which they should not, those damages should be offset by the amounts owed to Castle Point for plaintiffs' breach of contract and breach of fiduciary duty.

## SEVENTH DEFENSE

If plaintiffs, and those alleged to be similarly situated, are found to not be exempt from the FLSA's overtime provisions, which they should not, they are entitled to only half-time pay for any hours in which they allegedly worked in excess of 40 hours per week because plaintiffs, and those alleged to be similarly situated, were paid commissions which constitute straight time compensation for all hours worked.

<u>EIGHTH DEFENSE</u>

Plaintiffs, and those alleged to be similarly situated, are not entitled to compensation for hours worked about which Castle Point neither knew nor should have known.

<u>NINTH DEFENSE</u>

Plaintiffs, and those alleged to be similarly situated, are not entitled to compensation for hours worked for which Castle Point received no benefit.

<u>TENTH DEFENSE</u>

The claims of plaintiffs, and those alleged to be similarly situated, are barred in whole or in part by the doctrine of laches.

<u>ELEVENTH DEFENSE</u>

The claims of plaintiffs, and those alleged to be similarly situated, are barred in whole or in part by the doctrine of estoppel.

<u>COUNTERCLAIM</u>

1.      Castle Point employed Paul Reinsmith as a Loan Officer from April 1, 2003 until December 18, 2003, in its Andover, Massachusetts facility.

2.      Castle Point employed Kevin Dinsdale as a Loan Officer from April 1, 2003 until December 3, 2003, in its Andover, Massachusetts facility.

3.      Upon commencing employment with Castle Point, Reinsmith and Dinsdale both executed Loan Officer Confidentiality, Non-Competition and Non-Solicitation Agreements ("Agreements"), attached as Exhibits A and B.

4.      Pursuant to the Agreements, Reinsmith and Dinsdale agreed not to divulge and confidential information of Castle Point, including customer lists and referral source information, or to use such information for the benefit of third parties.

5.       Pursuant to the Agreements, Reinsmith and Dinsdale agreed that during their employment, and for a one year period following the termination of their employment with Castle Point, they would not contact or solicit, directly or indirectly, prospective, current or former clients, customers, referral sources or employees of Castle Point other than for the benefit of Castle Point.

6.       Pursuant to the Agreements, Reinsmith and Dinsdale agreed that during their employment and for a six month period following their employment, they would not compete with Castle Point and would not become employed by any entity engaged in some or all of the same business as Castle Point in Massachusetts.

7.       While still employed by Castle Point, Reinsmith solicited customers on behalf of First Call Mortgage, Inc., a Massachusetts-based competitor of Castle Point.

8.       While still employed by Castle Point and/or within the year following the termination of his employment with Castle Point, Reinsmith solicited at least one Castle Point employee to become an employee of First Call Mortgage.

9.       Immediately following the termination of their employment with Castle Point, Reinsmith and Dinsdale began working as Loan Officers for First Call Mortgage in Massachusetts.

## COUNT I – BREACH OF CONTRACT – DINSDALE

10.      Castle Point incorporates by reference the allegations contained in paragraphs 1 through 9 above.

11.      Dinsdale has breached his Agreement with Castle Point.

12.      Dinsdale's breach has damaged Castle Point.

<u>COUNT II – BREACH OF CONTRACT – REINSMITH</u>

13.    Castle Point incorporates by reference the allegations contained in paragraphs 1 through 12 above.

14.    During his employment with Castle Point and following the termination of his employment with Castle Point, Reinsmith breached Sections 3, 5 and 6 of his Agreement with Castle Point.

15.    Reinsmith's breach has damaged Castle Point.

<u>COUNT III – BREACH OF FIDUCIARY DUTY – REINSMITH</u>

16.    Castle Point incorporates by reference the allegations contained in paragraphs 1 through 15 above.

17.    Reinsmith owed Castle Point a duty not to appropriate to himself or third parties confidential or proprietary information of Castle Point, including the identity of customers and prospective customers.

18.    While employed by Castle Point, Reinsmith owed Castle Point a duty not to act in derogation of Castle Point's interests.

19.    While employed by Castle Point, Reinsmith owed Castle Point a duty not to actively compete with it.

20.    Reinsmith breached these duties to Castle Point.

21.    Reinsmith's breach damaged Castle Point.

<u>COUNT IV – INTENTIONAL INTERFERENCE WITH
CONTRACTUAL RELATIONS – REINSMITH</u>

22.    Castle Point incorporates by reference the allegations contained in paragraphs 1 through 21 above.

23.    Reinsmith knew that Dinsdale had executed a Loan Officer Confidentiality, Non-Competition and Non-Solicitation Agreement with Castle Point.

24.    Reinsmith intentionally interfered with that Agreement, with improper means or motive, by inducing Dinsdale to start working for First Call Mortgage in violation of that agreement.

25.    Reinsmith's intentional interference damaged Castle Point.

WHEREFORE, Castle Point requests that this Court dismiss plaintiffs' claims, enter judgment in its favor, with damages, as well as such other relief as this Court deems just and proper.

<u>JURY DEMAND</u>

Castle Point demands a trial by jury on all claims so triable as of right.

CASTLE POINT MORTGAGE, INC.,

By its attorneys,

s/Christa von der Luft
Christa von der Luft (BBO#600362)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Blvd.
Boston, MA 02210
(617) 439-2000

Date:  July 12, 2005
1444165.1

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| PAUL REINSMITH and KEVIN DINSDALE , Individually, and on Behalf of All Others Similarly Situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 051168 GAO |
| v. | ) | |
| | ) | |
| CASTLE POINT MORTGAGE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM

Plaintiffs, Paul Reinsmith and Kevin Dinsdale, move to dismiss Defendant's counterclaims under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(2) because those claims lack jurisdiction.  Plaintiffs should prevail on this Motion because Defendant's permissive counterclaims have no independent jurisdictional basis as: they do not involve federal questions; the Defendant cannot establish diversity jurisdiction; and there is no basis for this Court to exercise supplemental jurisdiction.

## CERTIFICATON

Plaintiffs' Counsel certifies that the parties have conferred and have attempted in good faith to resolve or narrow the issues raised in this Motion.

## REQUEST FOR ORAL ARGUMENT

Plaintiffs request oral argument.

Dated: August 1, 2005                    Respectfully Submitted


                                         /s/ Erik H. Langeland
                                         Erik H. Langeland
                                         Erik H. Langeland, P.C.
                                         730 Fifth Avenue, 9th Floor
                                         New York, NY 10019
                                         (212) 659-7774
                                         ATTORNEY FOR PLAINTIFFS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

PAUL REINSMITH and KEVIN )
DINSDALE , Individually, and on Behalf )
of All Others Similarly Situated, )
                                    )
            Plaintiffs, )
                                    )  Case No. 051168 GAO
      v. )
                                    )
CASTLE POINT MORTGAGE, INC., )
                                    )
            Defendant. )

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM**

## I.  INTRODUCTION

Plaintiffs should prevail on this Motion because:

1) Defendant's counterclaims are permissive and, therefore, must have an

independent jurisdictional basis;

2) Defendant's cannot establish jurisdiction for its counterclaims as:

a) its claims do not involve federal questions;

b) the Defendant cannot establish diversity jurisdiction; and

c) no basis exists for this Court to exercise supplemental jurisdiction.

## II.  BACKGROUND

1. On June 6, 2005, Plaintiffs filed a collective action complaint against the Defendant

seeking monetary damages and other relief provided under the Fair Labor Standards

Act for Defendant's widespread failure to pay overtime to its loan officers.

2. In response, the Defendant filed an answer and sought to shift blame for its failure to

pay overtime by filing a counterclaim against named Plaintiffs, Paul Reinsmith and

Kevin Dinsdale.  In their counterclaim the Defendant asserted state-law claims for breach of contract, breach of fiduciary duty and intentional interference with contractual relations.

3. These claims, which appear to be retaliatory, have little, if anything, to do with Plaintiffs' action to recover unpaid overtime.

### III.  ARGUMENT

#### A.  Defendant's Permissive Counterclaims Must Have Their Own Independent Jurisdictional Basis

4. While compulsory counterclaims need not have their own independent jurisdictional basis, permissive counterclaims, as those brought by the Defendants here, must. Federal Deposit Insurance Corp. v. LaRambla Shoppin Center, Inc., 791 F.2d 215, 221.

5.   The tests to determine whether a counterclaim is permissive or compulsory include:

> 1) the sameness of issues of fact and law raised by the claim and counterclaim;

> 2) whether absent the compulsory counterclaim, *res judicata* would bar a subsequent suit on the counterclaim;

> 3) whether substantially the same evidence supports or refutes the main claim as well as the counterclaim; and

> 4) whether there is any logical relation between the main claim and the counterclaim. Fortune Management, Inc. v. Bly, 118 F.R.D. 21, 23.

6. Defendant's counterclaims differ from the Plaintiffs' claims in at least three key respects.  First, Plaintiffs' claims are based on facts dealing with matters like hours worked, job duties and unpaid overtime.  In contrast, the Defendant's counterclaims are based on facts concerning an unrelated employment agreement and its alleged

breach after Reinsmith and Dinsdale left Castle Point.  Second, Plaintiffs' claims are based on the federal Fair Labor Standards Act, 29 U.S.C. §20 et seq., while the Defendant's counterclaims are based on state law breach of contract theories.  Third, Plaintiffs seek to recover unpaid overtime on behalf of more than 100 loan officers, while the scope of Defendant's counterclaims is limited to named plaintiffs Reinsmith and Dinsdale.  Defendant cannot assert meritorious counterclaims against every person who opts-in to this case—doing so would be an obvious effort to retaliate against those who seek to have their overtime rights determined in this lawsuit.  Because Plaintiffs' original claims and Defendant's counterclaims are based on completely different facts and legal theories, Defendant's counterclaims are permissive.

7.  Defendant also fails its second test, as it is clear that any ruling on Plaintiffs' claims for unpaid overtime would not bar a subsequent suit by the Defendant for alleged breaches of an employment agreement.  "The elements of a *res judicata* claim under federal law are:

    1)  a final judgment on the merits in an earlier proceeding;

    2)  sufficient identicality between the causes of action asserted in the earlier and later suits; and

    3)  sufficient identicality between the parties in the two actions." Breneman v. United States ex rel. FAA, 381 F.3d 33, 38.

The doctrine of *res judicata* would not bar any subsequent claims by the Defendant because such claims are based on different facts and law.

8. Defendant fails its third test because the evidence necessary to prove that the Plaintiffs were not paid overtime in violation of the Fair Labor Standards Act and that required to prove Defendant's counterclaims differs completely. To support their claims, the Plaintiffs' evidence will include: loan officer time and attendance records; loan officer payroll records; loan officer job descriptions; loan officer performance reports; loan officer training; and loan officer expectations, goals and quotas. None of these materials have anything to do with Defendant's counterclaims. Rather, the Defendant will rely on the employment agreement and totally unrelated evidence concerning alleged breaches of contract committed by Reinsmith and Dinsdale after they left Castle Point. Accordingly, Plaintiffs' claims and Defendant's counterclaims necessarily require different proof and evidence.

9. Finally, no logical relation exists between Plaintiffs' original claims and Defendant's counterclaims. To the contrary, at least three salient reasons militate in favor of litigating Plaintiffs' claims and Defendant's counterclaims separately. First, as mentioned above, Plaintiffs' claims potentially involve more than 100 loan officers, none of whom are likely to have any information concerning the counterclaims asserted by the Defendant. Thus, the counterclaims would unnecessarily complicate and confuse the main issue to be determined at trial—namely whether the Defendant improperly required the Plaintiffs to work unpaid overtime. Second, the Defendant's actions, whether a deliberate tactic or not, will undoubtedly intimidate potential opt-ins who, with modest resources, may decline to join out of fear of facing a costly defense to Defendant's counterclaim. Third, the specter of the counterclaims may cause potential opt-ins to hesitate to join this lawsuit—thus limiting their claims or

eliminating them entirely in some circumstances. The statute of limitations for opt-in Plaintiffs continues to run until they submit an opt-in consent form to join this lawsuit. The purpose of this lawsuit is to fully resolve Plaintiffs' claim to recover unpaid overtime. It has been brought on behalf of all similarly situated loan officers, each of whom should have the right to join this case immediately so as to preserve their claims. Because Defendant's counterclaims serve only to intimidate the Plaintiffs and delay their involvement in this case to their prejudice, they should be not be litigated in this case.

10. As Defendant's counterclaims fail all of the above tests, its counterclaims are permissive, rather than compulsory. Accordingly, the Defendant must establish an independent jurisdictional basis for its counterclaims. As explained in sections B through D below, Defendant cannot do so and, therefore, its counterclaims must be dismissed.

### B. Defendant's Counterclaims Do Not Involve Federal Questions

11. Claims based upon breach of contract, like the Defendant's counterclaims, are based on state law and do not involve federal questions.

12. Federal question jurisdiction requires either that federal law creates a cause of action or that a party's right to relief necessarily depends on resolution of substantial questions of federal law. Greene v. General Motors Corp., 261 F.Supp 2d 414 (W.D.N.C. 2003). Actions sounding in breach of contract ordinarily do not fall within federal question jurisdiction. Camean v. F/V Lady Jay, 654 F. Supp. 709, 710. "A federal district court had no jurisdiction over action of tort between individual

residents of the same state, where no constitutional or federal question is involved."
Abrazinski v. DuBois, 940 F.Supp 361.

13. Because none of the counterclaims asserted by the Defendant involve federal questions, the court lacks jurisdiction over Defendant's counterclaims and they must be dismissed.

**C.  Defendant's Counterclaims Do Not Involve Diverse Parties and Cannot Satisfy the Amount in Controversy Requirements for Federal Jurisdiction**

14. In order for the Defendant to establish jurisdiction under §1332 for diversity of citizenship, the Defendant must establish that the parties are citizens of different states and that the amount in controversy exceeds $75,000.00. Gabriel v. Preble, 396 F.3d 10, 13.

15. As stated in Plaintiffs' complaint, named Plaintiffs Paul Reinsmith and Kevin Dinsdale are residents of Massachusetts.  Defendant, Castle Point Mortgage, Inc., is a Massachusetts corporation doing business in the State of Massachusetts from its facility located at 300 Brickstone Square, Suite 603, in Andover, Massachusetts. Therefore, the parties are not diverse and there is no jurisdiction under §1332.

16. Even if the Defendant were able to show that the parties have diversity of citizenship, it must demonstrate that the amount in controversy exceeds $75,000.00.  Defendant's counterclaims, however, fail to include any allegations that it suffered damages in excess of $75,000.00.  This is so because damages from these minor claims, even if they could be proven, cannot exceed $75,000.00.

**D. <u>Defendant's Counterclaims Lack Any Basis for Supplemental Jurisdiction</u>**

17. As shown above, there is no basis for this Court to exercise supplemental jurisdiction over Defendant's unrelated state-law counterclaims.

18. The federal code of civil procedure provides that in any civil action where the district court has original jurisdiction, it shall also have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy 28 U.S.C. §1367.  However, the district court may decline to exercise supplemental jurisdiction for several reasons including: 1) where the claim raises a novel or complex issue of state law; or 2) in exceptional circumstances with compelling reasons for declining jurisdiction.

19. No basis exists for the court to exercise supplemental jurisdiction in this case because: 1) Defendant's counterclaims deal with a separate set of facts and law that are not part of the same case or controversy asserted by Plaintiffs; 2) there are compelling reasons to decline jurisdiction including: (a) undue and prejudicial delay to the issuance of notice to potential opt-ins whose statutes of limitation continue to run; and (b) undue intimidation to potential opt-ins who may not join the suit when faced with the threat of a costly defense.  Accordingly, this court should decline to exercise supplemental jurisdiction and dismiss Defendant's counterclaims.

### III.  <u>CONCLUSION</u>

20. Wherefore, Plaintiffs, Paul Reinsmith and Kevin Dinsdale, by and through their attorneys, move this Honorable Court to dismiss all counts of Defendant's counterclaim against them for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(2).

Dated: August 1, 2005                          Respectfully Submitted


                                               /s/ Erik H. Langeland
                                               Erik H. Langeland
                                               Erik H. Langeland, P.C.
                                               730 Fifth Avenue, 9th Floor
                                               New York, NY 10019
                                               (212) 659-7774
                                               ATTORNEY FOR PLAINTIFFS

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL REINSMITH and KEVIN DINSDALE,    )
Individually, and on Behalf of all Others    )
Similarly Situated,    )        C.A. No. 05 11168 GAO
    )
        Plaintiffs,    )
    )
v.    )
    )
CASTLE POINT MORTGAGE, INC.,    )
    )
        Defendants.    )

COUNTERCLAIM AND JURY DEMAND
OF CASTLE POINT MORTGAGE, INC.

Castle Point Mortgage, Inc. brings this counterclaim against Charles Smith who opted

into this lawsuit on July 21, 2005.

1.      Castle Point employed Charles Smith as a Loan Officer from December 20,

2004, until May 25, 2005, in its Andover, Massachusetts facility.

2.      Upon commencing employment with Castle Point, Smith executed a Loan

Officer Confidentiality, Non-Competition and Non-Solicitation Agreement ("Agreement"),

attached as Exhibit A.

3.      Pursuant to the Agreement, Smith agreed that during his employment with

Castle Point, and for a six-month period following his employment, he would not compete with

Castle Point and would not become employed by any entity engaged in some or all of the same

business as Castle Point in Massachusetts.

4.      Immediately following the termination of his employment with Castle Point,

Smith began working as a Loan Officer for First Call Mortgage, a direct competitor of Castle

Point in Massachusetts, located in the same office park.

## COUNT I – BREACH OF CONTRACT

5. Castle Point incorporates by reference the allegations contained in paragraphs 1 through 4 above.

6. Smith has breached his Agreement with Castle Point.

7. Smith's breach has damaged Castle Point.

WHEREFORE, Castle Point requests that this Court enter judgment in its favor, with damages, as well as such other relief as this Court deems just and proper.

## JURY DEMAND

Castle Point demands a trial by jury on all claims so triable as of right.

CASTLE POINT MORTGAGE, INC.,

By its attorneys,

s/Christa von der Luft
Christa von der Luft (BBO#600362)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Blvd.
Boston, MA 02210
(617) 439-2000

Date: August 10, 2005

1453431.1

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

PAUL REINSMITH and KEVIN DINSDALE,    )
Individually, and on Behalf of all Others    )
Similarly Situated,    )       C.A. No. 05 11168 GAO
    )
    Plaintiffs,    )
    )
v.    )
    )
CASTLE POINT MORTGAGE, INC.,    )
    )
    Defendants.    )

## COUNTERCLAIM AND JURY DEMAND
## OF CASTLE POINT MORTGAGE, INC.

Castle Point Mortgage, Inc. brings this counterclaim against Amanda Raffenello who opted into this lawsuit on November 9, 2005.

1.    Castle Point employed Amanda Raffenello as a Loan Officer from approximately July 14, 2004, until September 20, 2005, in its Andover, Massachusetts facility.

2.    Upon commencing employment with Castle Point, Raffenello executed a Loan Officer Confidentiality, Non-Competition and Non-Solicitation Agreement ("Agreement"), attached as Exhibit A.

3.    Pursuant to the Agreement, Raffenello agreed that during her employment with Castle Point she would not disclose confidential Castle Point information, including the identity of potential customers and information concerning those customers to third parties or use such information for the benefit of third parties.

4.    Under the terms of the Agreement, Raffenello also agreed that she would not compete with Castle Point while employed by Castle Point.

5.      During her employment with Castle Point, Raffenello disclosed information concerning potential customer(s) of Castle Point to Castle Point's competitor(s) in violation of her obligations under the Agreement.

<u>Count I – Breach of Contract</u>

6.      Castle Point incorporates by reference the allegations contained in paragraphs 1 through 5 above.

7.      Raffenello has breached her Agreement with Castle Point.

8.      Raffenello's breach has damaged Castle Point.

<u>Count II – Intentional Interference with Advantageous Business Relations</u>

9.      Castle Point incorporates by reference the allegations contained in paragraphs 1 through 8 above.

10.      Raffenello has intentionally interfered with Castle Point's advantageous business relations through improper means or motives.

11.      Raffenello's interference has damaged Castle Point.

<u>Count III – Breach of the Duty of Loyalty</u>

12.      Castle Point incorporates by reference the allegations contained in paragraphs 1 through 11 above.

13.      As an employee of Castle Point, Raffenello had a duty of loyalty to Castle Point not to act in derogation of Castle Point's interests.

14.      As an employee of Castle Point, Raffenello had an obligation not to misuse or appropriate for her own benefit or that of third parties confidential information of Castle Point.

15.     Raffenello's disclosure of information concerning potential customer(s) of Castle Point and/or use of such information for the benefit of third parties breached her duty of loyalty to Castle Point.

16.     Raffenello's breach of her duty of loyalty has damaged Castle Point.


WHEREFORE, Castle Point requests that this Court enter judgment in its favor, with damages, as well as such other relief as this Court deems just and proper.

<u>JURY DEMAND</u>

Castle Point demands a trial by jury on all claims so triable as of right.


CASTLE POINT MORTGAGE, INC.,

By its attorneys,


s/Christa von der Luft
Christa von der Luft (BBO#600362)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Blvd.
Boston, MA 02210
(617) 439-2000

Date:  November 29, 2005

1484001.1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL REINSMITH and KEVIN DINSDALE,   )
Individually, and on Behalf of all Others   )
Similarly Situated,   )     C.A. No. 05 11168 GAO
   )
      Plaintiffs,   )
   )
v.   )
   )
CASTLE POINT MORTGAGE, INC.,   )
   )
      Defendants.   )

## COUNTERCLAIM AND JURY DEMAND
## OF CASTLE POINT MORTGAGE, INC.

Castle Point Mortgage, Inc. brings this counterclaim against Eric Jensen who opted into this lawsuit on November 7, 2005.

1.     Castle Point employed Eric Jensen as a Loan Officer from approximately November 10, 2003, until April 1, 2005, in its Andover, Massachusetts facility.

2.     Upon commencing employment with Castle Point, Jensen executed a Loan Officer Confidentiality, Non-Competition and Non-Solicitation Agreement ("Agreement"), attached as Exhibit A.

3.     Pursuant to the Agreement, Jensen agreed that during his employment with Castle Point, and for a six-month period following his employment, he would not compete with Castle Point and would not become employed by any entity engaged in some or all of the same business as Castle Point in Massachusetts.

4.     Shortly after the termination of his employment with Castle Point, Jensen began working as a Loan Officer for Northeast Lending, LLC, a direct competitor of Castle Point in Massachusetts.

5.      Following the termination of his employment with Castle Point, Jensen solicited and/or received confidential business information of Castle Point concerning mortgage loan opportunities which he used for his own benefit and/or that of his new employer.

6.      On information and belief, in the first six months following the termination of his employment with Castle Point, Jensen has generated in excess of $140,000 in gross revenue for his new employer.

### Count I – Breach of Contract

7.      Castle Point incorporates by reference the allegations contained in paragraphs 1 through 6 above.

8.      Jensen has breached his Agreement with Castle Point.

9.      Jensen's breach has damaged Castle Point.

### Count II – Intentional Interference with Advantageous Business Relations

10.     Castle Point incorporates by reference the allegations contained in paragraphs 1 through 9 above.

11.     Jensen has intentionally interfered with Castle Point's advantageous business relations through improper means or motives.

12.     Jensen's interference has damaged Castle Point.

### Count III – Violation of Mass. Gen. Laws ch. 93A

13.     Castle Point incorporates by reference the allegations contained in paragraphs 1 through 12 above.

14.     Jensen's improper solicitation and/or receipt, and use of Castle Point's confidential business information following the termination of his employment with Castle

Point constitutes unfair or deceptive acts or practices in trade or commerce in violation of Mass. Gen. Laws ch. 93A.

15.     Jensen's wrongful conduct has damaged Castle Point.


WHEREFORE, Castle Point requests that this Court enter judgment in its favor, with damages, as well as such other relief as this Court deems just and proper.

<u>JURY DEMAND</u>

Castle Point demands a trial by jury on all claims so triable as of right.

CASTLE POINT MORTGAGE, INC.,

By its attorneys,


<u>s/Christa von der Luft</u>
Christa von der Luft (BBO#600362)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Blvd.
Boston, MA 02210
(617) 439-2000

Date:  November 28, 2005

1483083.1

- 3 -