# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

PAUL REINSMITH and KEVIN             )
DINSDALE, Individually, and on Behalf of  )
All Others Similarly Situated,             )
                                          )
                    Plaintiffs,           )
                                          )    Case No. 051168 GAO
        v.                                )
                                          )
CASTLE POINT MORTGAGE, INC.,             )
                                          )
                    Defendant.            )

## PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS AGAINST ERIC JENSEN AND AMANDA RAFFENELLO

Plaintiffs, Paul Reinsmith and Kevin Dinsdale, move to dismiss Defendant's counterclaim against opt-in Plaintiffs Eric Jensen and Amanda Raffenello under the anti-retaliation provision of the Fair Labor Standards Act 29 U.S.C. §215(a)(3) and Federal Rule of Civil Procedure 12(b)(1) and 12(b)(2).  Plaintiffs should prevail on this Motion because Defendant has now filed counterclaims against five members of this class—nearly one-third of its members—to punish those who have joined and to intimidate others to prevent them from joining.  Moreover, Defendant's permissive counterclaims have no independent jurisdictional basis as: they do not involve federal questions; the Defendant cannot establish diversity jurisdiction; and there is no basis for this Court to exercise supplemental jurisdiction.

## CERTIFICATON

Plaintiffs' Counsel certifies that the parties have conferred and have attempted in good faith to resolve or narrow the issues raised in this Motion.

## REQUEST FOR ORAL ARGUMENT

Plaintiffs request oral argument.

Dated: December 22, 2005

Respectfully Submitted

/s/ Erik H. Langeland
Erik H. Langeland
Erik H. Langeland, P.C.
730 Fifth Avenue, 9th Floor
New York, NY 10019
(212) 659-7774
ATTORNEY FOR PLAINTIFFS

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

PAUL REINSMITH and KEVIN           )
DINSDALE, Individually, and on Behalf of   )
All Others Similarly Situated,      )
                                    )
          Plaintiffs,            )
                                    )   Case No. 051168 GAO
      v.                         )
                                    )
CASTLE POINT MORTGAGE, INC.,        )
                                    )
          Defendant.             )

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS AGAINST ERIC
JENSEN AND AMANDA RAFFENELLO**

## I.    ISSUES PRESENTED

1. **Retaliation.** Section 215(a)(3) of the Fair Labor Standards Act prohibits retaliation against former employees that file a complaint for overtime under the Act. Defendant has now countersued five of the plaintiffs in this case—nearly one third of those involved—only asserting these claims against former emloyees who have joined this overtime lawsuit. Should CastlePoint's counterclaims be dismissed as they have been brought to retaliate against these plaintiffs and to intimidate others who are considering joining this action?

2. **Lack of Jurisdiction.** Permissive counterclaims must have an independent basis for jurisdiction: federal questions, supplemental or diversity—none of which can be established through speculation. In its counterclaim, Defendant asserts—without any support—that opt-in Eric Jensen generated "$140,000 in gross revenue" for his new employer and provides absolutely no evidence of its alleged damages from Amanda Raffenello's alleged wrongdoing. Should Defendant's counterclaims be dismissed for lack of jurisdiction as they do not meet the $75,000 amount-in-controversy threshold?

## II.  BACKGROUND

20. On June 6, 2005, Plaintiffs filed a collective action complaint against the Defendant seeking monetary damages and other relief provided under the Fair Labor Standards Act for Defendant's widespread failure to pay overtime to its loan officers.

21. On July 12, 2005, the Defendant filed an answer and asserted state-law counterclaims against named Plaintiffs, Paul Reinsmith and Kevin Dinsdale.  Plaintiffs moved to dismiss these claims on August 1, 2005.

22. Defendant fired Charles Smith in May 25, 2005.  Smith joined this lawsuit on July 21, 2005.  On August 10, 2005, Defendant filed a counterclaim against Smith.  Plaintiffs moved to dismiss this counterclaim on August 29, 2005.

23. Eric Jensen joined this lawsuit on November 7, 2005.  On November 28, 2005, Defendant filed a counterclaim against Jensen.

24. Amanda Raffenello joined this lawsuit on November 9, 2005.  Defendant countersued her on November 29, 2005.

25. As with its three prior counterclaims, Defendant's latest counterclaims serve only to punish those who have joined this lawsuit and to deter others from joining. Defendant's retaliatory counterclaim has little, if anything, to do with Plaintiffs' action to recover unpaid overtime and should be dismissed.

## III.  ARGUMENT

### A.    Defendant's Counterclaims Should Be Dismissed Because They Are Retaliatory And Are Prohibited By 29 U.S.C. §215(a)(3)

26. Section 15(a)(3) of the Fair Labor Standards Act makes it unlawful for:

> any person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint… under or related to this chapter.  29 U.S.C. §215(a)(3).

27. The purpose of Section 15(a)(3) is to foster a climate in which compliance with the substantive provisions of the Fair Labor Standards Act would be enhanced. <u>Mitchell v. Robert De Mario Jewelry</u>, 361 U.S. 288, 293; 80 S.Ct. 332, 336; 4 L.Ed.2d 323 (1960). Rather than require government supervision, Congress chose to rely on information and complaints received from employees seeking to vindicate their rights. <u>See Mitchell</u> at 292. But this type of enforcement of the Act could only be achieved if employees felt free to approach officials with grievances. <u>Id.</u> Congress and the Supreme Court recognized that employees could only do so without fear of economic retaliation:

> "…fear of economic retaliation might often operate to induce aggrieved employees to quietly accept substandard conditions." <u>Id.</u>

28. In concluding that a discharged employee could be reimbursed for lost wages in <u>Mitchell</u>, the Supreme Court reasoned that the remedies provided by the Fair Labor Standards Act would be rendered meaningless if an employer could threaten a worker with retaliatory economic harm:

> To an employee considering an attempt to secure his just wage deserts under the Act, the value of such an effort may pale when set against the prospect of discharge and the total loss of wages for the indeterminate period necessary to seek and obtain reinstatement. Resort to statutory remedies might thus often take on the character of a calculated risk, with restitution of partial deficiencies in wages due for past work perhaps obtainable only at the cost of irremediable entire loss of pay for an unpredictable period. Faced with such alternatives, employees understandably might decide that matters had best be left as they are. We cannot read the Act as presenting those it sought to protect with what is little more than a Hobson's choice. <u>Id.</u> at 293-294.

29. Courts have held that filing lawsuits against former employees is a form of retaliation. <u>See Martinez v. Deaf Smith County Grain Producers</u>, 583 F.Supp. 1200, 1208 (N.D.TX

1984).  In <u>Martinez</u>, a farm worker sued under the Fair Labor Standards Act for unpaid

overtime.  His former employer then filed a state-law breach of employment contract

claim against him.  <u>Id.</u>  In evaluating Section 215(a)(3), the Martinez Court relied on

the Supreme Court's interpretation of a virtually identical clause in the National Labor

Relations Act.  <u>Id.</u> at 1209.  There, the Supreme Court warned that a lawsuit filed

against a former employer may be retaliation and may have a chilling effect on a

worker's willingness to assert statutory rights:

> A lawsuit no doubt may be used by an employer as a powerful instrument
> of coercion or retaliation.   As the Board has observed, by suing an
> employee who filed charges with the Board or engages in other protected
> activities, an employer can place its employees on notice that anyone who
> engages in such conduct is subjecting himself to the possibility of a
> burdensome lawsuit.   Regardless of how unmeritorious the employer's
> suit is, the employee will most likely have to retain counsel and incur
> substantial legal expenses to defend against it.   Furthermore, as the Court
> of Appeals in the present case noted, the chilling effect of a state lawsuit
> upon an employee's willingness to engage in protected activity is
> multiplied where the complaint seeks damages in addition to injunctive
> relief.   Where, as here, such a suit is filed against hourly-wage waitresses
> or other individuals who lack the backing of a union, the need to allow the
> Board to intervene and provide a remedy is at its greatest.  <u>Id.</u> (citing <u>Bill
> Johnson's Restaurants v. NLRB,</u> 461 U.S. 731, 103 S.Ct. 2161, 2171; 76
> L.Ed.3d 277 (1983).

30.  The Martinez Court concluded that the employer had, in fact, retaliated against its

former employer by filing a state law claim, even though the employer prevailed in that

lawsuit.  <u>Martinez</u> at 210.  In reaching this conclusion, the Martinez Court reasoned that

a Fair Labor Standards Act violation deprived a state-law breach of contract claim of a

reasonable basis in law.  <u>Id.</u>  The Court then enjoined the employer from enforcing its

state-law verdict.

31.  Here, there is no question that Jensen and Raffenello engaged in activity protected by

statute when they joined this lawsuit.  Jensen left CastlePoint on April 1, 2005.

4

Defendant's Counterclaim Against Jensen ¶1. He joined this lawsuit on November 7, 2005, only to be countersued within three weeks. CastlePoint made no claim against Jensen in any of the six months after he left CastlePoint, despite the fact that his allegedly wrongful activity had already occurred.

32. Similarly, Raffenello left CastlePoint on September 20, 2005. Defendant's Counterclaim Against Raffenello ¶1. She joined this lawsuit on November 9, 2005, only to be countersued three weeks later. Raffenello's alleged wrongdoing allegedly occurred during her employment with CastlePoint—yet there is no evidence that she was reprimanded or otherwise disciplined as a result. Instead, CastlePoint waited until she joined this lawsuit to bring an action against her.

33. CastlePoint's retaliatory actions against Jensen and Raffenello are part of a larger pattern of retaliation against plaintiffs seeking overtime in this case. Reinsmith left CastlePoint on December 18, 2003. Defendant's Answer And Counterclaim, ¶1. He filed this case on June 6, 2005. He was countersued on July 12, 2005. CastlePoint did not sue him at any time during the year and six months after he left, although his allegedly wrongful conduct had already occurred.

34. Dinsdale left CastlePoint on December 1, 2003. Defendant's Answer And Counterclaim, ¶1. He filed this case on June 6, 2005 and was sued on July 12, 2005. As with the others, CastlePoint did not sue him at any time during the eighteen months before Dinsdale decided to seek overtime payments due to him under the Fair Labor Standards Act.

35. Finally, Smith left CastlePoint on May 25, 2005. Defendant's Counterclaim Against Smith, ¶1. He joined this lawsuit on July 21, 2005 and was countersued on August 10,

2005.  CastlePoint did not file a lawsuit against him during the two months before he asserted his rights to overtime.

36.  Moreover, CastlePoint has not sought to enforce its Employment Agreement against any other former employees who have left CastlePoint.  The purpose of its countersuits is clear—to foster an environment of hostility and economic duress for those who have joined this lawsuit and to strike fear in those who consider joining.  Through this tactic, Defendant seeks to limit its liability by 1) dissuading loan officers from joining this lawsuit, 2) causing such loan officers to hesitate, out of fear of a countersuit, and thus allowing the statute of limitations to pass, and 3) shifting the focus of the case from its failure to pay overtime as required under the Fair Labor Standards Act.

37.  Raffenello, Jensen—and indeed anybody who considers joining this lawsuit—face precisely the same Hobson's choice the Supreme Court sought to deter in Mitchell.  See Mitchell at 293-294.  By joining this lawsuit, Jensen and Raffenello now face the prospect of monetary damages that may exceed their recovery under the Fair Labor Standards Act.  This prospect is obviously the point of the countersuit and is designed to put other loan officers "on notice that anyone who engages in such conduct is subjecting himself to the possibility of a burdensome lawsuit."  See, e.g. Martinez at 1209.

38.  As in Martinez, the Defendant seeks to enforce an employment contract that is rendered unenforceable by its own violations of the Fair Labor Standards Act.  See Martinez at 1210.  The consideration for signing those employment agreements was that the Defendant would pay them in accordance with Federal laws.  The Defendant failed to keep its end of that bargain but it still seeks to use those agreements to harass

the members of this lawsuit and to ward off other plaintiffs.  The Defendant should not

be entitled to eviscerate the purpose of the Fair Labor Standards Act through their

retaliatory actions and their counterclaims should be dismissed accordingly.

### B.  Defendant's Permissive Counterclaim Must Have Its Own Independent Jurisdictional Basis

39. While compulsory counterclaims need not have their own independent jurisdictional

basis, permissive counterclaims, as that brought by the Defendant here, must.  Federal

Deposit Insurance Corp. v. LaRambla Shopping Center, Inc., 791 F.2d 215, 221.

40.  The tests to determine whether a counterclaim is permissive or compulsory include:

    1)  the sameness of issues of fact and law raised by the claim and counterclaim;

    2)  whether absent the compulsory counterclaim, *res judicata* would bar a subsequent suit on the counterclaim;

    3)  whether substantially the same evidence supports or refutes the main claim as well as the counterclaim; and

    4)  whether there is any logical relation between the main claim and the counterclaim. Fortune Management, Inc. v. Bly, 118 F.R.D. 21, 23.

41. Defendant's counterclaims differ from the Plaintiffs' claims in at least three key

respects.  First, Plaintiffs' claims are based on facts dealing with matters like hours

worked, job duties and unpaid overtime.  In contrast, the Defendant's counterclaims

are based on facts concerning an unrelated employment agreement and its alleged

breach.  Second, Plaintiffs' claims are based on the federal Fair Labor Standards Act,

29 U.S.C. §20 et seq., while the Defendant's counterclaims are based on state law

breach of contract theories.  Third, Plaintiffs seek to recover unpaid overtime on

behalf of more than 100 loan officers, while the scope of these counterclaims is limited to Jensen and Raffenello. Defendant cannot assert meritorious counterclaims against every person who opts-in to this case—doing so would be an obvious effort to retaliate against those who seek to have their overtime rights determined in this lawsuit. Because Plaintiffs' original claims and Defendant's counterclaims are based on completely different facts and legal theories, Defendant's counterclaims are permissive.

42. Defendant also fails its second test, as it is clear that any ruling on Plaintiffs' claims for unpaid overtime would not bar a subsequent suit by the Defendant for alleged breach of an employment agreement. "The elements of a *res judicata* claim under federal law are:

    1) a final judgment on the merits in an earlier proceeding;

    2) sufficient identicality between the causes of action asserted in the earlier and later suits; and

    3) sufficient identicality between the parties in the two actions." <u>Breneman v. United States ex rel. FAA</u>, 381 F.3d 33, 38.

The doctrine of *res judicata* would not bar any subsequent claims by the Defendant because such claims are based on different facts and law.

43. Defendant fails its third test because the evidence necessary to prove that the Plaintiffs were not paid overtime in violation of the Fair Labor Standards Act and that required to prove Defendant's counterclaims differs completely. To support their claims, the Plaintiffs' evidence will include: loan officer time and attendance records; loan officer payroll records; loan officer job descriptions; loan officer performance

reports; loan officer training; and loan officer expectations, goals and quotas. None of these materials have anything to do with Defendant's counterclaim. Rather, the Defendant will rely on the employment agreement and totally unrelated evidence concerning Jensen's and Raffenello's alleged breach of contract after they left Castle Point. Accordingly, Plaintiffs' claims and Defendant's counterclaims necessarily require different proof and evidence.

44. Finally, no logical relation exists between Plaintiffs' original claims and Defendant's counterclaims. To the contrary, at least three salient reasons militate in favor of litigating Plaintiffs' claims and Defendant's counterclaims separately. First, as mentioned above, Plaintiffs' claims potentially involve more than 100 loan officers, none of whom are likely to have any information concerning Defendant's counterclaim. Thus, the counterclaims would unnecessarily complicate and confuse the main issue to be determined at trial—namely whether the Defendant improperly required the Plaintiffs to work unpaid overtime. Second, the Defendant's actions, whether a deliberate tactic or not, will undoubtedly intimidate potential opt-ins who, with modest resources, may decline to join out of fear of facing a costly defense to Defendant's counterclaims. Third, the specter of the counterclaims may cause potential opt-ins to hesitate to join this lawsuit—thus limiting their claims or eliminating them entirely in some circumstances. The statute of limitations for opt-in Plaintiffs continues to run until they submit an opt-in consent form to join this lawsuit. The purpose of this lawsuit is to fully resolve Plaintiffs' claim to recover unpaid overtime. It has been brought on behalf of all similarly situated loan officers, each of whom should have the right to join this case immediately so as to preserve

their claims.    Because Defendant's counterclaims serve only to intimidate the Plaintiffs and delay their involvement in this case to their prejudice, they should not be litigated in this case.

45. As Defendant's counterclaims fail all of the above tests, they are permissive, rather than compulsory.  Accordingly, the Defendant must establish an independent jurisdictional basis for its counterclaims.   As explained in sections C through E below, Defendant cannot do so and, therefore, its counterclaims must be dismissed.

## C.  Defendant's Counterclaims Do Not Involve Federal Questions

46.  The Defendant asserts the following state law counterclaims: breach of contract, intentional interference with advantageous business relations, breach of duty of loyalty, and Violation of Mass. Gen Laws ch. 93A.  These counterclaims do not involve federal questions.

47. Federal question jurisdiction requires either that federal law creates a cause of action or that a party's right to relief necessarily depends on resolution of substantial questions of federal law. Greene v. General Motors Corp., 261 F.Supp 414 (W.D.N.C. 2003).   Actions sounding in breach of contract ordinarily do not fall within federal question jurisdiction. Camean v. F/V Lady Jay, 654 F. Supp. 709, 710. "A federal district court had no jurisdiction over action of tort between individual residents of the same state, where no constitutional or federal question is involved." Abrazinski v. DuBois, 940 F.Supp 361.

48. Because the Defendant's counterclaims—based on a state-law theories—do not involve federal questions, Defendant's cannot establish jurisdiction based on 29 U.S.C. §1331.

### D. **Defendant's Counterclaims Cannot Satisfy the Amount in Controversy Requirements for Federal Jurisdiction**

49. In order for the Defendant to establish jurisdiction under §1332 for diversity of citizenship, the Defendant must establish that the parties are citizens of different states and that the amount in controversy exceeds $75,000.00. <u>Gabriel v. Preble</u>, 396 F.3d 10, 13.

50. The Defendant cannot establish that the amount in controversy in its counterclaims exceeds $75,000.00. Once the damages allegation is challenged, "the party seeking to invoke jurisdiction has the burden of *alleging with sufficient particularity facts* indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." <u>Spielman v.Genzyme Corp.</u>, 251 F.3d 1, 5 (1st Cir. 2001) (Emphasis added). Defendant cannot rely on speculative or unpredictable "facts" to meet this burden. <u>See, e.g., Hairston v. Home Loan And Investment Bank</u>, 814 F.Supp 180, 182 (D. Mass. 1993).

51. Here, Defendant alleges no facts indicating that its alleged damages meet the jurisdictional requirements. Instead, it merely concludes that it has been damaged by Jensen's alleged violation of a vast non-competition clause, which seeks either to drive him from his career or from his home in Massachusetts. Counterclaim And Jury Demand Of Castle Point Mortgage, Inc. ¶6. Defendant cannot establish the requisite damages by providing speculative "estimates" regarding the amount of revenue that Jensen might generate for another company. <u>See Hairston</u> at182. Even if "gross revenues" were an accurate measure of its damages, Defendant cannot show that Jensen generated any revenue for another company—nor can it show it lost a single sale to any competitor as a result of Jensen's alleged breach. Defendant's

counterclaim is nothing more than a thinly veiled threat against Jensen and others that they should not seek to have their rights to overtime determined by this lawsuit. As Defendant's counterclaim cannot exceed $75,000 and has obviously been brought for an improper purpose, it should be dismissed.

52. Defendant's counterclaim against Raffenello is even more speculative and conclusory than its counterclaim against Jensen. Defendant fails to allege any facts—speculative or otherwise--indicating that its alleged damages reach the statutory threshold of $75,000. Defendant alleges that Raffenello disclosed "information concerning potential customer(s)" of Castle Point to Castle Point's competitor(s) in violation of her obligations" under the its non-competition clause. Counterclaim And Jury Demand Of Castle Point Mortgage, Inc. ¶5. Defendant provides no factual basis supporting its conclusory allegations. It does not state the type of information allegedly disclosed, to whom it was disclosed, how that "competitor" is in competition with the Defendant, the extent of Castle Point's alleged damages, or whether it was licensed to do business for these "potential customers." As Defendant has alleged no facts showing that any actionable cause of action occurred or that it exceeds the statutory threshold of $75,000, Defendant's counterclaim against Raffenello should be dismissed. See, e.g., Spielman at 5; Hairston at182.

**E. Defendant's Counterclaim Lacks Any Basis for Supplemental Jurisdiction**

53. As shown above, there is no basis for this Court to exercise supplemental jurisdiction over Defendant's unrelated state-law counterclaims.

54. The federal code of civil procedure provides that in any civil action where the district court has original jurisdiction, it shall also have supplemental jurisdiction over all

claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy 28 U.S.C. §1367.   However, the district court may decline to exercise supplemental jurisdiction for several reasons including: 1) where the claim raises a novel or complex issue of state law; or 2) in exceptional circumstances with compelling reasons for declining jurisdiction.

55. No basis exists for the court to exercise supplemental jurisdiction in this case because: 1) Defendant's counterclaims deal with a separate set of facts and law that are not part of the same case or controversy asserted by Plaintiffs; 2) there are compelling reasons to decline jurisdiction including: (a) undue and prejudicial delay to the issuance of notice to potential opt-ins whose statutes of limitation continue to run; and (b) undue intimidation to potential opt-ins who may not join the suit when faced with the threat of a costly defense.   Accordingly, this court should decline to exercise supplemental jurisdiction and dismiss Defendant's counterclaims.

## III. <u>CONCLUSION</u>

56. Wherefore, Plaintiffs, Paul Reinsmith and Kevin Dinsdale, by and through their attorneys, move this Honorable Court to dismiss Defendant's counterclaim against Eric Jensen and Amanda Raffenello as they are retaliatory in contravention of 29 U.S.C. §215(a)(3) and as they lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(2).

Dated: December 22, 2005                          Respectfully Submitted

                                                  /s/ Erik H. Langeland
                                                  Erik H. Langeland
                                                  Erik H. Langeland, P.C.
                                                  730 Fifth Avenue, 9th Floor
                                                  New York, NY 10019
                                                  (212) 659-7774

ATTORNEY FOR PLAINTIFFS

Suite 2210
161 North Clark Street
Chicago, IL 60601

Daniel K. Touhy
Touhy & Touhy Ltd.
Suite 2210
161 North Clark Street
Chicago, IL 60601

James B. Zouras
Touhy & Touhy Ltd.
Suite 2210
161 North Clark Street
Chicago, IL 60601

**Erik Langeland**

| | |
|---|---|
| **From:** | ECFnotice@mad.uscourts.gov |
| **Sent:** | Thursday, December 22, 2005 3:09 PM |
| **To:** | CourtCopy@mad.uscourts.gov |
| **Subject:** | Activity in Case 1:05-cv-11168-GAO Reinsmith et al v. Castle Point Mortgage Inc. "Motion to Dismiss" |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### United States District Court

### District of Massachusetts

Notice of Electronic Filing

The following transaction was received from Langeland, Erik H. entered on 12/22/2005 at 3:09 PM EST and filed on 12/22/2005

| | |
|---|---|
| **Case Name:** | Reinsmith et al v. Castle Point Mortgage Inc. |
| **Case Number:** | 1:05-cv-11168 |
| **Filer:** | Paul Reinsmith |
| | Kevin Dinsdale |

**Document Number:** 25

**Docket Text:**
MOTION to Dismiss *Counterclaims Against Eric Jensen and Amanda Raffenello* by Paul Reinsmith, Kevin Dinsdale.(Langeland, Erik)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=12/22/2005] [FileNumber=1249435-0] [60564790f251077e4d3b8ec3274e88c567b71c62d1bdc92c3f3e5e168acdf10af9 a37ab30797935fdc51183289e1cc1c81e53b3a1fe258208919958634e719ea]]

**1:05-cv-11168 Notice will be electronically mailed to:**

Erik H. Langeland    erik.h.langeland@rcn.com

Christa C. von der Luft    cvonderluft@nutter.com, kcannizzaro@nutter.com; cfeldman@nutter.com

**1:05-cv-11168 Notice will not be electronically mailed to:**

Ryan F. Stephan
Touhy & Touhy Ltd.

# EXHIBIT F

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL REINSMITH and KEVIN DINSDALE,                    )
Individually, and on Behalf of all Others Similarly  )
Situated,                                            )
                                                     )
       Plaintiffs,                          )
                                                     )    C.A. No. 05 11168 GAO
v.                                                   )
                                                     )
CASTLE POINT MORTGAGE, INC.,                         )
                                                     )
       Defendant.                           )
                                                     )

## <u>NOTICE OF VOLUNTARY DISMISSAL</u>

       Pursuant to Fed. R. Civ. P. 41(c), defendant Castle Point Mortgage, Inc. voluntarily

dismisses its counterclaims filed in the above action against Paul Reinsmith, Kevin Dinsdale,

Amanda Rafenello, Eric Jensen, and Charles Smith without prejudice.


                      CASTLE POINT MORTGAGE, INC.,

                      By its attorney,


                      s/Christa von der Luft
                      Christa von der Luft (BBO#600362)
                      Nutter McClennen & Fish LLP
                      World Trade Center West
                      155 Seaport Blvd.
                      Boston, MA 02210
Date:  January 6, 2006          (617) 439-2000


1494241.1

# EXHIBIT G

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

**SUPERIOR COURT**
C.A. No. 06-0052

CASTLE POINT MORTGAGE, INC.,

    Plaintiff,

v.

KEVIN DINSDALE,

    Defendant.

**COMPLAINT AND JURY DEMAND**

Plaintiff Castle Point Mortgage, Inc., for its complaint against Defendant Kevin Dinsdale, alleges the following:

1.    Castle Point Mortgage, Inc. ("Castle Point") is a mortgage company with a place of business at 300 Brickstone Square, Suite 603, Andover, Massachusetts.

2.    Kevin Dinsdale, a resident of Massachusetts, is a former employee of Castle Point at its Andover, Massachusetts, facility.

3.    Castle Point employed Defendant Kevin Dinsdale as a Loan Officer from April 1, 2003, until December 3, 2003.

4.    Upon commencing employment with Castle Point, Dinsdale executed a Loan Officer Confidentiality, Non-Competition and Non-Solicitation Agreement ("Agreement"), attached as Exhibit A.

5.    Pursuant to the Agreement, Dinsdale agreed that during his employment and for a six-month period following his employment, he would not compete with Castle Point and would

not become employed by any entity engaged in some or all of the same business as Castle Point in Massachusetts.

6.    Immediately following the termination of his employment with Castle Point, Dinsdale began working as a Loan Officer for First Call Mortgage, a mortgage company engaged in the same business as Castle Point, in Massachusetts.

## COUNT I – BREACH OF CONTRACT

7.    Castle Point incorporates by reference the allegations contained in paragraphs 1 through 6 above.

8.    Dinsdale has breached his Agreement with Castle Point.

9.    Dinsdale's breach has damaged Castle Point.


WHEREFORE, Castle Point requests that this Court enter judgment in its favor in an amount to be determined at trial and award such other and further relief as this Court deems just and proper.

## JURY DEMAND

Castle Point demands a trial by jury on all claims so triable as of right.

                          CASTLE POINT MORTGAGE, INC.,

                          By its attorneys,

                          *Christa von der Luft*

                          Christa von der Luft (BBO#600362)
                          Nutter McClennen & Fish LLP
                          World Trade Center West
                          155 Seaport Blvd.
                          Boston, MA 02210
                          (617) 439-2000

Date:  January 6, 2006


1494161.1

-2-

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.

SUPERIOR COURT
C.A. No. $O6 \cdot 18$ B

)
CASTLE POINT MORTGAGE, INC.,    )
    )    DATE: 1/6/06
    Plaintiff,    )    ORIGINAL FILED IN ESSEX SUPERIOR COURT
    )
v.    )    COMPLAINT AND JURY DEMAND
    )
AMANDA RAFENELLO,    )
    )
    Defendant.    )
    )

Plaintiff Castle Point Mortgage, Inc., for its complaint against Defendant Amanda
Rafenello, alleges the following:

1.    Castle Point Mortgage, Inc. ("Castle Point") is a mortgage company with a place
of business at 300 Brickstone Square, Suite 603, Andover, Massachusetts.

2.    Amanda Rafenello is a former employee of Castle Point at its Andover,
Massachusetts, facility.

3.    Castle Point employed Amanda Raffenello as a Loan Officer from approximately
July 14, 2004, until September 20, 2005.

4.    Upon commencing employment with Castle Point, Raffenello executed a Loan
Officer Confidentiality, Non-Competition and Non-Solicitation Agreement ("Agreement"),
attached as Exhibit A.

5.    Pursuant to the Agreement, Raffenello agreed that during her employment with
Castle Point she would not disclose confidential Castle Point information, including the identity

of potential customers and information concerning those customers to third parties or use such information for the benefit of third parties.

   6.      Under the terms of the Agreement, Raffenello also agreed that she would not compete with Castle Point while employed by Castle Point.

   7.      During her employment with Castle Point, Raffenello disclosed information concerning potential customer(s) of Castle Point to Castle Point's competitor(s) in violation of her obligations under the Agreement.

                          COUNT I – Breach of Contract

   8.      Castle Point incorporates by reference the allegations contained in paragraphs 1 through 7 above.

   9.      Raffenello has breached her Agreement with Castle Point.

   10.     Raffenello's breach has damaged Castle Point.

            COUNT II – Intentional Interference with Advantageous Business Relations

   11.     Castle Point incorporates by reference the allegations contained in paragraphs 1 through 10 above.

   12.     Raffenello has intentionally interfered with Castle Point's advantageous business relations through improper means or motives.

   13.     Raffenello's interference has damaged Castle Point.

                  COUNT III – BREACH OF THE DUTY OF LOYALTY

   14.     Castle Point incorporates by reference the allegations contained in paragraphs 1 through 13 above.

   15.     As an employee of Castle Point, Raffenello had a duty of loyalty to Castle Point not to act in derogation of Castle Point's interests.

16.   As an employee of Castle Point, Raffenello had an obligation not to misuse or appropriate for her own benefit or that of third parties confidential information of Castle Point.

17.   Raffenello's disclosure of information concerning potential customer(s) of Castle Point and/or use of such information for the benefit of third parties breached her duty of loyalty to Castle Point.

18.   Raffenello's breach of her duty of loyalty has damaged Castle Point.

WHEREFORE, Castle Point requests that this Court enter judgment in its favor in an amount to be determined at trial and award such other and further relief as this Court deems just and proper.

## JURY DEMAND

Castle Point demands a trial by jury on all claims so triable as of right.

CASTLE POINT MORTGAGE, INC.,

By its attorney,

*Christa von der Luft*

Christa von der Luft (BBO#600362)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Blvd.
Boston, MA 02210
(617) 439-2000

Date:  January 6, 2006
1493897.1

-3-

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPERIOR COURT
C.A. No.

5900-90

06-0065 D

)
CASTLE POINT MORTGAGE, INC.,           )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )      COMPLAINT AND JURY DEMAND
                                       )
PAUL REINSMITH,                        )
                                       )
        Defendant.                     )
                                       )

Plaintiff Castle Point Mortgage, Inc., for its complaint against Defendant Paul Reinsmith, alleges the following:

1.      Castle Point Mortgage, Inc. ("Castle Point") is a mortgage company with a place of business at 300 Brickstone Square, Suite 603, Andover, Massachusetts.

2.      Paul Reinsmith, a Massachusetts resident, is a former employee of Castle Point at its Andover, Massachusetts, facility.

3.      Castle Point employed Paul Reinsmith as a Loan Officer from April 1, 2003 until December 18, 2003.

4.      Upon commencing employment with Castle Point, Reinsmith executed a Loan Officer Confidentiality, Non-Competition and Non-Solicitation Agreement ("Agreement"), attached as Exhibit A.

5.      Pursuant to the Agreement, Reinsmith agreed not to divulge and confidential information of Castle Point, including customer lists and referral source information, or to use such information for the benefit of third parties.

6. Pursuant to the Agreement, Reinsmith agreed that during his employment, and for a one-year period following the termination of his employment with Castle Point, he would not contact or solicit, directly or indirectly, prospective, current or former clients, customers, referral sources or employees of Castle Point other than for the benefit of Castle Point.

7. Pursuant to the Agreement, Reinsmith agreed that during his employment and for a six- month period following his employment, he would not compete with Castle Point and would not become employed by any entity engaged in some or all of the same business as Castle Point in Massachusetts.

8. While still employed by Castle Point, Reinsmith solicited customers on behalf of First Call Mortgage, Inc., a Massachusetts-based competitor of Castle Point.

9. While still employed by Castle Point and/or within the year following the termination of his employment with Castle Point, Reinsmith solicited at least one Castle Point employee, Kevin Dinsdale, to become an employee of First Call Mortgage.

10. Immediately following the termination of his employment with Castle Point, Reinsmith began working as a Loan Officer for First Call Mortgage in Massachusetts.

## COUNT I – BREACH OF CONTRACT

11. Castle Point incorporates by reference the allegations contained in paragraphs 1 through 10 above.

12. During his employment with Castle Point and following the termination of his employment with Castle Point, Reinsmith breached Sections 3, 5 and 6 of his Agreement with Castle Point.

13. Reinsmith's breach has damaged Castle Point.

## COUNT II – BREACH OF FIDUCIARY DUTY

14.     Castle Point incorporates by reference the allegations contained in paragraphs 1 through 13 above.

15.     Reinsmith owed Castle Point a duty not to appropriate to himself or third parties confidential or proprietary information of Castle Point, including the identity of customers and prospective customers.

16.     While employed by Castle Point, Reinsmith owed Castle Point a duty not to act in derogation of Castle Point's interests.

17.     While employed by Castle Point, Reinsmith owed Castle Point a duty not to actively compete with it.

18.     Reinsmith breached these duties to Castle Point.

19.     Reinsmith's breach damaged Castle Point.

## COUNT III – INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

20.     Castle Point incorporates by reference the allegations contained in paragraphs 1 through 19 above.

21.     Reinsmith knew that Kevin Dinsdale had executed a Loan Officer Confidentiality, Non-Competition and Non-Solicitation Agreement with Castle Point.

22.     Reinsmith intentionally interfered with that Agreement, with improper means or motive, by inducing Dinsdale to start working for First Call Mortgage in violation of that agreement.

23.     Reinsmith's intentional interference damaged Castle Point.

-3-

WHEREFORE, Castle Point requests that this Court enter judgment in its favor in an amount to be determined at trial and award such other and further relief as this Court deems just and proper.

## JURY DEMAND

Castle Point demands a trial by jury on all claims so triable as of right.

CASTLE POINT MORTGAGE, INC.,

By its attorneys,

Christa von der Luft (BBO#600362)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Blvd.
Boston, MA 02210
(617) 439-2000

Date: January 6, 2006

1493980.1

# EXHIBIT H

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.

SUPERIOR COURT
C.A. No.

6-260-C

CASTLE POINT MORTGAGE, INC.,

Plaintiff,

v.

NICHOL C. HANNAFORD,

Defendant.

COMPLAINT AND JURY DEMAND

Plaintiff Castle Point Mortgage, Inc., for its complaint against Defendant Nichol C. Hannaford, alleges the following:

1. Castle Point Mortgage, Inc. ("Castle Point") is a mortgage company with a place of business at 300 Brickstone Square, Suite 603, Andover, Massachusetts.

2. Nichol Hannaford, a resident of New Hampshire, is a former employee of Castle Point at its Andover, Massachusetts, office.

3. Castle Point employed Defendant Nichol Hannaford as a Loan Officer from May 3, 2004, to April 15, 2005.

4. Upon commencing employment with Castle Point, Hannaford executed a Loan Officer Confidentiality, Non-Competition and Non-Solicitation Agreement ("Agreement"), attached as Exhibit A.

5. Pursuant to the Agreement, Hannaford agreed that during her employment and for a six-month period following her employment, she would not compete with Castle Point and

would not become employed by any entity engaged in some or all of the same business as Castle Point in Massachusetts.

6. Immediately following the termination of her employment with Castle Point, Hannaford began working as a Mortgage Specialist for Wells Fargo Home Mortgage, a competitor of Castle Point, in Massachusetts.

## COUNT I – BREACH OF CONTRACT

7. Castle Point incorporates by reference the allegations contained in paragraphs 1 through 6 above.

8. Following the termination of her employment with Castle Point, Hannaford breached her Agreement with Castle Point.

9. Hannaford's breach has damaged Castle Point.

WHEREFORE, Castle Point requests that this Court enter judgment in its favor in an amount to be determined at trial and award such other and further relief as this Court deems just and proper.

## JURY DEMAND

Castle Point demands a trial by jury on all claims so triable as of right.

CASTLE POINT MORTGAGE, INC.,

By its attorneys,

*Sarah P. Kelley*

Christa von der Luft (BBO#600362)
Sarah P. Kelly (BBO#664267)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Blvd.
Boston, MA 02210
(617) 439-2000

Date: February 1, 2006

# EXHIBIT I

## AFFIDAVIT OF JASON LEWIS

I, Jason Lewis, under the pains and penalties of perjury state as follows:

1. My name is Jason Lewis. I am over the age of 18, competent, and make this affidavit based on my person knowledge except where I have stated that it is upon information and belief.

2. I was employed as a loan officer for Castle Point Mortgage, Inc. from September 2004 to July 2005.

3. During that time, I was required to work more than 40 hours per week. I was not compensated for any overtime I worked.

4. I was also employed as a Manager for Castle Point from July 2005 to September 2005.

5. As a Manager, per companywide policy I was required to instruct loan officers to work more than 40 hours a week. They were not compensated for their overtime.

6. I attended a meeting in New York City in July 2005, for all Sales Managers. Charles Easter, the Director of Sales Managers, and the three owners of Castle Point, Christopher Infantino, Gerald Infantino, and Stephan Vanderbilt were also in attendance.

7. During the meeting, Christopher Infantino and Steven Vanderbilt informed us that Kevin Dinsdale and Paul Reinsmith had filed a lawsuit against Castle Point for unpaid overtime. Some of the managers in attendance, myself included, were eligible to join because we had worked as loan officers during the relevant time period. During that meeting, Christopher Infantino and Steven Vanderbilt actively discouraged any of us from joining this lawsuit.

8. Christopher Infantino and Steven Vanderbilt also advised us that the lawsuit was brought by two "disgruntled" former employees for the purpose of "getting even" with Castle Point. They further stated that Dinsdale and Reinsmith had "twisted" an "old law" for their wrongful purposes.

9. They led us to believe that the case was baseless. They did not mention that Castle Point faced millions of dollars of liability, that the Department of Labor had issued opinion letters concluding that loan officers were not exempt from overtime, or that we were entitled to join the case by law without fear of reprisal.

10. Christopher Infantino said that Castle Point had previously been inclined to settle lawsuits brought against them but had reconsidered and was determined to vigorously and aggressively fight them.. He stated, "we know we have more money than anyone who sues us." Christopher Infantino then emphasized that

Castle Point would use its superior financial position vis-à-vis its loan officers to make filing a lawsuit against it so prohibitively expensive that no former loan could realistically do so.

11. During the course of my employment at Castle Point, I learned that former loan officers who had joined the Dinsdale and Reinsmith lawsuit were immediately countersued by Castle Point. Most of the other loan officers learned of these countersuits and as a consequence, became afraid of also being sued by Castle Point in retaliation for joining the lawsuit.

12. I learned that Castle Point held mandatory meetings with its loan officers to inform them of this lawsuit and to dissuade them from joining.

Jason Lewis

Sworn to before me this

24th day of March , 2006

Middlesex, SS          Commonwealth of MA

Notary Public : Erica Gesing
My Commission Expires : 11|10|11

# EXHIBIT J

### AFFIDAVIT OF SARAH BIEHL

I, Sarah Biehl, under the pains and penalties of perjury state as follows:

1.  My name is Sarah Biehl. I am over the age of 18, competent, and make this affidavit based on my person knowledge except where I have stated that it is upon information and belief.

2.  I was employed as a loan officer for Castle Point Mortgage, Inc. from November 2005 through March 2006.

3.  During that time, I was required to work more than 40 hours per week. I was not compensated for any overtime I worked.

4.  I complained to my manager, Erin Triplett, that I was working extensive overtime. She told me that she did not want to know that I was working overtime because she said she was worried that Castle Point would get sued. I thought this was a strange response because she must have known I and the other loan officers were working unpaid overtime. This is based upon the fact that Ms. Triplett actually required all of the loan officers to work unpaid overtime and routinely witnessed us doing so.

5.  Shortly after I complained to Ms. Triplett that I was working extensive overtime hours without pay, I was fired.

6.  While I was still employed by Castle Point, I received a notice regarding a lawsuit captioned Reinsmith, et al. vs. Castle Point Mortgage, Inc., in which the plaintiffs were seeking damages for unpaid overtime under the Fair Labor Standards Act. I did not join because I was afraid that Castle Point would retaliate against me by either firing me or seeing to it that I did not receive any quality leads and which would dramatically reduce my income. The latter would have virtually the same effect as firing me. Castle Point regularly instilled fear in its loan officers by threatening to immediately fire anyone who committed even minor infractions of company policy. In particular, Castle Point, as a matter of policy, made it clear that it would retaliate against anyone who joined the Reinsmith lawsuit.

7.  Many of my fellow loan officers have informed me that they likewise received notice of this lawsuit but were afraid to join because they believed Castle Point would retaliate against them by firing them or dramatically reducing their income by giving them poor quality leads.

8.  I was also afraid that Castle Point would retaliate against me by suing me if I joined the overtime lawsuit. I am aware that Castle Point sued other loan officers immediately after they joined the Reinsmith lawsuit. I cannot afford the economic hardship of hiring lawyers to defend even a baseless lawsuit.

Sarah Biehl

Sarah Biehl

Sworn to before me this

_23rd_ day of _Mar._ 2006

Doyle R. Harmon, Notary Public