IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL REINSMITH and KEVIN DINSDALE, Individually, and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>CASTLE POINT MORTGAGE, INC.,<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 05-11168 GAO<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' REPLY

### FACTS

None of Castle Point's current loan officers have opted into this case.

### ARGUMENT

**1. Plaintiffs Have Shown A Likelihood Of Success On The Merits.**

To state an FLSA retaliation claim in the First Circuit, Plaintiffs must show: (1) Plaintiffs engaged in a statutorily protected activity; (2) thereafter Plaintiff's employer subjected him or her to an adverse employment action; and, (3) the adverse action was a reprisal for having engaged in the protected activity. *Blackie v. Maine*, 75 F.3d 716, 722 (1st Cir. 1996). The First Circuit reiterated this standard in 2004 in *Claudio-Gotay v. Becton Dickenson Caribe, Ltd.*, 375 F.3d. 99, 102 (1st Cir. 2004). No contrary authority exists in this Circuit.

Castle Point effectively concedes that Plaintiffs have met this standard but seeks to impose a new standard with requirements not found in these biding precedents. *See, Blackie*, 75 F.3d at 722; *Claudio-Gotay*, 375 F.3d. at 102. According to Castle Point, Plaintiffs must show that Castle Point's state-law claims were: 1) filed with retaliatory

motive; and 2) lack a reasonable basis in fact or law. *See, Martinez v. Deaf Smith County Grain Processors, Inc.*, 583 F.Supp. 1200, 1210(N.D. Tex. 1984). Only two jurisdictions have applied this standard to determine if isolated counterclaims constituted retaliation. *See, e.g. Martinez* 583 F.Supp. at 1210; *Martin v. Gingerbread House, Inc.* 977 F.2d 1405, 1407 (10th Cir. 1992). It does not apply to this case, however, where Plaintiffs have shown that Castle Point's lawsuits are a part of a more comprehensive plan of intimidation designed to prevent its employees from joining this case.

Even if this Court were to forsake the First Circuit's standard in favor of this new standard, Plaintiffs have still shown a likelihood of success on the merits. Castle Point does not dispute that its lawsuits were filed with a retaliatory motive. Instead, it alleges that Plaintiffs cannot establish that its claims lack a reasonable basis in fact or law. *See* Castle Point's Opposition P. 12 (citing *Martinez* 583 F.Supp. 1200, 1210).

Castle Point completely misses the point of *Martinez*, which strongly supports Plaintiffs and stands for the conclusion that an injunction should issue where an employer filed a lawsuit with retaliatory motive *even absent a showing that the lawsuit lacks merit*. In *Martinez*, a farm worker sued under the Fair Labor Standards Act for unpaid overtime. *Martinez*, 583 F.Supp. at 1208. His former employer then filed a state-law breach of employment contract claim against him. *Id.* In evaluating Section 215(a)(3), the *Martinez* Court reviewed the Supreme Court's interpretation of a similar clause in the National Labor Relations Act. *Id.* at 1209. There, the Supreme Court warned that a lawsuit filed against a former employer may: 1) constitute retaliation, and 2) have a chilling effect on a worker's willingness to assert statutory rights:

> A lawsuit no doubt may be used by an employer as a powerful instrument of coercion or retaliation....[B]y suing an employee who filed charges

2

> with the Board ..., an employer can place its employees on notice that anyone who engages in such conduct is subjecting himself to the possibility of a burdensome lawsuit. Regardless of how unmeritorious the employer's suit is, the employee will most likely have to retain counsel and incur substantial legal expenses to defend against it. Furthermore,... the chilling effect of a state lawsuit upon an employee's willingness to engage in protected activity is multiplied where the complaint seeks damages in addition to injunctive relief. *Id.* (citing *Bill Johnson's Restaurants v. NLRB,* 461 U.S. 731, 103 S.Ct. 2161, 2171; 76 L.Ed.3d 277 (1983).

Taking a page from this playbook, Castle Point has placed its employees on notice that if they join this case: 1) they will be sued; and 2) they will incur legal expenses. Castle Point's retaliation has been so effective that *not one* of its current employees has even dared contact Plaintiffs' counsel about this case—much less opted in.

In construing *Bill Johnson's Restaurants,* the *Martinez* Court concluded that the employer had, in fact, retaliated against its former employer by filing a state law claim, *even though the employer prevailed in that lawsuit*. *Martinez,* 583 F.Supp. at 1210. It then made clear that a federal court—as opposed the NLRB—need not find that the state court action was meritless before finding retaliation:

> *At not time in the pretrial or trial phase of the state lawsuit was the employer's position "plainly foreclosed as a matter of law or otherwise frivolous."* The employer knew, however, that an FLSA claim was pending in federal court and...that a finding of an FLSA violation by this Court would plainly foreclose as a matter of law its state lawsuit claims. *Martinez* 583 F.Supp. at 1210 (emphasis added).

The *Martinez* Court then enjoined the state-court proceedings, holding that its finding of an FLSA violation necessarily "determines that controlling federal law bars the [employer's] right to relief" in the state lawsuit." *Id.* Thus, the Court found that the state lawsuit lacked a reasonable basis in law and was prohibited by § 15(a)(3) of the FLSA. *Id.*

3

In other words, even if Castle point's lawsuits had any merit, its clear violations of the FLSA negate any otherwise meritorious actions based on Plaintiffs' employment. As in *Martinez*, Castle Point obviously knew that the FLSA claim was pending and that a finding of an FLSA violation by this Court would plainly foreclose as a matter of law its state lawsuit claims. *See, Martinez,* 583 F.Supp. at 1210. Plaintiffs, moreover, have shown that they are likely to succeed on their FLSA claim. *See* Plaintiffs' Memorandum Of Law, PP. 5-8.

Castle Point, in contrast, has not met its burden of producing evidence of a legitimate reason for its state-law claims. *See, e.g. Kanida v. Gulf Coast Medical Personnel, LP.*, 363 F.3D 568 (5TH Cir. 2004). In fact, Castle Point provides only this meek explanation for its torrent of after-the-fact lawsuits:

> That an employer may initially decide to forego enforcing its contractual obligation with certain former employees but later decide to pursue those rights after beings sued, so that in the event that the employer is found liable to the employee for damages, those damages can be offset by the amounts owed to the employer by the employee, does not render the employer's lawsuit retaliatory in nature. Defendant's Opposition, P. 13.

Ironically, Castle Point admits that but for their participation in this FLSA lawsuit, Plaintiffs would not have been sued. This admission, in and of itself, establishes that Castle Point's actions were retaliatory. *See, e.g. Blackie* 75 F.3d at 722.

Castle Point has successfully undermined the judicial process with its lawsuits, threats, surreptitious communications, and other improper tactics.[1] Plaintiffs have shown

---

[1] Castle Point attempts to pass off the zero response rate of its employees as a coincidence merely reflecting disinterest from a group of loan officers that barely worked over forty hours per week. The facts, however, show otherwise. For example, loan officer Jason Lewis verifies that the reason employees refused to join is not the result of disinterest or belief that this action lacks merit but because they are afraid of being sued. Lewis Affidavit, ¶11.

4

more than the necessary likelihood of success on their claims for this Court to enjoin Castle Point's actions.

**2. The Anti-Injunction Act Does Not Bar The Requested Relief**

Because the FLSA falls into the "expressly authorized" exception to the Anti-Injunction Act, that Act does not prohibit an injunction of Castle Point's retaliatory activity.[2] *See, e.g. Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct.2151 (1972). In *Mithcum*, the Supreme Court concluded that 42 U.S.C. §1983 expressly authorized injunctions and was an exception to the Anti-Injunction Act. In arriving at its conclusion, it noted with approval that the FLSA falls within the same exception:

> …The federal courts have found that other Acts of Congress that do not refer to s. 2283 or to injunctions against state court proceedings nonetheless come within the "expressly authorized" language of the anti-injunction statute. See, e.g., *Walling v. Black Diamond Coal Mining Co.* 59 F.Supp. 348, 351 (Wd Ky.)(the Fair Labor Standards Act);… *Mitchum*, 407 U.S. at 238 FN25.

In *Casa Marie v. Superior Court of Puerto Rico*, the First Circuit adopted the Supreme Court's conclusion that the FLSA was an express authorization exception:

> …*Walling v. Black Diamond Coal Mining Co.*, 59 F.Supp. 348 (W.D. Ky. 1943)(Fair Labor Standards Act constitutes "express" exception; although jurisdiction is concurrent, injunctive relief is available *only in federal court*.). *Casa Marie, Inc. v. Superior Court of Puerto Rico*, 988 F.2d 252, 261 (1st Cir. 1993).

Similarly, the *Walling* Court found that a federal court could enjoin state court proceedings in an FLSA case because Congress specifically vested jurisdiction for those injunctions in the federal courts:

> Since the United States court is the only court in which the administrator can apply for an injunction it must necessarily assume jurisdiction even

---

[2] A federal count may enjoin state court proceedings 1) if expressly authorized to do so by Act of congress; 2) where the injunction is necessary to aid in jurisdiction; or 3) to protect or effectuate the federal court's judgments. *See, e.g. Mitchum* 407 U.S. at 226.

5

though its ultimate conclusion might interfere with the receiver and his operation under the state court. The purpose of Congress was to stop unfair labor practices. It had to fix jurisdiction. It chose to fix that jurisdiction in the United States courts. Unless the Act is for some reason unconstitutional its provisions are mandatory regardless of whom they affect." *Walling* 59 F.Supp. at 351.

After careful study, Congress enacted the FLSA to provide a remedy for unfair labor conditions throughout the country:

> The statute is remedial of what the Act itself declares to be a condition of labor in industries engaged in interstate commerce, detrimental to the maintenance of the minimum standard of living. It cannot therefore be assumed that to invoke the remedy by proceeding in the chosen tribunal the Administrator must first obtain permission from any authority, but may proceed at once and independently to seek to enjoin a continuance of an unfair labor practice. Any other reasoning would defeat the purpose of the Act and would nullify by judicial fiat the enactment of a statute made necessary by a condition found to exist after careful study by the Congress. *Id.*

The purpose of the FLSA would clearly be defeated if federal courts could not enjoin state proceedings. *Id.* The *Martinez* Court echoed these concerns, holding again that the FLSA was an express authorization exemption to the Anti-Injunction Act. *See Martinez* 583 F.Supp. at 1212. In *Martinez*, the Court found that Congress enacted the FLSA to protect workers through compulsory federal legislation:

> As the Supreme Court has said: The legislative history of the Fair Labor Standards Act shows an intent on the part of Congress to protect certain groups of the population from sub-standard wages and excessive hours.... [D]ue to the unequal bargaining power as between employer and employee, certain segments of the population required *federal compulsory legislation* to prevent private contracts on their part which endangered national health and efficiency and as a result the fee movement of goods in interstate commence." *Id.*

The *Martinez* Court held that the FLSA could only be given its intended scope by enjoining the state court action. *Id.* at 1212. This included enjoining the enforcement of an "illegal" employment contract because it violated the FLSA. *Id.*

6

Castle Point's Opposition omits any mention of cases evaluating the Anti-Injunction Act in relation to the FLSA.  Instead, it relies on *Vendo Company v. Lektro Vend Corporation*, which construes the Clayton Act.  433 U.S. 623 (1977).  The Clayton Act is obviously not at issue in this litigation.  No authority supports Castle Point's conclusion that the FLSA is subject to the Anti-Injunction Act.  This Court should reject Castle Point's unsupported interpretation, particularly since it is contrary to the Supreme Court's and the First Circuit's conclusions on this issue.[3]

The goal of the FLSA's anti-retaliation provisions is to place the employee retaliated against in the same position he would have been in had the retaliation never taken place.  *Martinez*, 538 F.Supp at 1212. Consistent with this goal, enjoining Castle Point's retaliatory activity and correcting its illicit influence would place those who have suffered the retaliation as nearly as possible to the place they would have been if the retaliation had never taken place.

## CONCLUSION

This Court should enjoin Castle Point's retaliatory activity to provide Plaintiffs with a fair opportunity to have their rights adjudicated in this litigation.

Dated: April 18, 2006                                       Respectfully Submitted

/s/ Erik H. Langeland
Erik H. Langeland (BBO 567388)
730 Fifth Avenue, 9th Floor
New York, NY 10019
(212) 659-7774
ATTORNEY FOR PLAINTIFFS

---

[3] Castle Point also omits from its analysis any discussion of other exceptions to the Anti-Injunction Act.  For example, if a state court proceeding is determined to be harassing to the Plaintiff, as in this case, an injunction is especially important to block the Defendant from undercutting the resolution of federal rights by the federal courts. *See, e.g., In re First Commodity Corp.*, 89 BR 283, 287 (D. Mass. 1988).