UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL REINSMITH and KEVIN DINSDALE, )<br>Individually, and on Behalf of all Others )<br>Similarly Situated, )<br>)<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>CASTLE POINT MORTGAGE, INC., )<br>)<br>    Defendant. ) | C.A. No. 05 11168 GAO |

### CASTLE POINT MORTGAGE, INC.'S OPPOSITION
### TO PLAINTIFFS' MOTION TO AMEND COMPLAINT

**I.   INTRODUCTION**

This action, initially filed in June, 2005, as a single count for violation of the Fair Labor Standards Act, 29 U.S.C. § 207, alleges that Castle Point Mortgage, Inc. ("Castle Point") mis-classified plaintiffs, former Castle Point loan officers, as exempt employees. Plaintiffs allege that they worked in excess of 40 hours per week and are owed overtime wages. Plaintiffs have sent two notices to all potential class members notifying them of this action and requesting that they file opt-in notices by April 18, 2006 should they want to participate in this action. There are now a total of 29 plaintiffs in this action. Apparently not satisfied with the class size, plaintiffs have moved to amend their complaint to add a state law class claim for unpaid overtime wages and for retaliation under the FLSA. Plaintiffs' motion to amend their complaint to include a state law class action claim should be denied[1] because it would be an inappropriate exercise of this Court's supplemental jurisdiction under 28 U.S.C. §

---

[1] Castle Point does not oppose plaintiffs' motion to amend the complaint to add a retaliation claim.

1367. Plaintiffs' proposed state law class claim would substantially predominate over the federal FLSA collective action and would interfere with the federal policy of FLSA claims proceeding on an opt-in basis.

II.     FACTUAL AND PROCEDURAL BACKGROUND

The bulk of plaintiffs' "procedural history" section in their motion to amend consists of allegations regarding Castle Point's alleged retaliation against class members.  Castle Point vehemently denies that it has engaged in any retaliatory or coercive behavior towards class members.  It has addressed plaintiffs' allegations in its opposition to plaintiffs' motion for temporary restraining order and, rather than re-state those facts here, respectfully refers the Court to that opposition.  Notably absent from plaintiffs' motion, however, is any explanation of why the state law claim that they now seek to include was omitted from their initial complaint.

Plaintiffs' motion seeks to attribute what they perceive as a small number of opt-ins (approximately 12%) to unlawful conduct of Castle Point.  Not only has Castle Point not engaged in any such conduct, plaintiffs have ignored completely the fact that many class actions have similar response rates and that there may simply be a lack of interest in participating in this lawsuit when the evidence strongly suggests that loan officers worked little, if any, overtime.  *See, e.g., De Asencio v. Tyson Foods, Inc.*, **342 F.3d 301, 304-305 (3rd Cir. 2003) (15% opt in rate);** *Bartleson v. Winnebago Industries, Inc.*, **219 F.R.D. 629, 631 (N.D. Iowa 2003) (4% opt in rate); Affidavit of Gerald Infantino, ¶¶ 21-22 (noting that**

computer records from August – October, 2005, indicate that, on average, loan officers worked a maximum of 41.35 hours per week).[2]

Including the named plaintiffs, there are a total of 29 plaintiffs participating in the FLSA action. If plaintiffs are permitted to amend their complaint to add a state law class claim, the proposed class would be an opt-out class of approximately 75 former and current Castle Point employees. If the motion to amend is allowed, there will need to be discovery and motion practice on the appropriateness of class certification that will likely result in a need to extend the current November 20, 2006 deadline for completion of fact discovery.

### III. ARGUMENT

#### A. This Court Should Not Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claims.

This Court lacks original jurisdiction over the proposed state law claims for alleged unpaid overtime because plaintiffs cannot, on an individual basis, meet the $75,000 amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332(a). *Lopez v. Arraras*, 606 F.2d 347, 351 (1st Cir. 1979) (claims of individual class members with separate and distinct claims may not be aggregated to satisfy $75,000 amount in controversy requirement). For jurisdiction to lie, it must be, therefore, because it is appropriate for this Court to exercise supplemental jurisdiction over the state law claims. The supplemental jurisdiction statute, 28 U.S.C. § 1367, provides that in all cases in which a district court has original jurisdiction, the court also has supplemental jurisdiction over "all claims that are so related to claims in the action within such original jurisdiction that they form part of the same

---

[2] Castle Point has begun an extremely labor intensive process of reviewing individual loan officers' loan files (in which they were to record all loan activity) to re-create the hours actually worked. Despite allegations in the complaint claiming that "plaintiffs and the similarly situated employees routinely worked in excess of forty hours per week," Reinsmith's loan files indicate that of the 38 weeks that he worked at Castle Point, there are a maximum of 6 weeks that he could have exceeded forty hours per week.

case or controversy under Article III of the United States Constitution." *Id.* Section 1367 also provides, however, that a district court may decline to exercise supplemental jurisdiction if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction" or if in "exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(2),(4). This Court should not allow plaintiffs' motion to amend their complaint to include state law class action claims because such claims would substantially predominate over the federal FLSA collective action and would interfere with the federal policy of FLSA claims proceedingon an opt-in basis.

The Portal to Portal Act, enacted in 1947, changed participation in FLSA class actions from an opt-out procedure to an opt-in procedure. In contrast to a Fed. R. Civ. P. 23 class action, plaintiffs are only part of a FLSA class action if they consent to join the action. *See* 29 U.S.C. § 216(b); *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3rd Cir. 2003). With the Portal to Portal Act, Congress indicated a clear preference for opt-in actions for alleged overtime pay violations. *Id.* at 310. Courts have noted that the two different class procedures are "irreconcilable" and that the presence of both types of actions in a single lawsuit renders the action "unwieldy" which detracts from the efficient resolution of claims. *Jackson v. City of San Antonio*, 220 F.R.D. 55, 60 (W.D. Tex. 2003); *Brown v. Ameri-National Corp.*, 2005 U.S. Dist LEXIS 8922 *6 (D. Kan. 2005).

In addition, where plaintiffs seek to pursue a FLSA collective action simultaneously with a state law class action which includes plaintiffs who have not opted into the federal action, the effect is to thwart the Congressional intent that collective FLSA actions proceed on an opt-in basis. *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 470 (N.D. Cal. 2004) (federal policy of requiring FLSA plaintiffs to opt in to class thwarted by allowing

inclusion of unnamed parties through state law class claims with opt out procedures); *Lindsay v. Government Employees Insurance Co.*, 335 F. Supp. 2d 119, 121 (D.D.C. 2004) (same); *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, (N.D. Ill. 2004) (declining to certify state law class claim because to do so would undermine Congressional intent to limit overtime claims to collective actions.

This is especially the case in situations where it is known that the federal opt-in class will be substantially smaller than the state law opt out class. *Jackson v. City of San Antonio*, 220 F.R.D. 55, 60 (W.D. Tex. 2003) (federal opt in class of 190 versus potential state law class of 2000 calls for remand of state law claims); *DeAsencio*, 342 F.3d at 350 (Court of Appeals finds abuse of discretion in district court's exercise of supplemental jurisdiction over potential state law class of 3,400 employees when only 502 had opted into FLSA action). In these situations, addition of state law class claims cause "the federal tail represented by a comparatively small number of plaintiffs to wag what is in substance a state dog." *DeAsencio*, 342 F.3d at 311. At least one court has noted that in situations such as this, where the state law claim is not initially asserted or pursued at the outset, the state law claim can be considered simply a "second line of attack when the FLSA opt-in period yielded a smaller than desired federal class." *De Asencio*, 342 F.3d at 312.

Accordingly, in a number of FLSA collective actions, federal courts have declined to exercise supplemental jurisdiction over state law overtime claims on the grounds that the state law claims will predominate over the federal FLSA collective action and that the state law opt out class procedure would subvert the federal policy of FLSA collective actions proceeding only on an opt in basis. *See, e.g., Jackson*, 220 F.R.D. at 61 (remanding state law claims in their entirety); *Brown*, 2005 U.S. Dist. LEXIS at * 6 (same); *Zelaya v. J.M. Macias, Inc.*, 999

F. Supp. 778, 783 (E.D.N.C. 1998) (same); *De Asencio*, 342 F.3d at 312.  In other cases, courts have declined to exercise supplemental jurisdiction over the state law class claims but have retained jurisdiction over the individual state law claims of those who have opted into the federal FLSA action.  *See Bartleson v. Winnebago Industries, Inc.*, 219 F.R.D. 629, 637 (N.D. Iowa 2003); *Lindsay*, 355 F. Supp. 2d at 123.

      Plaintiffs initially filed this action on June 5, 2005 asserting a single cause of action for unpaid overtime under the FLSA.  They could have alleged state law claims for alleged unpaid overtime wages as part of that initial complaint but did not.[3]  It was only as the close of the opt-in period neared on April 18, 2006, and plaintiffs had obtained fewer opt-in notices than they desired, that they moved to amend their complaint to add a state law claim with an opt-out procedure.  The federal opt-in class consists of 29 former employees.  Of this group, 21 were employed in Massachusetts.  Should plaintiffs' motion to amend be allowed, and plaintiffs obtain class certification of their state law claim, that class could encompass approximately 75 individuals.  As set forth above, this would not only interfere with the federal policy of having class claims for unpaid overtime proceed using an opt-in basis, it would also have the effect of having the state law claims predominate over the FLSA claim which is the sole basis for this Court's exercise of jurisdiction.  *See, e.g., Jackson*, 220 F.R.D. at 61; *Brown*, 2005 U.S.

---

[3] **Plaintiffs contend that their motion to amend their complaint to add the state law claim was prompted by Castle Point's "harassment" and "intimidation" of class members.  Plaintiffs' allegations in this area focus on counterclaims filed by Castle Point against four former Massachusetts employees and alleged statements by Castle Point management within the workplace.  The different state offices are run as separate units and the employees from one office do not interact with employees from the other offices on a regular basis.  If the lawsuits were to have any impact, one would expect that impact to be greatest among the Massachusetts employees.  The opposite is the case – a greater percentage of employees from the Massachusetts office have joined the action than from either of Castle Point's other two offices.  Of those employed in Massachusetts, 21 of the 66 who received notice of this lawsuit are participating in it.  Eleven of the 66 were hired after October 23, 2005, when Castle Point instituted a maximum 40-hour work week and thus have no claims for unpaid overtime.  Twenty ceased working for Castle Point before the lawsuit was filed and thus could not have been impacted by any statements within the workplace about the lawsuit.**

Dist. LEXIS at * 6; *Zelaya v. J.M. Macias, Inc.*, **999 F. Supp. 778, 783 (E.D.N.C. 1998)**; *De Asencio*, **342 F.3d at 312.**

Another factor weighing against the court's exercise of supplemental jurisdiction is the different legal standards involved in evaluating the state and federal claims. *See Ballaris v. Wacker Siltronic Corp.*, **2002 WL 926272 *3 (D. Or. 2002)** (declining to exercise supplemental jurisdiction over state law claim for overtime based in part on differences in state and federal law); *De Asencio*, **342 F.3d at 309-310**; *see also Zelaya*, **999 F. Supp. at 783** (declining to exercise supplemental jurisdiction in part based on jury confusion that would arise when faced with two class actions with different members).

Under Massachusetts law, a plaintiff may recover up to treble damages for unpaid overtime. Mass. Gen. Laws ch. 151, § 1B. To recover multiple damages, which are considered punitive in nature, however, a plaintiff must prove that the employer's conduct was outrageous, or that the defendant acted with an "evil motive" or with reckless indifference to the rights of others. *Goodrow v. Lane Bryant, Inc.*, **432 Mass. 165, 178 (2000).** Under the FLSA, in contrast, a plaintiff recovers liquidated damages, equal in amount to actual damages, unless the employer shows that it acted in good faith and that it had reasonable grounds for believing that its conduct was not a violation of the FLSA. 29 U.S.C. § 260. The state and federal causes of action also have differing limitations periods and different methods of calculating the employee's regular hourly rate for purposes of determining overtime owed. Mass. Gen. Laws ch. 151, § 20A (two year limitations period); 29 U.S.C. § 255(a) (two year limitations period for non-willful violations which is extended to three years if plaintiff proves the violation was willful); 455 C.M.R. § 2.01 (employee's regular hourly rate is calculated by dividing the total number of hours worked during the week into the employee's total weekly

earnings, excluding commissions); 29 C.F.R. § 778.117 (commissions included in calculating an employee's total weekly earnings). These differences between state and federal law would only serve to confuse the jury if forced to deal with both claims simultaneously and will unnecessarily complicate resolution of the existing federal claim.

Judicial economy and an interest in avoiding inconsistent outcomes – two factors that other courts have acknowledged weigh in favor of an exercise of supplemental jurisdiction – are not present here. *See, e.g., De Asencio,* 342 F.3d at 310; Jackson, 220 F.R.D. at 60. Plaintiffs' counsel in this action, through local counsel in Maryland and New Jersey, has already filed two state court actions with allegations similar to the case at bar: the Maryland class action complaint, *Omar Bather and Michael Wiles v. Castlepoint Mortgage*, Baltimore County, C.A. No. 24-C-06-003046, filed in March, 2006, alleges violation of Maryland law, and the New Jersey class action complaint, *Robert Bianchi v. Castlepoint Mortgage*, Morris County Superior Court, C.A. No. MRS-L-1193-06, filed in April, 2006, alleges violation of the FLSA and New Jersey law. Both actions allege, as do the plaintiffs here, that they were mis-classified as exempt employees and are owed overtime for hours worked in excess of 40 hours per week. Thus, even should this Court assume supplemental jurisdiction, there will be two additional courts overseeing cases very similar to the case at bar.

- 9 -

### IV.  CONCLUSION

For the reasons stated above, this Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims and deny plaintiffs' motion to amend their complaint to add such state law claims.  If the Court is inclined to exercise supplemental jurisdiction, it should be limited to those plaintiffs who are participating in the FLSA claim.

**CASTLE POINT MORTGAGE CORP.,**

**By its attorneys,**

**/s Christa von der Luft**
**Christa von der Luft (BBO# 600362)**
**Nutter, McClennen & Fish, LLP**
**155 Seaport Blvd.**
**World Trade Center West**
**Boston, MA  02210**
**(617) 439-2000**

**Dated:  May 22, 2006**
1528768.1