UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL REINSMITH and KEVIN DINSDALE, Individually, and on Behalf of all Others Similarly Situated,

Plaintiffs,

v.

CASTLE POINT MORTGAGE, INC.,

Defendant.

C.A. No. 05 11168 GAO

## JOINT STIPULATION FOR SETTLEMENT

This Joint Stipulation for Settlement is entered into between plaintiffs Paul Reinsmith and Kevin Dinsdale, individually, and on behalf of all others similarly situated, and defendant Castle Point Mortgage, Inc. ("Castle Point") by the signatures of their counsel of record to this Stipulation. Defendant and plaintiffs are collectively referred to as "Settlement Parties."

## RECITALS

1. Each counsel who signs this stipulation has all authority required to bind the Settlement Parties, and their successors, assigns, and heirs, to the terms of this Stipulation and any Judgment resulting from it.

2. Plaintiffs were employed by Castle Point Mortgage, Inc. as Loan Officers in Castle Point's offices in Andover, Massachusetts. In addition to the named plaintiffs in this action, 29 other former Castle Point Loan Officers have opted in to this action, and alleged that Castle Point misclassified their positions as exempt under the Fair

Labor Standards Act, 29 U.S.C. § 207. They demanded back pay, liquidated damages, and attorneys' fees.

3.      Plaintiffs have moved to amend their complaint to add a Massachusetts state law class claim for unpaid overtime under Mass. Gen. Laws ch. 151, § 1A and for retaliation under the FLSA. Former Loan Officers of Castle Point, represented by plaintiffs' counsel in this action, have filed a complaint in New Jersey state court alleging violation of the New Jersey wage law, N.J. Code 34:11-56A4, and a complaint in Maryland state court alleging violation of the Maryland wage and hour law, Md. Lab. & Emp. Code 3-415.

4.      The Settlement Parties desire to resolve this litigation, and in doing so do not concede the truth or falsity of any allegation of fact made in the pleadings in this matter, nor do they concede the correctness or applicability of any legal theory of recovery or defense asserted in this action.

5.      Because the settlement includes claims raised under the Fair Labor Standards Act ("FLSA"), the Settlement Parties recognize that a Court must supervise and approve the settlements. "Claims for FLSA violations can, of course, be settled when the settlement is supervised by the DOL or a court." *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 374 (4th Cir. 2005). The Settlement Parties have agreed to an attorneys' fee award and costs in the amount of $225,000.00. However, the Settlement Parties understand the court may determine a different amount to be reasonable. The parties agree that an award of a lesser amount of attorneys' fees as determined by the

Court will not nullify the other terms of this Stipulation for Settlement that are deemed acceptable by the Court.

6. The proper method by which a court may approve an FLSA settlement is through a stipulated judgment. *Schulte, Inv. v. Gangi*, 328 U.S. 108, 114 (1946); *see also Lynn's Food Stores, Inc. v. United States Department of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982) ("When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.").

7. Plaintiffs' counsel represents that they have diligently pursued an investigation of the factual and legal merits of the claims asserted against Castle Point in this action and the New Jersey and Maryland actions. Included as part of this investigation was a review of analyses of three different sources of electronic data (Citrix server usage record, email records, and loan file notes) in support of Castle Point's claim that Loan Officers worked, on average, less than two hours per week of overtime. Based on their own independent investigation and evaluation, plaintiffs' counsel is of the opinion that the settlement with Castle Point is fair, reasonable, and adequate and is in the best interests of the Class Members in light of all known facts and circumstances, including the risk of significant delay, litigation risks, and the defenses asserted by Castle Point.

TERMS OF SETTLEMENT

8. The complaint in this action is amended to include class action claims for non-payment of overtime wages under Massachusetts law, Mass. Gen. Laws ch.151, § 1A, Maryland law, Md. Lab. & Emp. Code 3-415, and New Jersey law, N.J. Code 34:11-56A4. A copy of the proposed Amended Complaint is attached as Exhibit A.

9. Pursuant to Fed. R. Civ. P. 23(b)(3), classes are certified for the Massachusetts, Maryland and New Jersey state law claims.

10. The class for the Massachusetts state law claim consists of all individuals employed by Castle Point in Massachusetts as Loan Officers from June 30, 2002, until October 23, 2005.[1] Class representatives for this class are Paul Reinsmith and Kevin Dinsdale.

11. The class for the Maryland state law claim consists of all individuals employed by Castle Point in Maryland as Loan Officers from June 30, 2002, until October 23, 2005. Class representatives for this class are former named plaintiffs in the Maryland state court action Omar Bather and Michael Wiles

12. The class for the New Jersey state law claim consists of all individuals employed by Castle Point in New Jersey as Loan Officers from June 30, 2002, until October 23, 2005. Class representative for this class is former named plaintiff in the New Jersey action Robert Bianchi.

---

[1] The class period ends on October 23, 2005 because at that time Castle Point changed its policy for Loan Officers and began formally limiting Loan Officers to a 40-hour work week and began requiring Loan Officers to submit weekly time sheets.

13.    Collectively, members of the Massachusetts, Maryland, and New Jersey classes who did not opt in to this lawsuit by April 18, 2006 ("Opt In Plaintiffs"), and who were not named plaintiffs in lawsuits filed against Castle Point ("Named Plaintiffs") are referred to as "Class Members."

14.    The Maryland state court claim, *Omar Bather and Michael Wiles, individually and on behalf of all others similarly situated, v. Castle Point Mortgage, Inc.*, Baltimore City Circuit Court, C.A. No. Case No.: 24-C-06-3046, and the New Jersey state court claim, *Robert Bianchi, individually and on behalf of all others similarly situated, v. Castle Point Mortgage, Inc.*, Morris County Superior Court, C.A. No. MRS-L-1193-06, will be dismissed without prejudice.

15.    Castle Point will contribute a maximum amount of $450,000 to a Claim Fund from which payments for alleged overtime wages and liquidated damages will be made to Class Members, Named Plaintiffs and Opt In Plaintiffs depending on their length of employment as Loan Officers with Castle Point, their compensation as Loan Officers, whether they opted in to this lawsuit on or before April 18, 2006, and whether they were named plaintiffs in the lawsuits against Castle Point, and providing the Class Members, Named Plaintiffs, and Opt In Plaintiffs execute the Agreement attached as Exhibit B and a W-4 form.

16.    For purposes of calculating overtime wages, one of three different hourly rates will be used for each Class Member depending on the Class Member's annualized earnings as a Loan Officer. Loan Officers received a monthly draw against

commissions of $2,000 and then received commissions based on the amount of mortgage loans closed.  Annual Loan Officer compensation ranged from $24,000 to over $100,000.

17.    Class Members with the top third highest annualized earnings will have overtime wages calculated based on their average hourly rate; Class Members with the middle third of annualized earnings will have overtime wages calculated based on their average hourly rate; and Class Members with the lowest third of annualized earnings will have overtime earnings calculated based on their average hourly rate.

18.    These average hourly rates for the high, middle and low groups are $35.66, $17.62 and $11.52 respectively.

19.    Using the appropriate hourly rate, each Class Member will have a total overtime wage calculated based on working 2.32 hours of overtime per week throughout his period of employment as a Loan Officer using a fluctuating work week method of calculation.

20.    Each Class Member will be eligible to receive liquidated damages in an amount equal to his total overtime wage.

21.    Opt In Plaintiffs and Named Plaintiffs will have their hourly rates determined based on their individual annualized earnings and will have overtime wages calculated based on working 5.36 hours of overtime per week throughout their period of employment as Loan Officers using a fluctuating work week method of calculation.

Opt In Plaintiffs and Named Plaintiffs will also be eligible to receive liquidated damages in an amount equal to their total overtime wages.

22.    For settlement amounts allocated to wages, normal payroll taxes and withholdings will be deducted pursuant to state and federal law. For the amount allocated to liquidated damages, the amount will be reported as income on IRS Form 1099.

23.    The Class Representatives will receive a combined payment of $10,000 from the Claim Fund as a class representative fee.

24.    Following Court approval of this Stipulated Settlement, Plaintiffs' class counsel will send Notice of this settlement and eligibility to receive payments from the Claim Fund will to all Class Members within 10 days.  The form of the proposed notice is attached as Exhibit C (which includes the Settlement Agreement and General Release and Form W-4). If after the initial mailing, the Notice is returned as undeliverable, class counsel will attempt to locate the Class Member by way of a national locator database or address service and, if another address is found, remail the Notice to that new address.

25.    To receive payment from the Claim Fund, each Class Member, Named Plaintiff and Opt-In Plaintiff will be required to execute a Settlement Agreement and General Release and Form W-4 (attached as Exhibit D) and return such executed agreement and form to Touhy & Touhy postmarked within 40 days of the mailing of Notice ("Claim Submission Deadline").

26.    To opt out of the settlement, Class Members, Named Plaintiffs and Opt In Plaintiffs will be required to provide written notice to plaintiffs' counsel postmarked within 40 day of the mailing of Notice.  Plaintiffs' counsel will provide copies of any opt-out notice(s) to Defense counsel and this Court within 5 business days of the opt-out deadline.

27.    Any Class Member who wishes to object to the Proposed Class Settlement must file a written objection with the Clerk of the Court within 40 days of the mailing of Notice and serve the written objection on both Plaintiffs' class counsel and counsel for the Defendant no later than 40 days after the mailing of Notice.

28.    Touhy & Touhy will provide the executed agreements and Forms W-4 and copies of postmarked envelopes to Castle Point's counsel within 5 business days of the Claim Submission Deadline.

29.    For each Class Member, Named Plaintiff and Opt In Plaintiff who submits an executed Settlement Agreement and Form W-4 by the Claim Submission Deadline, Castle Point will provide payment as set forth in paragraphs 17-22 above within 30 days of the Claim Submission Deadline from the Claim Fund ("Claim Fund Payment Deadline") or within 30 days of final approval by the Court of this Settlement, whichever is later.

30.    Amounts remaining in the $450,000 Claim Fund following payment of all properly submitted claims and expiration of the Claim Fund Payment Deadline will remain the sole property of Castle Point.

31.    Upon receipt of executed Settlement Agreements and General Releases from Charles Smith, Kevin Dinsdale, Nichol Hannaford, Amanda Rafenello, Jason Lewis, and Paul Reinsmith, the respective Massachusetts state court actions against these individuals will be dismissed with prejudice.

32.    Castle Point will execute a release in the form attached as Exhibit D in favor of Named Plaintiffs and Opt In Plaintiffs.

33.    Pursuant to Fed. R. Civ. 23(g), Daniel K. Touhy of Touhy & Touhy, Ltd. and Erik Langeland are appointed Class Counsel.    Plaintiffs are separately filing a Motion for Appointment as Class Counsel.

34.    Class Counsel for Plaintiffs will receive a maximum of $225,000.00, paid by Castle Point, as attorneys' fees and costs for all work performed in connection with this action and on behalf of class members, including but not limited to all work performed in connection with administering the settlement, issued on an IRS Form 1099. Class counsel will submit a motion pursuant to Fed. R. Civ. P. 54(d) in support of its request for attorneys' fees and costs. Castle Point does not oppose Class Counsel's request for fees and costs under this paragraph. Castle Point will provide payment for attorneys' fees and costs within 15 days of Court approval of Class Counsel's motion.

35.    Within 10 days of the Claim Payment Deadline and Castle Point's payment of Class Counsel's attorneys' fees and costs pursuant to paragraph 30, this

action shall be dismissed with prejudice.. The Court will hold a hearing pursuant to Fed. R. Civ. P. 23(e)(1)(C) before approval of this Stipulation.

IT IS SO STIPULATED.

PAUL REINSMITH and KEVIN DINSDALE, Individually, and on Behalf of all Others Similarly Situated

By their attorney,

s/ Erik H. Langeland
Erik H. Langeland (BBO #567388)
Erik H. Langeland, P.C.
730 Fifth Avenue, 9th Floor
New York, NY 10019
(212) 659-7774

s/Daniel K. Touhy
Daniel K. Touhy
Ryan F. Stephan
Touhy & Touhy, Ltd.
161 N. Clark St., Ste. 2210
Chicago, IL 60601
(312) 372-2209

CASTLE POINT MORTGAGE, INC.

By its attorney,

s/ Christa von der Luft
Christa von der Luft (BBO #600362)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
(617) 439-2000

SO ORDERED.

______________________________
O'Toole, United States District Judge

DATE:____________

1556808.1

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

**PAUL REINSMITH, KEVIN DINSDALE, ROBERT BIANCHI, OMAR BATHER, and MICHAEL WILES, Individually, and on Behalf of All Others Similarly Situated,**

**Plaintiffs,**

**v.**

**CASTLE POINT MORTGAGE, INC.,**

**Defendant.**

**Case No. 05-11168 GAO**

**SECOND AMENDED COLLECTIVE ACTION COMPLAINT AND JURY DEMAND**

**JURISDICTION AND VENUE**

1. This is an action for monetary damages, declaratory and injunctive relief and other equitable and ancillary relief, brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, 29 U.S.C. § 215(a)(3) *et seq.*, Massachusetts Wage and Hour Law, M.G. L.A. Chapters 149 and 151 *et seq.*, New Jersey Wage and Hour Law, N.J.S.A. § 34:11-56(a) *et seq.*, and the Maryland Code for Labor and Employment § 3-415 *et seq*. This action is brought as a collective action pursuant to 29 U.S.C. § 216(b) and as state-wide class actions for Massachusetts, New Jersey, and Maryland, under F.R.C.P., Rule 23(b)(3).
2. The Court has jurisdiction over the federal claims under 28 U.S.C. § 1331 and 1367.
3. The Court has supplemental jurisdiction over the state law claims.
4. Plaintiffs Paul Reinsmith and Kevin Dinsdale bring claims under the FLSA and Massachusetts Wage and Hour Law and M.G.L.A. Chapters 149 and 151 *et seq.*,

individually and on behalf of all others similarly situated who have filed consent forms with the Court. Plaintiffs Paul Reinsmith and Kevin Dinsdale are residents of Massachusetts.

5.  Plaintiff Robert Bianchi brings claims under the New Jersey Wage and Hour Law and N.J.S.A. § 34:11-56(a) *et seq.*, individually and on behalf of all others similarly situated. Robert Bianchi currently resides at 18 George Street, Wanaque, New Jersey 07465. At the time the causes of action accrued, Plaintiff Robert Bianchi was a resident of New Jersey.

6.  Plaintiffs Omar Bather and Michael Wiles bring claims under the Maryland Code for Labor and Employment § 3-415 *et seq.*, individually and on behalf of all others situated. Omar Bather currently resides at 77 West 15th Street, New York, New York 10011. Michael Wiles currently resides at 7163 Fountain Rock Way, Columbia, Maryland 21406. At the time the causes of action accrued, Plaintiffs Omar Bather and Michael Wiles were residents of and worked for the Defendant in Maryland.

7.  Defendant Castle Point Mortgage, Inc. employed plaintiffs as Loan Officers..

8.  Venue is appropriate under 28 U.S.C. § 1391 because Defendant, Castle Point Mortgage, Inc. is a Massachusetts corporation doing business in the Commonwealth of Massachusetts at 300 Brickstone Square, Suite 603, Andover, Massachusetts 01810.

9.  Venue is also appropriate under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this judicial district.

## GENERAL ALLEGATIONS

10. Plaintiffs, and the similarly situated employees, have been employed as loan officers for Defendant at locations in Massachusetts, Maryland and New Jersey.

11. This action is brought as a collective action to recover unpaid overtime compensation, liquidated damages, unlawfully withheld wages, statutory penalties, and damages, and punitive damages owed to Plaintiffs and all other loan officers employed by, or formerly employed by, Castle Point Mortgage, Inc., its subsidiaries, and affiliated companies.

12. Plaintiffs Paul Reinsmith and Kevin Dinsdale bring this action as a Massachusetts state-wide class action to recover unpaid overtime compensation, unlawfully withheld wages, treble damages, and other damages owed to Plaintiffs and all other loan officers employed by, or formerly employed by Defendant, its subsidiaries and affiliated companies located in the Commonwealth of Massachusetts.

13. Plaintiff Robert Bianchi brings this action as a New Jersey state-wide class action to recover unpaid overtime compensation, unlawfully withheld wages, and other damages owed to Plaintiffs and all other loan officers employed by, or formerly employed by, Defendant, its subsidiaries and affiliated companies located in the State of New Jersey.

14. Plaintiffs Omar Bather and Michael Wiles bring this action as a Maryland state-wide class action to recover unpaid overtime compensation, unlawfully withheld wages, and other damages owed to Plaintiffs and all other loan officers employed by, or formerly employed by, Defendant, its subsidiaries and affiliated companies located in the State of Maryland.

15. During the statutory period, Plaintiffs and the similarly situated employees routinely worked in excess of forty (40) hours per week.

16. During the statutory period, Defendant did not pay overtime compensation to Plaintiffs or to similarly situated employees.

17. This practice violates the provisions of the Federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, specifically § 207(a)(1). As a result of this unlawful practice, named Plaintiffs and the similarly situated employees suffered a loss of wages.

18. Defendant failed to pay overtime wages and other benefits to Plaintiffs and other similarly situated loan officers during their employment by intentionally, willfully, and improperly designating the position of loan officer as exempt from federal law in direct violation of the FLSA, despite two Department of Labor, Wage and Hour Division, Opinion Letters, dated May 17, 1999 and February 16, 2001 respectively, concluding that loan officers were not exempt from the overtime requirements of the FLSA.

19. Defendant's practice also violates the provisions of Massachusetts G.L.A. Chapters 149 and 151 *et seq.* As a result of this unlawful practice, named Plaintiffs and the Plaintiff class suffered a loss of wages.

20. Defendant failed to pay overtime wages and other benefits to Plaintiffs and similarly situated loan officers during their employment by intentionally, willfully, and improperly designating the position of loan officer as exempt from state law in direct violation of Massachusetts G.L.A. Chapters 149 and 151 *et seq.*

21. This practice violates the provisions of the New Jersey Wage and Hour Law and N.J.S.A. § 34:11-56(a) *et seq*. As a result of this unlawful practice, named Plaintiff and the Plaintiff class suffered a loss of wages.

22. Defendant failed to pay overtime wages and other benefits to Plaintiffs and other similarly situated loan officers during their employment by intentionally, willfully, and improperly designating the position of loan officer as exempt from state law in direct violation of the New Jersey Wage and Hour Law and N.J.S.A. § 34:11-56(a), *et seq*.

23. This practice violates the provisions of the Maryland Code for Labor and Employment § 3-415 *et seq*. As a result of this unlawful practice, named Plaintiffs and the Plaintiff class suffered a loss of wages.

24. Defendant knew or showed reckless disregard for the fact that its failure to pay loan officers overtime compensation was in direction violation of these laws. Defendant failed to pay overtime wages and other benefits to Plaintiffs during their employment by intentionally, willfully, and improperly designating the position of loan officer as exempt from state law in direction violation of the Maryland Code for Labor and Employment § 3-415, *et seq.*

25. Plaintiffs demanded time and one-half compensation for all hours worked over forty per week to which they are entitled, but the Defendant has willfully failed and refused to compensate plaintiffs in accordance with the FLSA or Massachusetts G.L.A. Chapters 149 and 151, *et seq.*Plaintiffs will immediately request the Court to authorize notice to all such persons informing them of the pendency of this action.

26. Plaintiffs will also request that the Court certify a class of Massachusetts loan officers pursuant to F.R.C.P. Rule 23(b)(3) for the purposes of seeking overtime compensation and other available damages under Massachusetts G.L.A. Chapters 149 and 151 *et seq.*

27. Plaintiffs will also request that the Court certify a class of New Jersey loan officers pursuant to F.R.C.P. Rule 23(b)(3) for the purpose of seeking overtime compensation and other available damages under the New Jersey Wage and Hour Law and N.J.S.A. § 34:11-56(a), *et seq.*

28. Plaintiffs will also request that the Court certify a class of Maryland loan officers pursuant to F.R.C.P. Rule 23(b)(3) for the purpose of seeking overtime compensation and other available damages under the Maryland Code for Labor and Employment § 3-415, *et seq.*

**COUNT I**
**(on behalf of Paul Reinsmith, Kevin Dinsdale, and all others similarly situated)**

**FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 201 *et seq.***
**UNPAID WAGES/OVERTIME**

29. Plaintiffs re-allege Paragraphs 1 through 4, 7 through 12, 15 through 20, and 25 above.

30. The foregoing actions of Defendant constitutes violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. Defendant's actions were willful and not in good faith.

31. Defendant is liable to Plaintiffs for actual damages and liquidated damages.

32. Plaintiffs seek to bring this lawsuit on behalf of themselves individually and on behalf of all others similarly situated (hereinafter referred to as Plaintiffs) subject to entry of

an order certifying this cause as a collective action pursuant to 29 U.S.C. § 216(b) and F.R.C.P. Rule 23(b)(3).

33. F.R.C.P. Rule 23(b)(3) provides that a cause of action may be maintained as a class action if:

a. The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

b. There are questions of law or fact common to the class which predominate over any questions affecting only individual members;

c. The claims or defenses of the representative parties are typical of the claims or defenses of the class;

d. The representative parties will fairly and adequately protect the interests of the class; and,

e. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**Class Definition**

34. Plaintiffs seek certification of the following class:

a. "All individuals who were employed by defendant, its subsidiaries and affiliated companies, as loan officers in the United States at any time during the relevant statute of limitations period who worked more than 40 hours in a week, but did not receive overtime pay."

**Numerosity**

35. The Plaintiffs satisfy the numerosity standards. There is no question that this lawsuit encompasses hundreds of potential claimants. The proposed class can be identified and located using defendant's payroll and personnel records. Therefore, the Class is so numerous that the joinder of all members is impracticable. Class members may be informed of the pendency of this Class Action by direct mail based upon and/or published and broadcast notice.

## Common Questions of Fact or Law

36. There are questions of fact and law common to the class that predominate over any questions affecting only individual members. The questions of law and fact common to the class arising from Defendant's actions include, without limitation, the following:

    a. Whether the class members qualify for exempt status;

    b. Whether the defendant conducted an analysis of class members' compensation before classifying them as exempt;

    c. Whether the defendant conducted an analysis of class members' duties and tasks before classifying them as exempt;

    d. Whether the plaintiffs worked in excess of 40 hours per week;

    e. Whether the plaintiffs are expected to work in excess of 40 hours per week;

    f. Whether defendant's practice violates the overtime provisions of 29 U.S.C. § 216(b).

    g. Whether the defendant's failure to pay overtime was willful; and,

    h. Whether plaintiffs and the class have suffered damages and the proper measure of those damages.

37. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the controversy.

## Typicality

38. Plaintiffs' claims are typical of the claims of the class members. Named plaintiffs suffered similar injuries as those suffered by other class members as a result of Defendant's failure to pay overtime.

**Adequacy**

39. Named Plaintiffs are adequate representatives of the class because they are members of the class and their interests do not conflict with the interests of the members of the class they seek to represent. The interests of the class members will be fairly and adequately protected by the named Plaintiffs and their undersigned counsel. Plaintiffs have hired competent attorneys who are experienced in class action litigation of this type and who are committed to prosecuting this action.

**Superiority**

40. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly situated persons prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member may be relatively small, the expenses and burden of individual litigation would make it difficult for plaintiffs to bring individual claims. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests.

41. The FLSA states that an employee must be paid overtime, equal to 1.5 times the employee's regular rate of pay for all hours worked in excess of 40 per week. 29 U.S.C. § 216 *et seq*. Plaintiffs regularly worked more than 40 hours per week during their employment, but were not paid overtime.

42. The foregoing actions of Defendant constitutes violations of 29 U.S.C. § 216 *et seq.* Defendant's actions were willful and not in good faith.

43. Defendant is liable to Plaintiffs for actual damages, treble damages, equitable relief and any other damages awarded by this court, pursuant to 29 U.S.C. § 216(b).

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorney, ERIK H. LANGELAND, P.C., demand judgment against the Defendant, CASTLE POINT MORTGAGE, INC., and in favor of the Plaintiffs and all others similarly situated, for a sum that will properly, adequately and completely compensate Plaintiffs for the nature, extent and duration of their damages, the costs of this action and such further relief as the Court deems just and equitable

**COUNT II**
**(on behalf of Paul Reinsmith, Kevin Dinsdale, and all others similarly situated)**

**MASSACHUSETTS G.L.A. CHAPTER 149 AND 151 *et seq.***
**UNPAID WAGES/OVERTIME**

44. Plaintiffs re-allege Paragraphs 1 through 4, 7 through 12, 15 through 20, and 25 through 28 above.

45. Plaintiffs also seek to bring this lawsuit on behalf of themselves individually and on behalf of all others similarly situated (hereinafter referred to as Plaintiffs) subject to entry of an order certifying this cause as a Massachusetts state class action pursuant to F.R.C.P. Rule 23(b)(3).

46. F.R.C.P. Rule 23(b)(3) provides that a cause of action may be maintained as a class action if:

    a. The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

b. There are questions of law or fact common to the class which predominate over any questions affecting only individual members;

c. The claims or defenses of the representative parties are typical of the claims or defenses of the class;

d. The representative parties will fairly and adequately protect the interests of the class; and,

e. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**Class Definition**

47. Plaintiffs seek certification of the following class:

a. "All individuals who were employed by defendant, its subsidiaries and affiliated companies, as loan officers in the state of Massachusetts at any time during the relevant statute of limitations period who worked more than 40 hours in a week, but did not receive overtime pay."

**Numerosity**

48. The Plaintiffs satisfy the numerosity standards. The proposed class can be identified and located using defendant's payroll and personnel records. Therefore, the Class is so numerous that the joinder of all members is impracticable. Class members may be informed of the pendency of this Class Action by direct mail based upon and/or published and broadcast notice.

**Common Questions of Fact or Law**

49. There are questions of fact and law common to the class that predominate over any questions affecting only individual members. The questions of law and fact common to the class arising from Defendant's actions include, without limitation, the following:

a. Whether the class members qualify for exempt status;

b. Whether the defendant conducted an analysis of class members' compensation before classifying them as exempt;

c. Whether the defendant conducted an analysis of class members' duties and tasks before classifying them as exempt;

d. Whether the plaintiffs worked in excess of 40 hours per week;

e. Whether the plaintiffs are expected to work in excess of 40 hours per week;

f. Whether defendant's practice violates the overtime provisions of Massachusetts G.L.A. Chapters 149 and 151 *et seq.*

g. Whether the defendant's failure to pay overtime was willful; and,

h. Whether plaintiffs and the class have suffered damages and the proper measure of those damages.

50. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the controversy.

**Typicality**

51. Plaintiffs' claims are typical of the claims of the class members. Named plaintiffs suffered similar injuries as those suffered by other class members as a result of Defendant's failure to pay overtime.

**Adequacy**

52. Named Plaintiffs are adequate representatives of the class because they are members of the class and their interests do not conflict with the interests of the members of the class they seek to represent. The interests of the class members will be fairly and adequately protected by the named Plaintiffs and their undersigned counsel. Plaintiffs

have hired competent attorneys who are experienced in class action litigation of this type and who are committed to prosecuting this action.

**Superiority**

53. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly situated persons prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member may be relatively small, the expenses and burden of individual litigation would make it difficult for plaintiffs to bring individual claims. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests.

54. Massachusetts law states that an employee must be paid overtime, equal to 1.5 times the employee's regular rate of pay for all hours worked in excess of 40 per week. Massachusetts G.L.A. c. 151 §1A. Plaintiffs regularly worked more than 40 hours per week during their employment, but were not paid overtime.

55. The foregoing actions of Defendant constitutes violations of Massachusetts G.L.A. c. 151 §1A *et seq.* Defendant's actions were willful and not in good faith.

56. Defendant is liable to Plaintiffs for actual damages, treble damages, equitable relief and any other damages awarded by this court, pursuant to Massachusetts General Law and F.R.C.P., Rule 23(b)(3).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorney, ERIK H. LANGELAND, P.C., demand judgment against the Defendant, CASTLE POINT MORTGAGE, INC., and in favor of the Plaintiffs and all others similarly situated, for a sum that will properly, adequately and completely compensate Plaintiffs for the nature, extent and duration of their damages, the costs of this action and such further relief as the Court deems just and equitable.

## COUNT III
**(on behalf of Robert Bianchi and all others similarly situated)**

**NEW JERSEY WAGE AND HOUR LAW and N.J.S.A. § 23:11-56(A), *et seq.***
**UNPAID WAGES/OVERTIME**

57. Plaintiff re-alleges Paragraphs 1 through 3, 5, 7 through 11, 13, 15 through 16, and 21 through 22 above.

58. New Jersey law states that an employee must be paid overtime, equal to 1.5 times the employee's regular rate of pay for all hours worked in excess of 40 per week and in the manner and methods provided by the FLSA. The New Jersey Wage and Hour Law and N.J.S.A. § 34:11-56(a)(4). Plaintiffs regularly worked more than 40 hours per week during their employment, but were not paid overtime.

59. The foregoing actions of Defendant constitute violations of New Jersey Wage and Hour Law and N.J.S.A. § 34:11-56(a), *et seq.*. Defendant's actions were willful and not in good faith.

60. Defendant is liable to Plaintiffs for actual damages, equitable relief, and any other damages awarded by this court.

61. Plaintiffs also seek to bring this lawsuit on behalf of themselves individually and on behalf of all others similarly situated (hereinafter referred to as Plaintiffs) subject to entry of an order certifying this cause as a New Jersey state class action pursuant to F.R.C.P. Rule 23(b)(3).

62. F.R.C.P. Rule 23(b)(3) provides that a cause of action may be maintained as a class action if:

   a. The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

   b. There are questions of law or fact common to the class which predominate over any questions affecting only individual members;

   c. The claims or defenses of the representative parties are typical of the claims or defenses of the class;

   d. The representative parties will fairly and adequately protect the interests of the class; and,

   e. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**Class Definition**

63. Plaintiffs seek certification of the following class:

   a. "All individuals who were employed by defendant, its subsidiaries and affiliated companies, as loan officers in the state of New Jersey at any time during the relevant statute of limitations period who worked more than 40 hours in a week, but did not receive overtime pay."

**Numerosity**

64. The Plaintiffs satisfy the numerosity standards. The proposed class can be identified and located using defendant's payroll and personnel records. Therefore, the Class is so numerous that the joinder of all members is impracticable. Class members may be

informed of the pendency of this Class Action by direct mail based upon and/or published and broadcast notice.

**Common Questions of Fact or Law**

65. There are questions of fact and law common to the class that predominate over any questions affecting only individual members. The questions of law and fact common to the class arising from Defendant's actions include, without limitation, the following:

a. Whether the class members qualify for exempt status;

b. Whether the defendant conducted an analysis of class members' compensation before classifying them as exempt;

c. Whether the defendant conducted an analysis of class members' duties and tasks before classifying them as exempt;

d. Whether the plaintiffs worked in excess of 40 hours per week;

e. Whether the plaintiffs are expected to work in excess of 40 hours per week;

f. Whether defendant's practice violates the overtime provisions of the New Jersey Wage and Hour Law and N.J.S.A. § 34:11-56(a), *et seq.*

g. Whether the defendant's failure to pay overtime was willful; and,

h. Whether plaintiffs and the class have suffered damages and the proper measure of those damages.

66. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the controversy.

**Typicality**

67. Plaintiffs' claims are typical of the claims of the class members. Named plaintiffs suffered similar injuries as those suffered by other class members as a result of Defendant's failure to pay overtime.

**Adequacy**

68. Named Plaintiffs are adequate representatives of the class because they are members of the class and their interests do not conflict with the interests of the members of the class they seek to represent. The interests of the class members will be fairly and adequately protected by the named Plaintiffs and their undersigned counsel. Plaintiffs have hired competent attorneys who are experienced in class action litigation of this type and who are committed to prosecuting this action.

**Superiority**

69. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly situated persons prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member may be relatively small, the expenses and burden of individual litigation would make it difficult for plaintiffs to bring individual claims. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests.

70. New Jersey law states that an employee must be paid overtime, equal to 1.5 times the employee's regular rate of pay for all hours worked in excess of 40 per week. New Jersey Wage and Hour Law and N.J.S.A. § 34:11-56(a)(4). Plaintiffs regularly worked more than 40 hours per week during their employment, but were not paid overtime.

71. The foregoing actions of Defendant constitutes violations of the New Jersey Wage and Hour Law and N.J.S.A. § 34:11-56(a) *et seq.* Defendant's actions were willful and not in good faith.

72. Defendant is liable to Plaintiffs for actual damages, equitable relief and any other damages awarded by this court, pursuant to the New Jersey Wage and Hour Law and N.J.S.A. § 34:11-56(a) *et seq.* and F.R.C.P., Rule 23(b)(3).

**Prayer for Relief**

WHEREFORE, the Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, ERIK H. LANGLAND, demand judgment against the Defendant, CASTLEPOINT MORTGAGE, and in favor of the Plaintiffs and all others similarly situated, for a sum that will properly, adequately and completely compensate Plaintiffs for the nature, extent and duration of their damages, the costs of this action and such further relief as the Court deems just and equitable.

**COUNT III**
**(on behalf of Omar Bather, Michael Wiles, and all others similarly situated)**

**MARYLAND CODE FOR LABOR AND EMPLOYMENT § 3-415 *et seq.***
**UNPAID WAGES/OVERTIME**

73. Plaintiffs re-allege Paragraphs 1 through 3, 6 through 11, 14 through 17, 23 through 24, and 30 above.

74. Plaintiffs seek to bring this lawsuit on behalf of themselves individually and on behalf of all others similarly situated (hereinafter referred to as Plaintiffs) subject to an entry of an order certifying this cause as a Maryland state class action pursuant to F.R.C.P. Rule 23(b)(4).

75. F.R.C.P. Rule 23(b)(3) provides that a cause of action may be maintained as a class action if:

a. The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

b. There are questions of law or fact common to the class which predominate over any questions affecting only individual members;

c. The claims or defenses of the representative parties are typical of the claims or defenses of the class;

d. The representative parties will fairly and adequately protect the interests of the class; and,

e. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**Class Definition**

76. Plaintiffs seek certification of the following class:

a. "All individuals who were employed by Defendant, its subsidiaries and affiliated companies, as loan officers in the state of Maryland at any time during the relevant statute of limitations period who worked more than 40 hours in a week, but did not receive overtime pay."

**Numerosity**

77. The Plaintiffs satisfy the numerosity standards. There is no question that this lawsuit encompasses hundreds of potential claimants. The proposed class can be identified and located using defendant's payroll and personnel records. Therefore, the Class is so numerous that the joinder of all members is impracticable. Class members may be informed of the pendency of this Class Action by direct mail based upon and/or published and broadcast notice.

**Common Questions of Fact or Law**

78. There are questions of fact and law common to the class that predominate over any questions affecting only individual members. The questions of law and fact common to the class arising from Defendant's actions include, without limitation, the following:

a. Whether the class members qualify for exempt status;

b. Whether the defendant conducted an analysis of class members' compensation before classifying them as exempt;

c. Whether the defendant conducted an analysis of class members' duties and tasks before classifying them as exempt;

d. Whether the plaintiffs worked in excess of 40 hours per week;

e. Whether the plaintiffs are expected to work in excess of 40 hours per week;

f. Whether defendant's practice violates the overtime provisions of the Maryland Code for Labor and Employment § 3-45 *et seq.*

g. Whether the defendant's failure to pay overtime was willful; and,

h. Whether plaintiffs and the class have suffered damages and the proper measure of those damages.

79. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the controversy.

**Typicality**

80. Plaintiffs' claims are typical of the claims of the class members. Named plaintiffs suffered similar injuries as those suffered by other class members as a result of Defendant's failure to pay overtime.

**Adequacy**

81. Named Plaintiffs are adequate representatives of the class because they are members of the class and their interests do not conflict with the interests of the members of the class they seek to represent. The interests of the class members will be fairly and adequately protected by the named Plaintiffs and their undersigned counsel. Plaintiffs have hired competent attorneys who are experienced in class action litigation of this type and who are committed to prosecuting this action.

**Superiority**

82. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly situated persons prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member may be relatively small, the expenses and burden of individual litigation would make it

difficult for plaintiffs to bring individual claims. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests.

83. Maryland law states that an employee must be paid overtime, equal to 1.5 times the employee's regular rate of pay for all hours worked in excess of 40 per week and in the manner and methods provided by the Fair Labor Standards Act. Maryland Code for Labor and Employment § 3-415 *et seq*. Plaintiffs regularly worked more than 40 hours per week during their employment, but were not paid overtime.

84. The foregoing actions of Defendant constitutes violations of the Maryland Code for Labor and Employment § 3-415 *et seq.* Defendant's actions were willful and not in good faith.

85. Defendant is liable to Plaintiffs for actual damages, equitable relief and any other damages awarded by this court, pursuant to the Maryland Code for Labor and Employment § 3-415 *et seq.* and F.R.C.P., Rule 23(b)(3).

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, ERIK H. LANGLAND, P.C., demand judgment against the Defendant, CASTLEPOINT MORTGAGE, and in favor of the Plaintiffs and all others similarly situated, for a sum that will properly, adequately and completely compensate Plaintiffs for the nature, extent and duration of their damages, the costs of this action such further relief as the Court deems just and equitable.

**JURY DEMAND**

Plaintiffs demand trial by jury.

Dated:

Respectfully Submitted

_______________________________

Erik. H. Langeland
Erik H. Langeland, P.C.
730 Fifth Avenue, 9th Floor
New York, NY 10019
(212) 659-7774
ATTORNEY FOR PLAINTIFFS

1560579.1

# EXHIBIT B

# SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is made and entered into by and between Claimant ______________________ ("Claimant") and Castle Point Mortgage, Inc. ("Castle Point"). Except to the extent governed by federal law, this Agreement shall be governed by the statutes and common law of Massachusetts excluding any that mandate the use of another jurisdiction's laws.

## W I T N E S S E T H:

**WHEREAS,** in June 2005, plaintiffs Paul Reinsmith and Kevin Dinsdale ("plaintiffs") filed in the United States District Court for the District of Massachusetts a proposed collective action complaint entitled *Paul Reinsmith and Kevin Dinsdale, Individually and on Behalf of all Others Similarly Situated* v. *Castle Point Mortgage, Inc.*, C.A. No. 05-11168-GAO ("the Action") alleging violation of the Fair Labor Standards Act, 29 U.S.C. § 207 for non-payment of overtime wages;

**WHEREAS,** the Action was later amended to include state law class claims for non-payment of overtime wages under Maryland, Massachusetts, and New Jersey law;

**WHEREAS,** the Action sought back pay for non-payment of overtime wages, liquidated and/or punitive damages, and attorneys' fees;

**WHEREAS,** a settlement, which is subject to the Court's approval, was reached between the parties as set forth in the Stipulated Agreement between Plaintiffs and Castle Point ("Stipulated Agreement");

**WHEREAS,** this Settlement Agreement is the product of arm's-length negotiations between competent and informed counsel; and

**WHEREAS,** each party hereto desires to settle fully and finally all differences arising during, out of or related to the employment of Claimant by Castle Point and any termination thereof up through the date of the execution of this Agreement; and in doing so does not concede the truth or falsity of any allegation of fact made in the pleadings in this matter, nor do they concede the correctness or applicability of any legal theory of recovery or defense asserted in this action.

**NOW, THEREFORE,** in consideration of the premises and mutual promises herein contained, it is agreed as follows:

1. NO ADMISSION OF LIABILITY

This Agreement shall not in any way be construed as an admission by Castle Point of any liability whatsoever, or as an admission by Castle Point of any wrongful acts whatsoever

committed by it or any of its employees, officers, directors or agents, and Castle Point specifically disclaims any liability to Claimant, or to any other persons or entities.

2. CONSIDERATION BY CASTLE POINT

In exchange for Claimant's promises in this Agreement and his/her satisfaction of his/her obligations herein:

(a) Claimant will receive a check made payable to Claimant in the amount of $__________ before the deduction of normal payroll taxes and withholdings pursuant to state and federal law, within sixty days of mailing of notice of this settlement. Claimant will also receive a check made payable to Claimant in the amount of $__________ and will receive an IRS Form 1099 confirming that the amount of this check has been reported as income to the IRS. Claimant understands and agrees that the above payments are all the monies that will be paid by Castle Point to him/her, that he/she will receive no further wages or other payments or benefits of any kind from Castle Point in connection with this settlement.

(b) Claimant's attorneys' fees and costs will be paid by Castle Point to the law firm of Touhy & Touhy, Ltd. and Claimant will not be responsible for paying any attorneys' fees and costs in connection with the settlement of his/her claims, provided he/she is represented by the law firm of Touhy & Touhy, Ltd.

3. RELEASE

As a further material inducement to Castle Point to enter into this Agreement, Claimant does hereby, and for his/her heirs, representatives, executors, administrators, successors and assigns, release, acquit and forever discharge Castle Point, its successor companies, all present and former related and affiliated companies, successor companies, and each and all of the present and former owners, stockholders, assigns, agents, directors, officers, employees, representatives and attorneys of or for any such business entities, and all persons acting by, through, under or in concert with any of them (collectively "Releasees"), and each of them, from any and all grievances, charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorneys' fees and costs actually incurred), of any nature whatsoever through the date of the execution of this Agreement, known or unknown, suspected or unsuspected, fixed or contingent, liquidated or unliquidated, including, but by no means limited to, rights arising out of Claimant's employment relationship with Castle Point, the termination (if any) of such employment relationship, the alleged commission of any tort or violations of any contracts, express or implied; any covenant of good faith and fair dealing, express or implied; any failure to pay overtime, minimum wages or commissions; any recordkeeping violations; any interest; any liquidated damages; any other claims or penalties under federal and state law based on any purported failure to properly classify Claimant as non-exempt; any public policy; or any federal, state or other governmental statute, regulation or ordinance, and any amendments thereto including, but not limited to: the Fair Labor Standards Act; Massachusetts Minimum Wage Law; New Jersey Wage and Hour Law and

Maryland Wage Law from the beginning of time to the date of execution hereof; excluding only claims related to workers' compensation claims.

Claimant acknowledges that he/she might hereafter discover facts different from or in addition to those he/she now knows or believes to be true with respect to a Claim or Claims released herein, and he/she expressly agrees to assume the risk of possible discovery of additional or different facts, and further agrees that this Agreement shall be and remain effective in all respects regardless of such additional or different discovered facts.

5. NO FUTURE FILINGS

Claimant represents and agrees that he/she will cooperate and take all steps necessary and appropriate to dismiss the Action, and any other claims, suits or actions against Castle Point that are currently pending, with prejudice. Claimant represents and agrees that he/she will not file with any such agency or court any other grievance, lawsuit, claim, charge or complaint at any time hereafter based upon events occurring prior to the date of execution of this Agreement; that if any agency or court ever assumes jurisdiction of any such lawsuit, claim, charge or complaint, and/or purports to bring any legal proceeding, in whole or in part, on Claimant's behalf, based upon events occurring prior to the execution of this Agreement, Claimant will request the agency or court to withdraw from and/or dismiss the lawsuit, claim, charge or complaint with prejudice and will take all available legal action to remove himself/herself from any such legal proceeding brought, in whole or in part, on her behalf.

6. FURTHER ACTS

Claimant and Castle Point represent that they, together with their agents, representatives, successors and assigns, shall promptly take such further acts and execute such other documents as shall be necessary to carry out the spirit and letter of this Agreement, and shall refrain from engaging in any conduct which would tend to undermine the intent and purposes of this Agreement. Without limiting the generality of the foregoing, in the event any court or other governmental agency may require any additional or different documents or actions in order to affect the purposes contemplated by this Agreement, Claimant and Castle Point represent that they shall execute the necessary documents and take the necessary steps to comply with those requirements.

7. CHALLENGES TO VALIDITY

Should Claimant attempt to challenge the enforceability of this Agreement, including without limitation, the Release contained herein, Claimant agrees first (1) to deliver a certified check to Castle Point for all amounts he/she has received because he/she signed this Agreement, plus 10 percent interest per annum, and (2) to invite Castle Point to cancel this Agreement. If Castle Point accepts Claimant's offer, this Agreement will be canceled. If Castle Point rejects Claimant's offer, Castle Point will notify him/her and deposit the amount he/she repaid, in an interest-bearing account pending a determination of the enforceability of this Agreement. If the Agreement is determined to be enforceable, Castle Point is to pay Claimant the amount in the account, less any amounts he/she owes Castle Point. If the

Agreement is determined to be unenforceable, the amount credited to the account shall be paid to Castle Point.

8. CONSULTATION WITH COUNSEL

Claimant and Castle Point represent that they have been given the opportunity to consult with their own attorneys and they have thoroughly discussed all aspects of this Agreement with their own attorneys to the extent desired.

9. NO REPRESENTATIONS

Claimant and Castle Point acknowledge that, except as expressly set forth herein, no representations, promises, or inducements of any kind or character have been made to her/it or any of the Releasees, to induce her/it to execute this Agreement, or with regard to the subject matter, basis or effect of this Agreement or otherwise.

10. SUCCESSORS

This Agreement shall be binding upon Claimant and Castle Point, and their heirs, representatives, executors, administrators, successors and assigns, and shall inure to the benefit of the Releasees and to their predecessors, heirs, representatives, executors, administrators, successors and assigns.

11. EXECUTION IN COUNTERPARTS

The parties hereto agree that this Agreement may be executed in counterparts and the sum of each counterpart will constitute a single Agreement.

12. ENTIRE AGREEMENT

This is the entire Agreement between Claimant and Castle Point, no promises or representations to Claimant or Castle Point have been made other than those in this Agreement, and the parties have not relied on any representations or statements by Claimants or Castle Point or any of the Releasees not contained herein. This Agreement can be modified or amended only in writing (not orally), and any such modification or amendment must be signed by both Claimant and a duly authorized officer of Castle Point and must be labeled as an amendment of this Agreement.

13. ARBITRATION OF DISPUTES

(a) Arbitrable Disputes: Castle Point and Claimant agree to resolve any claims they may have with each other arising out of this Agreement and/or his/her employment with Castle Point through final and binding arbitration in accordance with this section. Claimant also agrees to resolve in accordance with this section any claim arising out of this Agreement between him/her and any other Releasee who offers or agrees to arbitrate the claim in this manner. This arbitration requirement applies to, among other things, disputes about the

validity, interpretation, or effect of this Agreement; including without limitation, the Release contained therein, or alleged violations of it, claims of discrimination under federal or state law, or other statutory violation claims.

(b) The Arbitration: Arbitration shall be in accordance with the then-current arbitration rules and procedures for employment disputes governing arbitrations administered by the American Arbitration Association ("AAA"), except as provided in this section. Arbitration shall take place in Boston, Massachusetts, Newark, NJ or Baltimore, Maryland before the AAA, depending on the location of employment with Castle Point of the claimant. The arbitrator may not modify or change this Agreement in any way.

(c) Fees and Expenses: Each party shall pay the fees of its or her attorneys, the expenses of its or her witnesses, and any other expenses that party incurs in connection with the arbitration, but all costs of the arbitration itself, including the fees of the arbitrator, the cost of any record or transcript of the arbitration, administrative fees, and other fees and costs shall be paid in equal shares by Claimant and Castle Point. The party losing the arbitration shall reimburse the party who prevailed for all attorneys' fees and expenses the prevailing party paid pursuant to this subsection, except to the extent prohibited by a statute under which the dispute has been brought.

(d) Exclusive Remedy: Arbitration in this manner shall be the exclusive remedy for any claim that must be arbitrated pursuant to this section. Should Claimant or Castle Point attempt to resolve such a claim by any method other than arbitration pursuant to this section, the responding party will be entitled to recover from the initiating the party all damages, expenses, and attorneys' fees incurred as a result of that breach.

**READ THIS RELEASE AND CAREFULLY CONSIDER ALL OF ITS PROVISIONS BEFORE SIGNING IT: IT INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS, AND ITS ARBITRATION-OF-CLAIMS REQUIREMENT WAIVES YOUR RIGHT TO A JURY TRIAL. IF YOU WISH, YOU SHOULD TAKE ADVANTAGE OF THE FULL CONSIDERATION PERIOD AFFORDED BY THIS AGREEMENT AND YOU SHOULD CONSULT WITH YOUR ATTORNEY.**

____________________________
Claimant

____________________________
Date

CASTLE POINT MORTGAGE, INC.
By:__________________________
Its:__________________________

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL REINSMITH, KEVIN DINSDALE, OMAR BATHER, MICHAEL WILES, and ROBERT BIANCHI, Individually, and on Behalf of all Others Similarly Situated,

Plaintiffs,

v.

CASTLE POINT MORTGAGE, INC.,

Defendant.

C.A. No. 05 11168 GAO

NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION LAWSUIT, CERTIFICATION OF FLSA COLLECTIVE ACTION, CERTIFICATION OF STATE LAW OVERTIME CLASSES, AND SETTLEMENT HEARING

TO: PERSONS WHO HAVE WORKED OR CONTINUE TO WORK FOR CASTLE POINT MORTGAGE, INC. ("CASTLE POINT") AS LOAN OFFICERS FROM JUNE 30, 2002 UNTIL OCTOBER 23, 2005

PLEASE READ THIS NOTICE CAREFULLY

Based on information in Castle Point's records, you may be a Class Member who is entitled to receive money under the proposed settlement. In order to participate in the settlement, you should read this Notice carefully and you must submit the forms enclosed with this Notice.

Plaintiffs and Castle Point encourage all Class Members to participate in this Settlement. Castle Point will not retaliate in any way against current or former Castle Point employees who claim their share of this $675,000 settlement.

Important Deadlines:

Last Day To Submit a Claim Form: ____________________, 2006 (postmarked, or received if sent other than by mail)

Last Day to "Opt Out" Of The Settlement Class: __________________, 2006 (postmarked, or received if sent other than by mail)

## INTRODUCTION

A proposed settlement of the class action claims for overtime compensation raised in the above action has been reached by the parties in this case and granted approval by the United States District Court for the District of Massachusetts. This Notice informs you about the terms of that settlement and about your rights and options under the settlement.

The settlement will resolve all the claims for overtime compensation that were made in this lawsuit.

To participate in the settlement, you must submit a Claim form by ________________. If you fail to turn in a Claim Form, you will receive nothing from this lawsuit.

If you do not choose to Opt Out of the Settlement Class, you will be bound by the terms of this Settlement, regardless of whether you make a claim or receive money.

## WHAT IS A CLASS ACTION?

A class action is a lawsuit in which the claims and rights of many people are decided in a single court proceeding. One or more representative plaintiffs, also known as "class representatives," file a lawsuit asserting claims on behalf of the entire class.

## WHAT IS THE PURPOSE OF THIS NOTICE?

Judge George A. O'Toole, United States District Judge of the United States District Court for the District of Massachusetts, has ordered that this Notice be sent to you because you may be a Class Member. The purpose of this Notice is to inform you of the proposed settlement and of your rights, including,

- To inform you of your right to submit a claim for money under the settlement;
- To inform you about the certification of classes by the Court and inform you that if you do not "opt out" of the classes you will be bound by the terms of the Settlement Agreement and release your right to sue Castle Point for overtime wages during the time you were a Class Member; and
- To inform you of your right to "opt out" of the classes, and not be bound by the Court's judgment in this matter and the terms of the Settlement Agreement.

## WHAT IS THIS CASE ABOUT?

Five former Loan Officers of Castle Point brought this lawsuit, claiming that Castle Point violated federal and state laws by not paying overtime to Castle Point Loan Officers. The lawsuit alleges that Castle Point unlawfully classified these workers as exempt from

receiving overtime pay and that Castle Point did not pay, or keep track of, overtime hours for Loan Officers. The lawsuit claims that Castle Point's actions violated a federal law called the Fair Labor Standards Act ("FLSA"), and the laws of Maryland, Massachusetts and New Jersey.

Castle Point denies all of plaintiffs' claims and have raised various factual legal defenses to those claims, and have agreed to the Settlement without any admission of wrongdoing.

## WHAT ARE THE TERMS OF THE SETTLEMENT AGREEMENT?

The parties have agreed to settle this matter for the sum of $675,000 (including attorneys' fees and expenses), plus the employer's share of applicable payroll taxes.

Five representative plaintiffs – Paul Reinsmith, Kevin Dinsdale, Omar Bather, Michael Wiles, and Robert Bianchi – will receive a total of $10,000. These payments are made because the Class Representatives provided service to the class by helping class counsel to formulate claims.

Class Counsel, Daniel K. Touhy and Erik Langeland, will apply to the court for attorneys' fees and expenses in the amount of 33% of the total class recovery, which amounts to $225,000. This amount will be requested given the hours Class Counsel spent in pursuing this case on behalf of the Class Members, given the risks that Class Counsel took that no fees would be recovered, and given the result achieved for the Class Members.

If the Court approves these payments, after these deductions, the remaining $440,000 in settlement funds will be distributed according to the method set forth in the "How Will My Share Be Calculated If I Participate" section, below. If the money is not claimed by Loan Officers from the $440,000 settlement fund, it will revert to Castle Point.

## DISMISSAL OF CASE AND RELEASE OF CLAIMS

In exchange for the payment set forth above, this action will be dismissed with prejudice, and the Class Members will fully release and discharge Castle Point from all claims by executing a Settlement Agreement and General Release in the terms attached as Exhibit A.

When the overtime claims are dismissed with prejudice, that means that the Court will not consider the claims any further; the case is over. When claims are released, that means that no one covered by the release can sue Castle Point over those claims.

## ARE YOU A CLASS MEMBER FOR PURPOSES OF THE SETTLEMENT?

You are a Class Member if you were employed by Castle Point as a Loan Officer at any time from June 30, 2002 through October 23, 2005.

WHAT ARE YOUR OPTIONS?

You have three choices of what to do from here: (1) file a claim form; (2) opt out of the settlement class; or (3) do nothing. In order to protect your rights, it is very important that you read this section carefully and that you submit the proper forms before the deadlines listed in this section or you may not receive any money under the Settlement.

**File a Claim Form by _______________, 2006:**

Regardless of the state you worked for Castle Point in, if you want to receive any money from the Settlement Fund, you **must** sign and mail (or deliver by hand) the attached Claim Form by _______________, 2006. If you do not file a Claim form by ____________, 2006, you will receive nothing from the Settlement Fund. Whether you choose to file a Claim Form or not you are bound by the terms of this Settlement, as noted in the Dismissal of Case and Release of Claims section above, unless you opt out of the Settlement Class.

If you choose to file a Claim Form, be sure to make a copy of the signed form for your records.

**Choosing Not to Join the Settlement Class:**

If you do not want to be a member of the Settlement Class or participate in the settlement and you want the right to pursue your own lawsuit, you must opt out of the Settlement by _________________, 2006. If you do not Opt Out, you will be bound by the terms of this Settlement, regardless of whether you make a claim or receive money. To Opt Out you must send a letter, postmarked no later than ______________, 2006, with your Name, Social Security Number, and the period for which you worked for Castle Point in a Class Position to:

Daniel K. Touhy, Esquire
Class Counsel
Touhy & Touhy, Ltd.
161 N. Clark St., Ste. 2210
Chicago, IL 60601

and

Christa von der Luft
Counsel for Castle Point Mortgage, Inc.
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210

**Do Nothing**

If you do nothing, you will not receive any money under the settlement. You will, however, be bound by the terms of the settlement and will not be able to bring your own action to recover damages for unpaid overtime for the period covered by this lawsuit.

HOW WILL MY SHARE BE CALCULATED IF I PARTICIPATE?

Each Class Member who submits a Claim Form will receive a share of the approximately $440,000 in Settlement Funds which will remain after the deductions, named plaintiff payments and attorneys' fees and costs listed above. Each share will depend on your annualized earnings as a Loan Officer, the length of time you were employed as a Loan Officer, whether you opted in to the federal lawsuit on or before April 18, 2006 ("Opt In Plaintiff"), and whether you were a named plaintiff in one of the lawsuits ("Named Plaintiff").

For purposes of calculating overtime wages, one of three different hourly rates will be used for each Class Member who did not opt in to the federal lawsuit and who was not a named plaintiff depending on the Class Member's annualized earnings as a Loan Officer. Loan Officers received a monthly draw against commissions of $2,000 and then received commissions based on the amount of mortgage loans closed. Annual Loan Officer compensation ranged from $24,000 to over $100,000.

The Loan Officers with the top third highest annualized earnings will have overtime wages calculated based on their average hourly rate; the Loan Officers with the middle third of annualized earnings will have overtime wages calculated based on their average hourly rate; and the Loan Officers with the lowest third of annualized earnings will have overtime earnings calculated based on their average hourly rate.

These average hourly rates for the high, middle and low groups are $35.66, $17.62 and $11.52 respectively.

Using the appropriate hourly rate, each Class Member will have a total overtime wage calculated based on working 2.32 hours of overtime per week throughout his period of employment as a Loan Officer using a fluctuating work week method of calculation, i.e. half-time for 2.32 hours per week. Specifically, Loan Officers in the high group will receive a payment of $41.36 per week of employment; Loan Officers in the middle group will receive a payment of $20.44 per week of employment; and Loan officers in the low group will receive a payment of $13.36 per week of employment.

Each Class Member will be eligible to receive liquidated damages in an amount equal to his total overtime wage.

Opt In Plaintiffs and Named Plaintiffs will have their hourly rates determined based on their individual annualized earnings and will have overtime wages calculated based on working 5.36 hours of overtime per week throughout their period of employment as Loan Officers using a fluctuating work week method of calculation. Opt In Plaintiffs and Named Plaintiffs will also be eligible to receive liquidated damages in an amount equal to their total overtime wages.

For settlement amounts allocated to wages, normal payroll taxes and withholdings will be deducted pursuant to state and federal law. For the amount allocated to liquidated damages, the amount will be reported as income on IRS Form 1099.

ATTORNEYS' FEES AND COSTS

As their fee for services rendered on behalf of the Class Members, Class Counsel will ask the Court to award as attorneys' fees and costs a total of 33 percent from the Settlement Fund (*i.e.*, $225,000.00) The amount of any award of attorneys' fees and costs will be considered and must be approved by the Court. Class Members will not be required to pay Class Counsel for any other attorneys' fees, costs or expenses out of their own pockets if the Settlement Agreement and the attorneys' fees and costs requests are approved by the Court.

EXAMINATION OF PLEADINGS AND PAPERS/ADDITIONAL INFORMATION

This Notice does not contain all of the terms of the proposed Settlement or all of the details of these proceedings. For more detailed information, you may refer to the underlying documents and papers on file with the Court. This file may be inspected during the hours of each Court Business day at the Office of the Clerk of Court, United States District Court for the District of Massachusetts, John Joseph Moakley U. S. Courthouse, 1 Courthouse Way, Boston, MA 02210.

______________________________
Honorable George A. O'Toole
United States District Court

Dated: , 2006

1537940.1

# EXHIBIT D

# Form W-4 (2006)

**Purpose.** Complete Form W-4 so that your employer can withhold the correct federal income tax from your pay. Because your tax situation may change, you may want to refigure your withholding each year.

**Exemption from withholding.** If you are exempt, complete only lines 1, 2, 3, 4, and 7 and sign the form to validate it. Your exemption for 2006 expires February 16, 2007. See Pub. 505, Tax Withholding and Estimated Tax.

**Note.** You cannot claim exemption from withholding if (a) your income exceeds $850 and includes more than $300 of unearned income (for example, interest and dividends) and (b) another person can claim you as a dependent on their tax return.

**Basic instructions.** If you are not exempt, complete the **Personal Allowances Worksheet** below. The worksheets on page 2 adjust your withholding allowances based on itemized deductions, certain credits, adjustments to income, or two-earner/two-job situations. Complete all worksheets that apply. However, you may claim fewer (or zero) allowances.

**Head of household.** Generally, you may claim head of household filing status on your tax return only if you are unmarried and pay more than 50% of the costs of keeping up a home for yourself and your dependent(s) or other qualifying individuals. See line **E** below.

**Tax credits.** You can take projected tax credits into account in figuring your allowable number of withholding allowances. Credits for child or dependent care expenses and the child tax credit may be claimed using the **Personal Allowances Worksheet** below. See Pub. 919, How Do I Adjust My Tax Withholding, for information on converting your other credits into withholding allowances.

**Nonwage income.** If you have a large amount of nonwage income, such as interest or dividends, consider making estimated tax payments using Form 1040-ES, Estimated Tax for Individuals. Otherwise, you may owe additional tax.

**Two earners/two jobs.** If you have a working spouse or more than one job, figure the total number of allowances you are entitled to claim on all jobs using worksheets from only one Form W-4. Your withholding usually will be most accurate when all allowances are claimed on the Form W-4 for the highest paying job and zero allowances are claimed on the others.

**Nonresident alien.** If you are a nonresident alien, see the Instructions for Form 8233 before completing this Form W-4.

**Check your withholding.** After your Form W-4 takes effect, use Pub. 919 to see how the dollar amount you are having withheld compares to your projected total tax for 2006. See Pub. 919, especially if your earnings exceed $130,000 (Single) or $180,000 (Married).

**Recent name change?** If your name on line 1 differs from that shown on your social security card, call 1-800-772-1213 to initiate a name change and obtain a social security card showing your correct name.

## Personal Allowances Worksheet (Keep for your records.)

**A** Enter "1" for **yourself** if no one else can claim you as a dependent . . . . . **A** ______

**B** Enter "1" if:
- You are single and have only one job; or
- You are married, have only one job, and your spouse does not work; or
- Your wages from a second job or your spouse's wages (or the total of both) are $1,000 or less.

. . **B** ______

**C** Enter "1" for your **spouse.** But, you may choose to enter "-0-" if you are married and have either a working spouse or more than one job. (Entering "-0-" may help you avoid having too little tax withheld.) . . . . **C** ______

**D** Enter number of **dependents** (other than your spouse or yourself) you will claim on your tax return . . . . **D** ______

**E** Enter "1" if you will file as **head of household** on your tax return (see conditions under **Head of household** above) . **E** ______

**F** Enter "1" if you have at least $1,500 of **child or dependent care expenses** for which you plan to claim a credit . . **F** ______
(**Note.** Do **not** include child support payments. See **Pub. 503,** Child and Dependent Care Expenses, for details.)

**G** **Child Tax Credit** (including additional child tax credit):
- If your total income will be less than $55,000 ($82,000 if married), enter "2" for each eligible child.
- If your total income will be between $55,000 and $84,000 ($82,000 and $119,000 if married), enter "1" for each eligible child plus "1" **additional** if you have four or more eligible children. **G** ______

**H** Add lines A through G and enter total here. (**Note.** This may be different from the number of exemptions you claim on your tax return.) ▶ **H** ______

For accuracy, **complete all worksheets that apply.**
- If you plan to **itemize or claim adjustments to income** and want to reduce your withholding, see the **Deductions and Adjustments Worksheet** on page 2.
- If you have **more than one job** or are **married and you and your spouse both work** and the combined earnings from all jobs exceed $35,000 ($25,000 if married) see the **Two-Earner/Two-Job Worksheet** on page 2 to avoid having too little tax withheld.
- If **neither** of the above situations applies, **stop here** and enter the number from line H on line 5 of Form W-4 below.

**Cut here and give Form W-4 to your employer. Keep the top part for your records.**

Form **W-4** — Department of the Treasury, Internal Revenue Service

# Employee's Withholding Allowance Certificate

OMB No. 1545-0074 — **2006**

▶ **Whether you are entitled to claim a certain number of allowances or exemption from withholding is subject to review by the IRS. Your employer may be required to send a copy of this form to the IRS.**

1 Type or print your first name and middle initial. | Last name | 2 Your social security number

Home address (number and street or rural route)

3 ☐ Single ☐ Married ☐ Married, but withhold at higher Single rate.
**Note.** If married, but legally separated, or spouse is a nonresident alien, check the "Single" box.

City or town, state, and ZIP code

4 **If your last name differs from that shown on your social security card, check here. You must call 1-800-772-1213 for a new card.** ▶ ☐

5 Total number of allowances you are claiming (from line **H** above **or** from the applicable worksheet on page 2) **5** ______

6 Additional amount, if any, you want withheld from each paycheck . . . . **6** $ ______

7 I claim exemption from withholding for 2006, and I certify that I meet **both** of the following conditions for exemption.
- Last year I had a right to a refund of **all** federal income tax withheld because I had **no** tax liability **and**
- This year I expect a refund of **all** federal income tax withheld because I expect to have **no** tax liability.

If you meet both conditions, write "Exempt" here . . . . ▶ **7** ______

Under penalties of perjury, I declare that I have examined this certificate and to the best of my knowledge and belief, it is true, correct, and complete.

**Employee's signature**
(Form is not valid unless you sign it.) ▶ **Date** ▶

8 Employer's name and address (Employer: Complete lines 8 and 10 only if sending to the IRS.) | 9 Office code (optional) | 10 Employer identification number (EIN)

# EXHIBIT E

# SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is made and entered into by and between Claimant ______________________ ("Claimant") and Castle Point Mortgage, Inc. ("Castle Point"). Except to the extent governed by federal law, this Agreement shall be governed by the statutes and common law of Massachusetts excluding any that mandate the use of another jurisdiction's laws.

## 1. NO ADMISSION OF LIABILITY

This Agreement shall not in any way be construed as an admission by Castle Point or Claimant of any liability whatsoever, or as an admission by Castle Point or Claimant of any wrongful acts whatsoever.

## 2. RELEASE

Castle Point releases, acquits and forever discharges Claimant from any and all grievances, charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorneys' fees and costs actually incurred), of any nature whatsoever through the date of the execution of this Agreement, known or unknown, suspected or unsuspected, fixed or contingent, liquidated or unliquidated, including, but by no means limited to, rights arising out of Claimant's employment relationship with Castle Point, the termination of such employment relationship, the alleged commission of any tort or violations of any contracts, express or implied; any covenant of good faith and fair dealing, express or implied from the beginning of time to the date of execution hereof.

## 3. NO FUTURE FILINGS

Castle Point represents and agrees that it will cooperate and take all steps necessary and appropriate to dismiss all suits or actions against Claimant that are currently pending, with prejudice. Castle Point represents and agrees that it will not file with any such agency or court any other grievance, lawsuit, claim, charge or complaint at any time hereafter based upon events occurring prior to the date of execution of this Agreement; that if any agency or court ever assumes jurisdiction of any such lawsuit, claim, charge or complaint, and/or purports to bring any legal proceeding, in whole or in part, on Castle Point's behalf, based upon events occurring prior to the execution of this Agreement, Castle Point will request the agency or court to withdraw from and/or dismiss the lawsuit, claim, charge or complaint with prejudice and will take all available legal action to remove himself/herself from any such legal proceeding brought, in whole or in part, on its behalf.

4. CONSULTATION WITH COUNSEL

Claimant and Castle Point represent that they have been given the opportunity to consult with their own attorneys and they have thoroughly discussed all aspects of this Agreement with their own attorneys to the extent desired.

5. NO REPRESENTATIONS

Claimant and Castle Point acknowledge that, except as expressly set forth herein, no representations, promises, or inducements of any kind or character have been made to her/it or any of the Releasees, to induce her/it to execute this Agreement, or with regard to the subject matter, basis or effect of this Agreement or otherwise.

6. SUCCESSORS

This Agreement shall be binding upon Claimant and Castle Point, and their heirs, representatives, executors, administrators, successors and assigns, and shall inure to the benefit of the Releasees and to their predecessors, heirs, representatives, executors, administrators, successors and assigns.

7. EXECUTION IN COUNTERPARTS

The parties hereto agree that this Agreement may be executed in counterparts and the sum of each counterpart will constitute a single Agreement.

8. ENTIRE AGREEMENT

This is the entire Agreement between Claimant and Castle Point, no promises or representations to Claimant or Castle Point have been made other than those in this Agreement, and the parties have not relied on any representations or statements by Claimants or Castle Point or any of the Releasees not contained herein. This Agreement can be modified or amended only in writing (not orally), and any such modification or amendment must be signed by both Claimant and a duly authorized officer of Castle Point and must be labeled as an amendment of this Agreement.

______________________________
Claimant

______________________________
Date

CASTLE POINT MORTGAGE, INC.
By:____________________________
Its:____________________________