IN THE UNITED STATES DISTRICT COURTFOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Paul Reinsmith and Kevin Dinsdale, Individually and on behalf of all putative class members, ) ) ) ) | |
| Plaintiffs, ) ) | No. 051168 GAO |
| vs. ) ) | |
| CASTLEPOINT MORTGAGE, INC. ) ) | |
| Defendant. ) | |

**APPLICATION OF PLAINTIFFS' CLASS COUNSEL FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

**I. INTRODUCTION**

Plaintiffs' Class Counsel respectfully apply for an award of attorneys' fees of $225,000.00, to be paid separately by Defendant Castlepoint Mortgage, Inc. ("Castlepoint") as set forth in the Settlement Agreement preliminarily approved by this Court on September 18, 2006. This application is made pursuant to and in accordance with the Court's Order of that date..

The total settlement amount payable to Plaintiffs is $675,000.00. This is an extremely favorable result based on the facts and total potential recovery to Plaintiffs. When broken down, the highest paid plaintiffs will receive $165.44 in unpaid overtime and liquidated damages for each week they worked for Defendant during the class period, while the lowest paid plaintiffs will receive $26.72 for each week during the same period. Furthermore, this settlement includes all those who have potential claims for unpaid overtime and will resolve all outstanding claims. Out of the 253 eligible claimants, 37 submitted claim forms and there has not been a single objection or opt-out.

1

The fee request of Class Counsel is reasonable. Class counsel obtained an excellent result for the class - at least 60% of the best result they could have hoped for after trial and appeal, both of which would have delayed the final result for years. The result here, providing immediate relief, is therefore particularly noteworthy.

The fee amount requested here was separately negotiated by Plaintiffs' Class Counsel with Castlepoint after the settlement negotiations for the class were completed. Under the terms of the Settlement Agreement, Castlepoint agrees not to oppose any request by Class Counsel up to a maximum of Two Hundred and Twenty Five Thousand Dollars ($225,000.00) for attorneys' fees and costs, and Class Counsel agrees not to seek any fees or costs greater than this amount, to compensate and reimburse Class Counsel for all of the work already performed in this matter and all work remaining to be performed in carrying out this Settlement Agreement, including but not limited to securing Court approval of this Settlement Agreement, administering it and obtaining dismissal with prejudice of the *Reinsmith* litigation. This amount is based on both the actual hours spent by Plaintiffs' counsel working on this case and constitutes 33% of the estimated common fund available for all class members' benefit.

This application is consistent with awards of attorneys' fees under the fee shifting provision of the Fair Labor Standards Act "FLSA" and from common funds in complex litigation, both in this District and other jurisdictions. The request is thus supported by the applicable legal authorities (*infra pp. 3-8)* and is fully justified in litigation of this magnitude in view of the commitment made, the risk taken, the skill required, and most importantly, the excellent result obtained for the Class.

Plaintiffs' Class Counsel's efforts, undertaken on behalf of the Class, have been extensive. Initial pre-filing investigation included extensive research of Massachusetts wage and hour laws, Maryland state overtime laws, New Jersey state overtime laws, the Fair Labor Standards Act and other federal laws applicable to a variety of issues including, *inter alia,* the elements of potential causes of action, statutes of limitations, damages and class certification. Beyond investigating the law, class counsel spent substantial time and effort investigating claims with named Plaintiffs and other class members, providing and managing the issuance of notice and opt-in procedure, processing opt-in consent forms and filing them with the court, issuing discovery, reviewing voluminous time records, compensation information, job description and other documents produced by Castlepoint, preparing mediation statements with evidentiary support and negotiating a fair settlement. Further, Plaintiffs' Class Counsel moved for a preliminary injunction to protect the interests of the named plaintiffs and class members in this case and defended class members from state law claims filed by the Defendant. Plaintiffs' Class Counsel devoted extensive resources toward these services.

The request for an award of attorneys' fees equal to 33⅓% of the total amount available to the Class is consistent with the market for contingent-fee legal services and fee awards in similar litigation, and was negotiated with Settling Defendants only after the rest of the settlement terms were negotiated. Pursuant to the Court's Preliminary Approval Order, the request for attorneys' fees is consistent with the language in the Notice that was previously submitted to the Court and has been sent to the Class Members. No class members have objected to the amount of the requested fees.

## II. DISCUSSION

The FLSA, Massachusetts law, New Jersey law and Maryland law provide for the payment of attorneys' fees, costs and expenses in overtime wage violation cases. 29 U.S.C. §216(b) While Castlepoint denies any liability, Plaintiffs' Class Counsel is confident that the violations alleged in this action would have resulted in an award of attorney's fees had this case proceeded to trial. Thus, payment of attorneys' fees, costs and expenses is legally justified.

Recovery of attorney's fees under the "common fund" doctrine has long been recognized to be within the province of the Court's equitable jurisdiction. "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." Boeing Co. v. Van Gemert (1980) 444 U.S. 472, 478; see also In re Nineteen Appeals Arising out of San Juan DuPont Plaza Hotel Fire Litigation, 982 F. 2d. 603 (1st Cir. 1992); Bell v. Farmers Ins. Exchange, (2004) 115 Cal.App.4th 715 Courts have held that the contingent nature of the fee agreement is a factor to be considered in awarding attorney's fees. People v.Yuki (1995) 31 Cal.App.4th 1754, 1771

In the First Circuit, courts regularly award attorneys' fees in common-fund cases using the percentage-of-the-fund approach: When a class suit produces a fund for the group, it is commonplace to award the lawyers for the class a percentage of the fund, in recognition of the fact that most suits for damages in this country are handled on the

4

plaintiff's side on a contingent-fee basis.  In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation, 56 F.3d 295, 305, n.6 (1st Cir. 1995).  The First Circuit favors the percentage of-the-fund approach, which simplifies the judicial task while achieving the object of awarding a reasonable fee.  In re Thirteen Appeals, 56 F.3d at 307  In fact, awarding fees as a percentage of the fund is the accepted and preferred method in federal courts in general.  See In re Thirteen Appeals, 56 F.3d 295, 305-06 (1st Cir.1995); In re Washington Public Power Supply System Securities Litigation, 19 F.3d 1291, 1299-1301 (9th Cir.1994); In re Continental Illinois Securities Litigation, 962 F.2d 566, 572-73 (7th Cir. 1992); Camden I Condominium Ass'n, Inc. v. Dunkle, 946 F.2d 768, 774- 75 (11th Cir.1991); Brown v. Phillips Petroleum Co., 838 F.2d 451, 454 (10th Cir.1988);  Bebchick v. Washington Metro. Area Transit Comm'n, 805 F.2d 396, 406 (D.C.Cir.1986); see also In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 821-22 (3d Cir. 1995)  (percentage of fund with lodestar "check"); and, accord, Longden v. Sunderman, 979 F.2d 1095, 1100 (5th Cir. 1992) ("although the prevailing trend in other circuits and district courts has been towards awarding fees and expenses in common fund cases based on percentage amounts, the Fifth Circuit has yet to adopt this method. Id at 1100 n. 9)

The percentage method also directly aligns the interests of the class and its counsel and rewards counsel for success and efficiency, while penalizing for waste or failure. Nilsen v. York County, 400 F.Supp.2d 266 (D.Me. 2005), quoting Wal Mart Stores, Inc. v. VISA USA, Inc., 396 F.3d 96 (2nd Cir. 2005); see Blum v. Stenson, 465 U.S. 886,900 n.16 (1984). Moreover, as one court noted: [A] percentage-of-the- fund approach more accurately reflects the economics of litigation practice. . . [A plaintiffs'

5

litigation practice, given the uncertainties and hazards of litigation, must necessarily be result-oriented. It matters little to the class how much the attorney spends in time or money to reach a successful result. Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (citation and internal quotation marks omitted)

These advantages were noted by the Third Circuit Task Force in its Report on Court Awarded Attorneys' Fees, 108 F.R.D. 237, 255 (3d Cir. 1985). See, eg, Skelton, 860 F.2d at 252-53. In that Report, the Task Force described the alternative - the process of preparing and evaluating massive hours-based fee petitions as "cumbersome, enervating, and often surrealistic" and found that the percentage approach serves the need to avoid the tremendous amount of time and energy required by the lodestar approach. Task Force Report 108 F.R.D. at 258

Other factors to be considered by the court, where appropriate, include: the novelty and difficulty of the questions involved and the skill required to perform the legal services properly; the likelihood that the acceptance of this particular employment would preclude other employment by the attorneys; the amount involved and the results obtained; the time limitations imposed . . . by the circumstances of the case; the ability of the attorneys who performed the services; the time and labor required by the attorneys; and the informed consent of the client to the fee agreement. Sylvester v. CIGNA Corp., 401 F. Supp.2d 147, 151 (D.Me. 2005)

The facts and analysis supporting Class Counsel's request for an award of attorney's fees are consistent with the facts and analysis in Vizcaino v. Microsoft Corp. (9th Cir. 2002) 290 F.3d 1043, where the court reviewing an award of approximately

28% of the common fund, found to be below market rate, held there was no abuse of discretion.

In Vizcaino, supra, as well as the instant case, Class Counsel achieved excellent results for the class. Here, it is anticipated that members of the opt-in FLSA class will receive an amount potentially in excess of what could have been recovered had the case gone to trial and had they prevailed on the issue of liability for a two year statutory period. As for the members of the State Classes, it is estimated that they will recover a substantial portion of their claims without having to go through the expense and risk of certification. That recovery was deemed fair and reasonable by mediator, Peter Contuzzi, Esq.

Second, substantial risk was incurred bringing this lawsuit under the FLSA, because of the law relating to the administrative exemption for loan officers. Although the Court granted preliminary certification for an FLSA opt-in class, Defendant made clear its intent to fight for its classification of loan officers as exempt. Third, Class Counsel's performance generated benefits beyond the cash settlement fund. After bringing this lawsuit, Defendant revised its practices to prevent loan officers from working more than 40 hours per week.

Fourth, the rate of 33⅓% of the common fund is the current market rate for the services of a law firm with the degree of experience and record of success of the instant plaintiff firm. The operative concept is "market rate." In re Thirteen Appeals at 307; citing In re Continental Illinois Sec. Litigation (7th Cir. 1992) 962 F.2d 566, 568 As Justice Posner stated in In re Continental Illinois Sec. Litigation, supra, the court's determination of the value of the service must be based on "what the lawyer would

7

receive if he were selling his services in the market rather than being paid by court order." *Id.*

The firm of Touhy & Touhy, Ltd., has recovered 33⅓% of the common fund in several employment cases, including a $1.5 million award against Lucent Technologies, thereby establishing current market rate for complex employment litigation. In addition, Class Counsel has been equally successful in a number of other employment related class actions. (See Affidavit of Daniel K. Touhy) Indeed, representative Plaintiffs sought out the firm of Touhy & Touhy, Ltd. for the very reason of its success in the market place of law firms that litigate complex employment matters, such as the instant lawsuit. Moreover, the retainer agreements between Class Counsel and the representative plaintiffs call for this exact type of recovery of attorney's fees as is being requested at this time.

Finally, Class Counsel's representation of the class – on a contingency basis – has extended over 18 months and required counsel to forgo significant other work, resulting in a decline in the firm's annual income. This burden has continued as Class Counsel served as claims administrator – continuing to absorb the cost of final administration of all the settled claims. (See Affidavit of Daniel K. Touhy)

All of these burdens are relevant circumstances supporting the award as requested by Class Counsel and the fee requested here of 33⅓% of the total recovery fits comfortably within other similar awards. See also In re Soybean Futures Litig., No. 89 C 9009 (N.D. Ill. Nov. 11, 1996)(J. Norgle)(award of fees of 33⅓% of a common fund of $21,500,000, plus reimbursement of expenses of $1,070,064). Similarly, in Gaskill v. Gordon 942 F. Supp. 382 (N.D. Ill. 1996), aff'd, 160 F.3d 361,362 (7th Cir. 1998), the

district court awarded fees of 38% of the total funds available, and the award was affirmed by the Seventh Circuit.

The application of Plaintiffs' Class Counsel for an award of fees and expenses in the present case is thus broadly supported by, and consistent with, numerous awards in other litigation.

### III.  CONCLUSION

Plaintiffs respectfully request that the Court approve the agreed payment to Class Counsel as reasonable attorney's fees, costs, and expenses incurred in this litigation because the amount is justifiable, consonant with legal precedent, market valued, and in accord with the contingent fee agreement executed by the several named plaintiffs and Class Counsel.  While Defendant expresses no opinion and offers no stipulation as to accuracy of the representations set forth in paragraphs of the Settlement Agreement relating to attorney's fees, Defendant agrees to such payment subject to Court approval, and does not dispute the amount of attorney's fees and costs payable to Class Counsel. For all of the above reasons, the award of fees should be given preliminary approval.

Date: November 21, 2006                Respectfully submitted,

/s/ Erik H. Langeland
Erik H. Langeland
500 Fifth Avenue, Suite 1610
New York, NY 10110
(212) 354-6270
(212) 898-9086 (Fax)
Erik.H.Langeland@rcn.com

**CERTIFICATE OF SERVICE**

I, the undersigned, certify that a copy of the foregoing APPLICATION OF PLAINTIFFS' CLASS COUNSEL FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES was served on the following individuals, via electronic mail and/or ordinary U.S. mail, postage prepaid, this 21st day of November, 2006.


/s/ Erik H. Langeland
Erik H. Langeland
500 Fifth Avenue, Suite 1610
New York, NY 10110
(212) 354-6270
(212) 898-9086 (Fax)
Erik.H.Langeland@rcn.com


Daniel K. Touhy
TOUHY & TOUHY, LTD.
Attorneys For Plaintiff
161 North Clark Street, Suite 2210
Chicago, Illinois 60601
(312) 372-2209
(312) 456-3838 facsimile

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL REINSMITH and KEVIN )
DINSDALE, Individually an on Behalf of )
all Others Similarly Situated, )
                                        )
          Plaintiffs, )
                                        )    Case No. 05 11168 GAO
v. )
                                        )
CASTLE POINT MORTGAGE, INC., )
                                        )
          Defendant. )
                                        )

## AFFIDAVIT OF DANIEL K. TOUHY

I, Daniel K. Touhy, being duly sworn under oath, do hereby state and depose as follows:

1. I am one of the attorneys of record of the above referenced matter and if called to testify, I would testify consistent with all matters contained in this affidavit.

2. I am a partner in the law firm TOUHY & TOUHY, LTD., currently licensed to practice in the state of Illinois and I have been an attorney for 24 years. In the past six years, I have represented Plaintiffs in employment cases, typically arising out of the Fair Labor and Standards Act. I have also handled class actions involving other complex matters, including mercury contamination, landlord tenant matters and public nuisances. I have tried over 50 cases to a verdict in both the state and federal jurisdiction and am one of two managing partners of my firm.

3. During the past six years, I have personally worked on several collective action matters brought pursuant to the Fair Labor and Standards Act in which the class received a highly favorable resolution of collective action claims. In particular, I was lead counsel in a recent nationwide collective matter brought against the RadioShack Corporation in the Federal District Court of the Northern District of Illinois named *Perez et. al. v. RadioShack Corporation; Case No. 02-CV-07884*, which resulted in a settlement for the class in excess of $8.8 million dollars. That case was resolved on the day of trial after 4 1/2 years of extensive litigation including 80 depositions, extensive motion practice and mediations.

4. With respect to the above-referenced matter, our firm has invested in excess of 18 months working on this case including the work of three separate attorneys. Our firm has expended the amount of $421,656.93 in costs and expenses and the work set forth in the motion to which this affidavit is attached is true and accurate in terms of the task undertaken by the attorneys of this firm. The investment of time in this case has obviously deterred our firm's

      ability to work on other matters for which we likely would have received compensation.

5.     Included in the costs that our firm has incurred were the costs of administrating this case including the receipt and tracking of opt-in notices filed on behalf of opt-in Plaintiffs. Our firm will continue to observe the cost of administration of this matter and will not be seeking an award of fees over and above the agreed upon attorney fee as set forth in the attached petition.

FURTHER AFFIANT SAYETH NOT

_____
Daniel K. Touhy

SUBSCRIBED AND SWORN TO
BEFORE ME THIS 20th DAY OF
NOVEMBER, 2006.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
Sandy Robinson
Notary Public, State of Illinois
My Commission Exp. 04/27/2010